## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

EVA DENISE MONTOYA,

       Plaintiff,

vs.                                                                                    No. CIV 11-0814 JB/SMV

MARCUS ROMERO,

       Defendant.

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on (i) the Plaintiff's Motion in Limine to Exclude Affidavit of the Honorable F. Kenneth Eichwald and Any and All Testimony of F. Kenneth Eichwald and any and all Testimony of F. Kenneth Eichwald Related Thereto, filed December 6, 2012 (Doc. 78)("Motion in Limine"); and (ii) the Plaintiff's Motion in Limine to Preclude Defendant from Calling Leon Howard as a Witness, filed February 11, 2013 (Doc. 111)("Howard MIL"). The Court held a hearing on April 25, 2013. The primary issues are (i) whether the best evidence rule and rule 1004 of the Federal Rules of Evidence allow Defendant Marcus Romero to offer the testimony of the Honorable F. Kenneth Eichwald, Magistrate Judge, Magistrate Court for Division 2 of the Thirteenth Judicial District, State of New Mexico, as evidence of Romero's belt tape recording's contents; (ii) whether the rule against hearsay prevents Judge Eichwald's testimony; and (iii) whether the Court should allow Romero to call Montoya's current attorney, Leon Howard, who was also her attorney during her underlying criminal case, to testify about the belt tape recording's contents. The Court will deny the Motion in Limine and will grant the Howard MIL. Under rule 1004(a), if an original document, photograph, or recording is lost or destroyed, and not by the proponent in bad faith, the proponent may offer additional evidence about the original's contents. <u>See</u> Fed. R. Evid. 1004(a).

The Court concludes that Romero can offer, under rule 1004(a), additional evidence about his belt tape recording's contents, because Romero has produced sufficient circumstantial evidence that the recording was lost or destroyed, as he diligently sought, and ultimately failed, to obtain the original belt tape recording, and because Montoya does not assert that Romero is acting in bad faith. The Court also concludes that, because the recording's contents -- Montoya's statements on the recording -- would be admissible non-hearsay, Judge Eichwald's testimony, as additional evidence of the recording's contents, is also admissible non-hearsay. Finally, because the parties agreed at the hearing to the Court precluding Mr. Howard's testimony at trial, the Court will grant the Howard MIL and preclude Mr. Howard from being a witness at trial.

## **FACTUAL BACKGROUND**

The Honorable Robert C. Brack, United States District Judge for the District of New Mexico, laid out, in detail, this case's facts in his decision granting in part and denying in part the Defendants' Motion for Summary Judgment, filed April 12, 2012 (Doc. 47). See Memorandum Opinion and Order at 1-2, 4-8, filed October 16, 2012 (Doc. 72)("Summary Judgment MOO"). The Court will add here only the relevant facts for the disposition of the Motion in Limine. Montoya called for emergency medical treatment on September 23, 2010, and Romero arrived at her property with Emergency Medical Technicians ("EMTs") shortly afterward. See Summary Judgment MOO at 6. Because of their past interactions, when Romero arrived at Montoya's property, Montoya became upset. See Summary Judgment MOO at 6. Around the time that the EMTs left the property, a fire started underneath the car of another officer on the scene, and Romero and the other officer went out to the car to extinguish the fire. See Summary Judgment MOO at 7. When Montoya walked outside and watched the officers try to extinguish the fire, according to her, she yelled "[w]hy don't you both

- 2 -

get in that car so it can blow up with you in it, and the officers laughed in response." Summary Judgment MOO at 7 (internal alteration, citations, and quotations omitted). According to Romero, Montoya "threatened to shoot one or both of the officers, and Officer Romero did not laugh." Summary Judgment MOO at 7.

After extinguishing the fires, Romero and the other officer left. See Summary Judgment MOO at 7. Romero then spoke with Police Chief Jason Griego about Montoya's statements, and Griego advised him to contact the District Attorney's Office. Romero then later obtained a warrant and arrested Montoya for Assault Upon a Peace Officer. See Summary Judgment MOO at 7-8. Later, Montoya was tried and found not guilty before a jury on the assault charges, and Judge Eichwald presided over that trial. See Summary Judgment MOO at 8. During her criminal trial, which took place in front of Judge Eichwald, Romero played a copy of his belt tape for the jury. See Motion in Limine at 2. Since that time, neither party can find any original or copies of Romero's belt tape recording, and Romero now seeks to offer Judge Eichwald's testimony about what he heard on the recording when it was played during Montoya's underlying criminal trial. See Motion in Limine at 2.

**PROCEDURAL BACKGROUND**

Montoya and Brenda Moffett filed their Complaint for Tort Claims and Civil Rights Violations (Doc. 3-1) in the Thirteenth Judicial District Court for the State of New Mexico on August, 9, 2011, bringing suit against Defendants Village of Cuba ("the Village"), Marcus Romero, and Jason Griego. The Defendants removed the case to federal court on November 12, 2011. See Notice of Removal of Cause at 1 (Doc. 1). On December 27, 2011, the Plaintiffs filed their Plaintiffs' First Amended Complaint for Tort Claims and Civil Rights Violations, adding Defendant

Tommy Salazar.  <u>See</u> Doc. 29 ("Amended Complaint.").  In the Amended Complaint, the Plaintiffs' alleged ten counts against the Defendants, including: Count I -- First Amendment Retaliation claim against all Defendants; Count II -- Fourth Amendment claim alleged against Romero and the Village of Cuba for failure to investigate; Count III -- Fourth Amendment claim against Romero and the Village of Cuba for unreasonable seizure; Count IV -- Fourth Amendment claim against Romero and the Village of Cuba for false imprisonment; Count V -- Fourth Amendment claim against Romero and the Village of Cuba for malicious prosecution; Count VI -- First Amendment Retaliation claim against the Village of Cuba, Romero, and Salazar; Count VII -- a claim under § 504 of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 - 12213 ("ADA"), against all Defendants; Count VIII -- state law tort claim against Romero for false imprisonment; Count IX -- state law tort claim against Romero for battery; and Count X -- state law tort claim against Romero for malicious prosecution and abuse of process.  <u>See</u> Amended Complaint 9-16.  On October 16, 2012, Judge Brack granted in part and denied in part the Defendants' Motion for Summary Judgment, in which he dismissed with prejudice all of Moffett's claims, and terminated her from the case, and dismissed with prejudice all claims against Griego, Salazar, and the Village, and terminated them from the case.  <u>See</u> Summary Judgment MOO at 21.  This case was reassigned to the Court on March 22, 2013.  <u>See</u> Notice (Doc. 119).

On December 6, 2012, Montoya filed her Motion in Limine, moving the Court

to exclude any and all affidavits and/or testimony of the Honorable F. Kenneth Eichwald concerning 1) his view of the circumstances surrounding Plaintiff's illegal arrest on September 23, 2010, 2) the purported contents of a belt tape created by Defendant Marcus Romero of the incident which gave rise to such illegal arrest, and 3) any and all other affidavits or other testimony of Judge Eichwald not previously identified in the accepted Pretrial Order.

Motion in Limine at 1.  Montoya asserts that Romero falsely and unconstitutionally arrested her without probable cause in retaliation for distributing a petition criticizing the Village of Cuba Police Department.  See Motion in Limine at 1-2.  She argues that the Court should exclude any evidence that Romero may offer from Judge Eichwald, the Village of Cuba's presiding criminal magistrate judge, about Montoya's underlying criminal case, because "what was said prior to the Plaintiff's arrest goes to the essence of Plaintiff's claims and is for the jury to decide."  Motion in Limine at 2.  She contends that Judge Eichwald's affidavit or any of his testimony "is unsupported by personal knowledge, is hearsay, . . . is not an appropriate substitute for evidence that was contained on an original belt tape recording of the events that gave rise to the arrest."  Motion in Limine at 2.

Montoya explains that, during her criminal trial, which took place in front of Judge Eichwald, Romero played a copy of his belt tape for the jury.  See Motion in Limine at 2.  She further explains that she anticipates Romero wishes to introduce Judge Eichwald's testimony, because a copy of the belt tape recording left with the Village of Cuba's magistrate court, and Romero's original copy, which was in his possession or the Cuba Police Department's possession, are both lost.  See Motion in Limine at 2.  According to Montoya, Judge Eichwald's affidavit was attached to the Defendants' Motion for Summary Judgment, in which he states: "[I]n my view, as the presiding Judge over Ms. Montoya's criminal trial, there was a good faith factual and legal basis for the charges brought and prosecuted against her Plaintiff Montoya by the district attorney."  Motion in Limine at 3 (quoting Affidavit of the Honorable F. Kenneth Eichwald ¶ 6, at 1 (executed May 17, 2012), filed December 6, 2012 (Doc. 78-2)("Judge Eichwald's First Affidavit"))(original alteration omitted).  Montoya asserts that, because "the essence" of her case is that Romero lied to Judge Eichwald and the jury about the statements and events which gave rise to her arrest, she "did not originally choose to

- 5 -

challenge Judge Eichwald's first affidavit." Motion in Limine at 3.  She contends: "Notwithstanding the conclusion drawn by Judge Eichwald in his first affidavit, since he was not present during the arrest, his lack of personal knowledge concerning the events at issue would render his conclusions concerning the factual and legal basis to be speculation, and thus, inadmissible at trial."  Motion in Limine at 3.

Montoya refers the Court to Exhibit C attached to her Motion in Limine, Affidavit of the Honorable F. Kenneth Eichwald (executed November 19, 2012), filed December 6, 2012 (Doc. 78-3)("Judge Eichwald's Second Affidavit"), and explains that Romero has now "produced to Plaintiff a second affidavit executed by Judge Eichwald, which Defendant intends to use to inform the Court and the jury as to the substance of the lost evidence contained in Defendant officer's belt tape." Motion in Limine at 3.  She argues that the Court should not permit Romero to use this affidavit. See Motion in Limine at 3-4.  In support of her argument, she points out that "Romero . . . concede[s] that [he] made a belt tape contemporaneous to the incident," that Montoya "made multiple formal and informal requests during the course of discovery for the belt tape," and that Romero "responded that the belt tape could not be located."  Motion in Limine at 3-4.

Montoya asserts that, even under a broad interpretation of rule 1004, Judge Eichwald's Second Affidavit is inadmissible, as rule 1004 allows for admission of other than the original document when the original was in the control of the party against whom it is offered, and that situation is not the case here.  See Motion in Limine at 4-5.  She points out that the present situation is the opposite, as the original was in the control of the party seeking to offer the evidence: Romero. See Motion in Limine at 5.  Montoya contends:

[I]f the best evidence rule works the way Defendant suggests it does, this trial will

devolve into a 'mini-trial' concerning the various parties' recollections of what was contained on the copy of the belt tape that was played during the criminal court, and Plaintiff would necessarily have to add jurors on the criminal case as rebuttal witnesses to address Judge Eichwald's testimony.

Motion in Limine at 5. She asserts that, after her multiple discovery requests to obtain the tape to offer the recording in court against Romero, "Defendant cannot now seek shelter under the best evidence rule by pretending he wants to introduce the belt tape (which evidence appears to have contributed to the complete dismissal of all charges against Plaintiff at the criminal trial), against Plaintiff." Motion in Limine at 5-6. She also notes that Judge Brack "has already addressed this precise issue in . . . ruling on Defendant's Motion for Summary Judgment," because, based on "Defendant's counsel['s]" hearsay objection, Judge Brack "declined to consider testimony contained in Plaintiff's affidavit regarding Deputy Watuema's testimony during the criminal trial." Motion in Limine at 6 (citing Summary Judgment MOO at 8).

On December 14, 2012, Romero filed Defendant's Response to Plaintiff's Motion in Limine Regarding the Testimony of the Honorable Kenneth Eichwald. See Doc. 86 ("MIL Response"). Romero argues that, "first and foremost," the Court should deny Montoya's Motion in Limine, because she has failed to account for her copy of the belt recording, and has "refused to respond to a subpoena asking for them to confirm or disavow knowledge of its present whereabouts." MIL Response at 1. Romero asserts that Griego has made a good-faith effort to locate any existing copies, but was unsuccessful, and that he put Montoya "on timely notice that Judge Eichwald would be called to testify regarding the conduct of the trial. His testimony on this key issue is proper, probative and admissible." MIL Response at 1.

Romero asserts that, during the underlying criminal trial, he gave two copies of the recording

to Mr. Howard, one of Montoya's present counsel who represented her during the criminal trial while he worked for the American Civil Liberties Union ("ACLU"), and that Romero gave his "last remaining copy of the recording to the Assistant District Attorney who prosecuted the case." MIL Response at 1-2. Romero goes on to explain:

> Since then, the Magistrate Court has confirmed that the recording was not retained in the Court file. The District Attorney's office claims it does not have the copy provided to it prior to trial. At the status conference held before this Court on December 7, 2010, Mr. Howard represented that he had not retained a copy after he left employment with the ACLU. Defendant than subpoenaed the ACLU for any copies retained in its files. This subpoena was ignored. When Mr. Howard was later asked what he remembered about the recording his only comment was "it was difficult to hear." He would not say, one way or the other, if he heard his client threaten to shoot the Defendant.

MIL Response at 2 (internal citations omitted). He asserts: "Because Mr. Howard and the ACLU cannot, or will not, explain where their copies of this recording went, the Best Evidence Rule comes into play." MIL Response at 2.

Romero asserts that all of the disjunctive rule 1004 elements apply to this case, because the only known original recordings were "with Mr. Howard, the ACLU or the Sandoval District Attorney's Office. These were not destroyed by Defendant." MIL Response at 3. He adds:

> The ACLU has ignored Defendant's subpoena, and the Magistrate Clerk has confirmed they do not have a copy of the recording - meaning the recording is not available by judicial process. The Plaintiff and her attorneys had control over two copies of the recording and have certainly been on notice for some time that the recording would be needed in this case, as is evidenced by the fact they sent discovery requests directed to the recording. Finally, the recording is closely related to a controlling issue -- the Plaintiff's threat to shoot the Defendant.

MIL Response at 3 (internal citations omitted). Romero contends that he also properly gave Montoya notice in accordance with rule 1004. He asserts that he obtained Judge Eichwald's Second Affidavit in November, because, after the Summary Judgment MOO, "the tape's contents became

- 8 -

the critical remaining issue."  MIL Response at 3 (emphasis in original).  Romero asserts that it remains critical evidence and thus asks the Court to deny Montoya's Motion in Limine.

On December 19, 2012, Montoya filed the Plaintiff's Reply to Defendant's Response to Plaintiff's Motion in Limine to Exclude Affidavit of the Honorable Kenneth Eichwald and All Testimony of Kenneth Eichwald Related Thereto.  See Doc. 87 ("MIL Reply").  She asserts that the MIL Response "relies on incorrect information or made-up facts, and at best, relies on facts that are not in evidence."  MIL Reply at 1.  She argues that Romero "attempts to muddy the simple issue as to the origin of the belt tape recording in an attempt to use the stature of a judge under the best evidence rule."  MIL Reply at 1.  Montoya points out that the affidavit upon which Romero relies to assert that Mr. Howard received two copies -- the Affidavit of Jason Griego (executed December 10, 2012), filed December 14, 2012 (Doc. 86-1)("Griego Affidavit") -- "states that 'prior to the trial I had provided two (2) copies of  [the recording] to the District Attorney's office responsible for prosecuting the case,'" not to Mr. Howard.  MIL Reply at 1 (quoting Griego Affidavit ¶ 3, at 1)(alteration in original).  She thus asserts that the "Defendant's contention that Mr. Howard received two copies is incorrect, made-up or relies on facts not in evidence."  MIL Reply at 2.

Montoya also asserts that Romero's representations that Mr. Howard said that he could not remember what he heard on the tape or that it was difficult to hear what was on the tape "are offered completely out of context, are inaccurate and are unsupported by the record," and the Court should therefore not rely on them.  MIL Reply at 2.  She also contends that Romero has not proven that he did not act in bad faith in relation to attempting to retrieve the original recording, as he denied four of her requests "to have the Defendant's hard drive inspected by mutually agreeable computer technician [sic] to bring resolution to the issue."  MIL Reply at 2 (citations omitted).

Montoya argues that Romero is attempting to "blur the issue" by attempting to blame the loss of the recording on her, because the rule addresses the loss of the "original" recording, not "the loss of <u>existing</u> copies which are not the original recording." MIL Reply at 2 (emphasis in original). Additionally, Montoya notes that Mr. Howard and the ACLU have explained that the copy that the ACLU submitted as a trial exhibit was its only copy of the recording and the recording was not returned to the ACLU or Mr. Howard after the trial. <u>See</u> MIL Reply at 3 (citing Letter from Rachel E. Higgins to James P. Lyle, dated October 29, 2012, filed December 19, 2012 (Doc. 87-1)).

Montoya contends that the first element -- an original is not required if the original was lost or destroyed, and not by the proponent in bad faith -- weighs in her favor, because Romero lost or destroyed the original, and is now attempting to use Judge Eichwald's stature to influence the jury. Second, she contends that the second possibility -- that the original cannot be obtained through judicial process -- also weighs in her favor, because Romero refused her request to reopen discovery for the limited purpose of allowing a computer technician to attempt to retrieve the recording from the police department's computers. Third, Montoya reiterates that Romero cannot meet this element, because Romero had the original copy and seeks to offer the substitute evidence -- Judge Eichwald's testimony -- against Montoya. Last, Montoya asserts that rule 1004's fourth element also does not help Romero, as the rule allows substitution for the original where it is not closely related to a controlling issue, and Romero's MIL Response concedes that what was said in the recording is a controlling issue. <u>See</u> MIL Reply at 3-5. Montoya requests that the Court therefore grant her Motion in Limine, and exclude Judge Eichwald's testimony and any affidavit Romero may seek to offer at trial. <u>See</u> MIL Reply at 5.

At the hearing on the Motion in Limine, Romero stated that Judge Eichwald plans to provide

live testimony at trial, so Romero will not seek to introduce into evidence an affidavit.  See Transcript of Hearing at 5:2-3 (taken April 25, 2013)(Lyle)("Tr.").[1]  The Court noted that it appears that there are two issues with Judge Eichwald's testimony -- both a hearsay and best evidence rule issue -- and, taking the hearsay issue first, asked Montoya whether Romero would be offering the statements for their truth, or rather for the impression that they had on Romero when he heard them.  See Tr. at 5:4-19 (Court, Higgins).  Montoya responded that, because the issue that she and Romero are contesting is whether she actually made a statement which would constitute assault on a police officer, Judge Eichwald's testimony about the belt tape recording would go to the truth of whether she made the statement.  See Tr. at 5:22-6:7 (Higgins).  The Court asked Montoya whether it would be hearsay if Romero took the stand and said that she threatened him, to which Montoya conceded that it would not.  See Tr. at 6:8-15 (Court, Higgins).  In response to the Court's question whether, assuming the Court had the tape and played it for the jury, that would change in any way Montoya's conclusion about the statements made in the tape, Montoya conceded that playing the tape would not change her conclusion.  See Tr. at 6:16-20 (Court, Higgins).  The Court asked whether the problem was having Judge Eichwald come in to court and testify, second-hand, to what he heard on the tape, and Montoya answered that is the hearsay problem that she is asserting, because Judge Eichwald would be testifying whether the statement was made at all and to the words and tone used in the statement, and Romero is offering it for the truth whether Montoya said she would shoot Romero.  See Tr. at 6:24-7:4 (Higgins).

Montoya asserted that the issue relating to the best evidence rule in this case is "simple":

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and line numbers.

Romero, the party in control of the original recording, cannot, after losing or destroying the original, substitute Judge Eichwald's testimony and offer that testimony against Montoya as the opposing party. See Tr. at 7:22-8:9 (Higgins). The Court asked whether, if Romero can fit Judge Eichwald's testimony in any of subparts A through D to rule 1004, the Court can exclude it because it relates to a controlling issue in the case. See Tr. at 8:21-9:3 (Court). She conceded that she cannot, but asserted that Romero cannot just assert the recording is lost and then substitute Judge Eichwald's testimony. See Tr. at 9:4-6 (Higgins). The Court asked Montoya how, if the recording is lost, and she does not assert that Romero is acting in bad faith, Judge Eichwald's testimony does not meet rule 1004(a)'s test for admission of other evidence about the original's contents. See Tr. at 10:1-6 (Court). Montoya responded that she is not asserting that Romero is acting in bad faith. See Tr. at 9:16-17 (Higgins). She asserted, however, because Romero created the recording and possessed the only original copy of the recording, and because Romero lost or destroyed that copy, he cannot qualify as the "proponent" of the evidence as rule 1004 uses that term. Tr. at 10:7-19 (Higgins). She stated that her position is that this case is a problematic one in which to apply the best evidence rule, noting:

> The complication in this case and in general in many cases that involve police officers, the police officer was in a position to create the belt tape and maintain the belt tape and retain the belt tape. As in some cases that belt tape in this case is unavailable to plaintiff. We can't develop the evidence as to why it is missing. We don't know why.

Tr. at 11:4-11 (Higgins). The Court asked whether Montoya has a duplicate, or if, unless the Court excludes all evidence about the recording, Judge Eichwald's testimony is the only other evidence either party is offering about the recording's contents. See Tr. at 12:2-7 (Court, Higgins). Montoya responded that the Court is somewhat correct, but that, in addition to Judge Eichwald's testimony,

she also obtained evidence about the contents from two jurors that she deposed, Mr. Howard, who was present at the trial, and herself.  See Tr. at 12:8-17 (Higgins).

Montoya asserted that what most concerns her about Judge Eichwald's testimony is that Judge Eichwald will testify about the recording's contents, and the jury will give favorable weight to his testimony above all others because he is a judge.  See Tr. at 13:8-11 (Court, Higgins).  The Court asked whether Montoya would agree to Judge Eichwald's testimony if the Court excludes all evidence about Judge Eichwald's occupation and under what circumstances he heard the recording.  See Tr. at 13:12-16 (Court).  Montoya responded that proposal does not resolve her concern, because Judge Eichwald has a recognizable name, and because potential jurors may hail from that area of New Mexico.  See Tr. at 13:17-23 (Higgins).

Romero first took up argument on the issue whether the recording's contents are hearsay.  He asserted that "[w]hether or not Ms. Montoya in fact intended to shoot the officer . . . [--] the truth of that statement [--] is . . . not the importance."  Tr. at 15:4-7 (Lyle).  Romero thus asserted that, if the recording were obtained and brought to court, it would be admissible, non-hearsay.  See Tr. at 15:12-15 (Court, Lyle).  He stated that the important issue is whether a witness is allowed to come to trial and testify: "this is what the contents of the document says," and asserted that rule 1004(a) permits that evidence, because the original is lost or destroyed.  Tr. at 15:16-16:6 (Court, Lyle).  Romero pointed out that he is the only Defendant remaining in the case at this stage and that he "long ago" relinquished control of the recording, as he no longer works for the Cuba Police Department.  Tr. at 16:6-12 (Lyle).  He noted that this fact shows there is no evidence of bad faith on his part and also shows that Montoya must take some, if not more, blame than he, because she personally, at some point, had possession of the recording.  See Tr. at 16:12-23 (Lyle).

- 13 -

The Court asked whether Romero's position is that Judge Eichwald testifying at trial about the recording's contents does not raise any hearsay-within-hearsay issue.  See Tr. at 17:19-22 (Court).  Romero responded that the Court has correctly stated his position, that he does not believe there is any hearsay problem, and that, because Judge Eichwald had direct knowledge about the recording's contents, specifically whether it recorded Montoya telling Romero that she was going to shoot him, which he is not offering for its truth, there is no hearsay issue present.  See Tr. at 17:23-18:17 (Lyle).

Montoya responded that, "if the Court allows witnesses to testify as to the contents of the belt tape, in that event plaintiff will have to bring jurors to trial to talk about their recollections of what was contained in the tape."  Tr. at 18:25-19:3 (Higgins).  She noted that, if the Court excludes the testimony, then Montoya will testify to what she said or did not say, and Romero will contradict or confirm that testimony, leaving the jury with likely conflicting testimony and, as the factfinder, it can choose which of those two stories to believe.  See Tr. at 19:3-10 (Higgins).  She asserted that the only difference in bringing in Judge Eichwald to testify about the recording's contents, is that, because he is a judge, his judicial status would improperly lean the scale to one side, in favor of Romero.  See Tr. at 19:11-22 (Higgins).  The Court asked Montoya whether the available testimony, if she brought in multiple jurors to contradict Judge Eichwald's recollection about the recording, might favor her position, as the Court might be inclined to find credible multiple jurors who recollected the trial events more accurately than the judge, because a trial judge in a trial is often more focused on getting the law right than getting the specific factual details right.  See Tr. at 20:20-21:5 (Court).  Montoya responded that, while she understands the Court's position, Judge Eichwald's testimony will not take that position, as he states in his affidavits that "he has a clear memory."  Tr.

- 14 -

at 21:6-15 (Higgins).

The Court asked Montoya whether she still believed there is a hearsay problem with Judge

Eichwald's testimony:

> Go back to, you know, somebody testifying about the contents of a document. If they really don't care anything about whether the statement in the document is true or not, if they're simply saying, "I read that document," so that's firsthand knowledge, and be this is . . . what it said, you have maybe a problem with the original document, whether that's hearsay or not, but with a belt tape, given that it's the -- it's the statement of the plaintiff, I'm beginning to wonder if there is . . . a hearsay problem, because it's -- it's firsthand, and if it's not -- you know, the person that's testifying here couldn't care less whether the statement was made or not. I mean, it's strictly -- it's strictly being offered for the fact that it was made, that they heard it.

Tr. at 21:17-22:4 (Court). She agreed that, if the parties could play the belt tape, there would be no

hearsay issue; but she stated that Judge Eichwald's statements about the tape's contents "could be

hearsay, particularly in this case, where the words . . . the defendant[] would like to [insert] into the

belt tape . . . have legal significance with regard to an arrest for assault on a police officer." Tr. at

22:5-13 (Higgins). The Court asked why, if Montoya's statements on the belt tape are admissible,

non-hearsay, she believes that Judge Eichwald's testimony about those same statements is hearsay.

See Tr. at 23:12-15 (Court). She replied:

> Because in this case the truth of the matter asserted is whether or not the plaintiff made that statement, not whether or not she intended to do it. The truth of the matter asserted is whether the plaintiff said, "I'm going to shoot you." Not whether they meant to or intended to, but within the context of assault, two counts, on a police officer whether she said those words. Thus, if we have witnesses testifying to what they remember or don't remember or could hear or could not hear, they really are offering hearsay for -- they're offering hearsay statements for the truth of the matter, because her intentions and plans are not in question with regard to this crime and probable cause. It's whether she said those words.

Tr. at 23:16-24:3 (Higgins).

## **RELEVANT LAW REGARDING HEARSAY**

"Hearsay testimony is generally inadmissible." Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., No. CIV 10-0698 JB/RHS, 2013 WL 311846, at *13 (D.N.M. Jan. 18, 2013)(Browning, J.)(citing Fed. R. Evid. 802). Under rule 801(c) of the Federal Rules of Evidence, "'[h]earsay' means a statement that: **(1)** the declarant does not make while testifying at the current trial or hearing; and **(2)** a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination." United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999). A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including to impeach a witness. See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay. If admitted for impeachment purposes, however, it is not hearsay.").

"'[T]estimony is not hearsay when it is offered to prove only that a statement was made and not the truth of the statement.'" Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., 2013 WL 311846, at *19 (original alterations omitted)(quoting Creaghe v. Iowa Home Mut. Cas. Co., 323 F.2d 981, 984 (10th Cir. 1963)). Statements offered not to prove the truth of the statements, but rather "offered for the effect on the listener . . . are generally not hearsay." Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1434 (10th Cir. 1993). See United States v. Smalls, 605 F.3d 765, 785 n.18 (10th Cir. 2010)("[S]tatements offered for their effect on the listener are not hearsay."). Thus, "[l]egally operative statements -- statements [that] have legal effect by the mere fact of their statement -- are generally not for the 'truth of the matter asserted,' but rather to show the fact of the statement being

- 16 -

made and for the effect of the statement on the hearer." Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., 2013 WL 311846, at *19 (original alterations omitted)(quoting Barner v. City of Harvey, 95 C 3316, 1998 WL 664951, at *2 (N.D. Ill. Sept. 18, 1998))(internal quotations omitted).

       In Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., the plaintiffs objected to the defendants' use of documents relating to third parties' bankruptcy proceedings, asserting that the statements the defendants' wished to use were inadmissible hearsay statements. See 2013 WL 311846, at *19. The defendants asserted, however, that they intended to offer the bankruptcy proceedings to show that the plaintiffs had notice of the third parties' bankruptcy filings, and did not assert claims against the third parties in the third parties' bankruptcy proceedings; the defendants were also offering the proceedings, including settlement stipulations, to show that the plaintiffs failed to mitigate their damages. See 2013 WL 311846, at *19. The Court concluded that, to the extent the defendants were offering the documents to show that the plaintiffs had notice of the third parties' bankruptcy filings, the defendants were offering the statements therein for the non-hearsay purpose "to show the effect that the documents had upon the listener -- or in this case, the reader." 2013 WL 311846, at *19. The Court additionally concluded:

> [T]o the extent that [the defendants] are offering the documents to show that the parties to this action reached a legally binding agreement to discharge any claims against the [the third parties] that they might have for less than the full amount of money owed to them by the [third parties], the statements are not being offered for the truth of the matter asserted, but rather as evidence of the legal effect of the agreement, the statements are "legally operative statements" and are thus not hearsay.

2013 WL 311846, at *19 (citing Barner v. City of Harvey, 1998 WL 664951, at *2).

## **RELEVANT LAW REGARDING THE BEST EVIDENCE RULE**

"The best evidence rule, set forth in Federal Rule of Evidence 1002, holds that 'to prove the

content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress.'" <u>United States v. Phillips</u>, 543 F.3d 1197, 1203-04 (10th Cir. 2008)(quoting Fed. R. Evid. 1002).  Rule 1004 of the Federal Rules of Evidence provides for cases in which other evidence of the original's contents is admissible:

> An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if:
>
> **(a)** all the originals are lost or destroyed, and not by the proponent acting in bad faith;
>
> **(b)** an original cannot be obtained by any available judicial process;
>
> **(c)** the party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing; or
>
> **(d)** the writing, recording, or photograph is not closely related to a controlling issue.

Fed. R. Evid. 1004.  Professor Stephen A. Saltzburg has noted that "[r]ule 1004 recognizes that the Best Evidence Rule is a rule of preference, and not necessarily a rule of exclusion."  5 Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, <u>Fed. Rules of Evidence Manual</u> § 1004.02, at 1004-2 (9th ed. 2006).

Before admitting secondary evidence regarding a writing, recording, or photograph under rule 1004(a), the district court must inquire: (i) whether the original was actually lost or destroyed; and (ii) whether the party offering the evidence of the original's contents has acted in bad faith.  <u>See</u> <u>Cross v. United States</u>, 149 F.3d 1190, 1998 WL 255054, at *4 (10th Cir. 1998)(unpublished table opinion)("Rule 1004(1) thus requires the court to undertake two related inquiries before admitting

secondary evidence regarding a document: (1) whether the document in question was actually lost or destroyed, and (2) whether the party offering the document has acted in bad faith.")(citing United States v. McGaughey, 977 F.2d 1067, 1071 (7th Cir. 1992); Seiler v. Lucasfilm, Ltd., 613 F. Supp. 1253, 1260-62 (N.D. Cal. 1984), aff'd, 808 F.2d 1316 (9th Cir. 1986)).[2]   As to the inquiry's first prong, loss or destruction may commonly be proven by "'use of evidence showing a diligent but unsuccessful search and inquiry for the [original],'" and, even if "the proponent is unable to explain with absolute certainty what happened to the original document," the district court may properly admit secondary evidence.  Cross v. United States, 1998 WL 255054, at *5 (quoting United States v. McGaughey, 977 F.2d at 1071)(citing United States v. Cambindo Valencia, 609 F.2d 603, 633 (2d Cir. 1979)).   As to the inquiry's second prong -- negligent destruction of the original or the possibility that the proponent tampered with the secondary evidence is likely insufficient for bad faith -- "the purposeful destruction or withholding of original[s] . . . and the fabrication of secondary evidence will support a finding of bad faith."  Cross v. United States, 1998 WL 255054, at *5 (citing Seiler v. Lucasfilm, Ltd., 613 F. Supp. at 1255-63).

In Cross v. United States, the Tenth Circuit held that the court properly admitted secondary evidence to show that the plaintiffs, the Crosses, executed an Internal Revenue Service ("IRS") Form

---

[2] Cross v. United States is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . .  However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."  United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that United States v. Cross has persuasive value with respect to a material issue, and that it will assist the Court in its disposition of this Memorandum Opinion and Order.

870-AD, because the IRS presented evidence that "its officials have undertaken a diligent search for the Form 870-AD and have been unable to find it," and because the Crosses did not argue that the IRS acted in bad faith in relation to the original's loss or destruction.[3]  1998 WL 255054, at *5.  The IRS had assessed the Crosses a deficiency on their income taxes from 1974-76 and 1979-80, and the Crosses reached agreement with the IRS as to the additional assessments that they would pay to the IRS.  See 1998 WL 255054, at *1.  The IRS appeals officer sent to the Crosses' accountant a Form 807-AD memorializing the agreement, and requested that the accountant obtain the defendants' signatures and return the form within ten days.  See 1998 WL 255054, at *1.  After several years of making payments to the IRS, the IRS levied on the Crosses' property to collect additional taxes owed, and the Crosses' attorney then requested that the IRS produce a copy of the statutory deficiency for 1974-76 and 1979-80, and the Crosses' Form 807-AD, if any, waiving their statutory notice requirements.  See 1998 WL 255054, at **1-2.  When the IRS told the Crosses' attorney that it could not locate the Form 807-AD, the Crosses filed suit asking the district court to enjoin the IRS levy or any attempt to collect taxes the Crosses allegedly owed.  See 1998 WL 255054, at *2.  The district court granted the Crosses' request for a preliminary injunction, reasoning that the IRS had the burden to demonstrate that the "Crosses had waived the notice of deficiency requirements for the subject tax years" and that the IRS had not met that burden.  1998 WL 255054, at *2.  The IRS filed a response and presented several IRS officers' affidavits "regarding its routine practices in entering

---

[3] The Tenth Circuit in Cross v. United States noted: "A Form 870-AD is an IRS document that is used when the IRS and taxpayer have reached an agreement as to the additional amount owed by the taxpayer or the amount of overassessment by the IRS."  1998 WL 255054, at *1.  "The IRS refers to the form as an 'Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment.'"  Cross v. United States, 1998 WL 255054, at *1 n.1 (citation omitted).

into agreements with taxpayers," which explained that "agency procedures required five levels of review before a case could be closed and a tax assessment made." 1998 WL 255054, at *2. The affidavits asserted that "none of these five steps would be completed unless a Form 870-AD had been signed by the taxpayers," as "[t]he standard procedures made it virtually impossible to permit an assessment without the taxpayers' signature on Form 870-AD." 1998 WL 255054, at *2 (internal alterations and citations omitted). Based on these affidavits, the district court concluded that, "although the IRS has been unable to produce a signed copy of the Form 870-AD, it has met its burden of proof through the use of circumstantial evidence," and dissolved the preliminary injunction. 1998 WL 255054, at *2 (internal alterations and quotations omitted). The Tenth Circuit agreed, upholding both the district court's decision to admit the secondary evidence under rule 1002 and its decision that the affidavits were sufficient to conclude that the Crosses' had executed the Form 870-AD. See 1998 WL 255054, at 5-9.

The Court has previously concluded that, where the United States failed to preserve text messages responding to the defendant's text messages, the person who responded to the defendant's text messages and another witness who saw the text messages could both testify about the contents of the lost text messages. See United States v. Harry, No. CR 10-1915 JB, 2013 WL 684646 (D.N.M. Feb. 19, 2013)(Browning, J.). The United States sought to use the text messages against the defendant, Myron Harry, that he sent the morning after his alleged sexual assault, and Harry moved to suppress the text messages on the grounds that the messages were unfairly prejudicial without the reply text messages from Harry's friend, Dmitri Wauneka, on the other side of the conversation. Wauneka testified at the suppression hearing that he may have replied to each of eight messages about the assault, and that he showed another individual, Stephanie Johnson, each text message he

wrote in reply to Harry's messages.  See 2013 WL 684646, at *3.  The criminal investigators with the Navajo Nation interviewed Harry and Wauneka, and Harry told the investigators that he was text messaging with Wauneka, but when the criminal investigators interviewed Wauneka, although Wauneka's reply messages were stored on his telephone, and although one of the investigators saw those reply messages, the investigators photographed only the text messages that Harry sent and not those that Wauneka sent.  See 2013 WL 684646, at *4.  Because the United States possessed the text messages that Wauneka sent in reply to Harry's text messages when the United States interviewed Harry and Wauneka after the alleged sexual assault, but did not preserve them, Harry argued that the Court should suppress his text messages.  See 2013 WL 684646, at *1.  The Court concluded that Harry's messages were admissible, and that the United States did not act in bad faith in losing Wauneka's text messages, because the reply messages' exculpatory value, if any, was not immediately apparent, and the cellular telephone, not the government, deleted the messages.  See 2013 WL 684646, at 22-29.  The Court noted that, "although rule 106 might have allowed Harry to introduce Wauneka's outgoing text messages at trial, Harry is not left without a remedy," because, under rule 1004, Harry "may be able to testify himself as to, or elicit from the testimony of other witnesses, a description of Wauneka's outgoing messages," subject, however, to the hearsay rules and the other Federal Rules of Evidence.  2013 WL 684646, at 28.

## ANALYSIS

The Court concludes that rule 1004 allows Romero to offer additional evidence of the belt tape recording's contents, because the recording is lost or destroyed, and not by Romero acting in bad faith.  Additionally, the rule against hearsay does not preclude Romero offering Judge Eichwald's testimony about the recording's contents as this additional evidence, including Judge

Eichwald's testimony that Montoya stated that she would shoot Romero.  Romero is not offering

Judge Eichwald's testimony about Montoya's statements on the recording to prove the truth of any

assertions she made in those statements, but rather only as evidence that she made the statements.

Finally, in accord with the parties' agreement at the hearing, the Court will grant the Howard MIL

and exclude from trial Mr. Howard as a witness, or any testimony or questioning connecting Mr.

Howard to the belt tape recording's contents.

**I.      JUDGE EICHWALD'S TESTIMONY ABOUT THE BELT TAPE RECORDING'S
        CONTENTS IS ADMISSIBLE, BECAUSE THE RECORDING IS LOST OR
        <u>DESTROYED, AND NOT BY ROMERO IN BAD FAITH.</u>**

Montoya asserts that what she said before Romero arrested her "goes to the essence of [her]

claims [and] is for the jury to decide," and asserts:

> It is absolutely clear that [Romero] lost or has otherwise been unable to produce the
> original piece of evidence, thus, he cannot benefit from the best evidence rule by
> offering testimony from a third party simply by claiming that the evidence no longer
> exists. Clearly the best evidence rule is inapplicable to this situation and any and all
> testimony which purports to address this subject is inadmissible . . . .

Motion in Limine at 5.  Montoya fails to cite any authority for the proposition that the best evidence

rule does not apply here.  And indeed she cannot, because, as Professor Saltzburg recognizes, "the

Best Evidence Rule is a rule of preference, not necessarily a rule of exclusion."  5 Saltzburg et al.,

<u>supra</u>, § 1004.02, at 1004-2.  Accordingly, rule 1004(a)'s plain language allows a party to provide

circumstantial evidence of a recording's contents where the recording is lost or destroyed unless the

evidence's proponent lost or destroyed the recording acting in bad faith.  <u>See</u> Fed. R. Evid. 1004(a).

Montoya conceded at the hearing that she is not contending that Romero acted with any bad faith

here.  <u>See</u> Tr. at 9:16-17 (Higgins).

Nevertheless, before admitting Judge Eichwald's testimony as secondary evidence of the

recording, the Court must inquire whether the original was lost or destroyed.  See Cross v. United States, 1998 WL 255054, at *4 ("Rule 1004(1) thus requires the court to undertake two related inquiries before admitting secondary evidence regarding a document: (1) whether the document in question was actually lost or destroyed, and (2) whether the party offering the document has acted in bad faith.").  In relation to this inquiry, the Tenth Circuit has stated that diligent inquiry is enough, and that finding loss or destruction does not require certainty about the circumstances surrounding the evidence's omission:

> As to the first inquiry, we note that "'[b]y far the most common means of prov[ing] loss or destruction is the use of circumstantial evidence showing a diligent but unsuccessful search and inquiry for the document.'"  McGaughey, 977 F.2d at 1071 (quoting 5 Weinstein's Evidence ¶ 1004(1)[05] at 1004-18 (1983)).  If the proponent demonstrates that such a diligent search has been conducted, courts have admitted the secondary evidence even though the proponent is unable to explain with absolute certainty what happened to the original document.  See, e.g., United States v. Cambindo Valencia, 609 F.2d 603, 633 (2d Cir. 1979)(allowing secondary evidence after proponent testified that original was either returned to the defendant or lost); United States v. Standing Soldier, 538 F.2d 196, 203 (8th Cir. 1976)(admitting secondary evidence after a witness "testified that he had attempted to locate the original note by contacting the criminal investigator and the FBI, but had been unable to find it, although he thought that it probably did still exist").

Cross v. United States, 1998 WL 255054, at *5.

Romero has met his burden to show that he made diligent inquiry into the circumstances surrounding the evidence's omission.  Romero asserts that "Griego has made a good faith effort to locate any existing copies of this recording" and that no copies of the recording "can be found on Defendant's old computer hard drive."  MIL Response at 1.  He also represents that he inquired whether "[t]he Sandoval Magistrate Court," the court at which Montoya's criminal prosecution took place, had a copy, but the Sandoval Magistrate Court informed Romero "that the recording was not retained in the Court file."  MIL Response at 2 (citing Affidavit of Diana Velarde ¶¶ 1-2, at 1

(executed December 13, 2012), filed December 14, 2012 (Doc. 86-2)).  Romero also asked the Sandoval County District Attorney's Office if it had retained a copy of the belt tape recording, which Romero represents "does not have the copy provided to it prior to trial."  MIL Response at 2 (citing Griego Affidavit ¶¶ 4-5, at 1-2).  The Court concludes that, although Romero cannot explain with certainty whether or why the recording is lost or was destroyed, he met his burden to prove the original's "loss or destruction" by "showing a diligent but unsuccessful search and inquiry for the [recording]."  Cross v. United States, 1998 WL 255054, at *5 (internal quotations omitted).

Montoya argues that these efforts are insufficient to prove the original's loss or destruction, because "between October 29, 2012 and December 13, 2012," four times she sought Romero's agreement to allow computer technicians to analyze Romero's hard drive to see if they could recover the recording.  MIL Reply at 2.  Given that this fact was brought to the Court's attention in the reply brief, Romero did not explain why he would not agree to inspection of his hard drive.  If Montoya objected to Romero's lack of agreement earlier on in this litigation, perhaps during discovery, the Court may have taken that opportunity to seek explanation why Romero would not so agree.  The issue was not brought to the Court's attention, however, until now, and the Court can only speculate why Romero would not so agree.  Given that Romero asserts many times in his briefing and at the hearing that "the tape's content [is] the critical remaining issue," MIL Response at 3 (emphasis in original), it somewhat troubles the Court that Romero would not acquiesce Montoya's request to his hard drive's inspection "by [a] mutually agreeable computer technician," MIL Reply at 2.  Montoya may be able to elicit testimony on this topic at trial that exposes that Romero has not conducted a thorough search, but at the moment, the Court has no reason to believe that the recording still exists.

The Tenth Circuit does not, however, require that the evidence's proponent exhaust every

possible means of obtaining the original.  It requires that, to meet rule 1004(a)'s loss or destruction element, Romero, as the supplemental evidence's proponent, put forth circumstantial evidence showing a diligent but unsuccessful search and inquiry for the recording.  See Cross v. United States, 1998 WL 255054, at *5.  And Romero put forth sufficient evidence to meet that requirement. Because Montoya concedes that he is not acting in bad faith, the Court concludes that Romero met his burden under rule 1004(a), and "other evidence of the content of the" belt tape "recording is admissible."  Fed. R. Evid. 1004.

## II.     JUDGE EICHWALD'S TESTIMONY ABOUT THE RECORDING'S CONTENTS IS NOT HEARSAY.

As evidence of the belt tape recording's contents, Romero wishes to offer Judge Eichwald's testimony, the trial judge who presided over her underlying criminal trial, about what he heard on the recording when the parties played it during the criminal trial.  Montoya contends that, because Judge Eichwald heard Montoya's statements on the tape, which she made out of court, and because Romero wants to offer those to show that she made the statements, the Court should exclude Judge Eichwald's testimony as hearsay not falling within any exception.  The Court concludes that, because Romero is offering Judge Eichwald's testimony about Montoya's statements on the tape to prove whether she made a statement, rather than offering Judge Eichwald's testimony to prove any of her statements' truth, Judge Eichwald's testimony is admissible, non-hearsay.

Although rule 1004 provides that other evidence of a document's, photograph's, or recording's contents "is admissible" if the original is lost or destroyed, the courts agree that evidence admissible under this rule "still remains subject to other objections under the Evidence Rules and the Constitution."  31 Charles A. Wright & Victor J. Gold, Fed. Practice & Procedure: Evidence § 8013,

at 442 (2000).  See, e.g., Estate of Gryder v. C.I.R., 705 F.2d 336, 338 (8th Cir. 1983)("[T]he

Commissioner could seek to prove their contents by secondary evidence" under rule 1004(1) . . . . [;

h]owever, the transcript remained hearsay even though the requirements of Rule 1004 had been

met.").  Dealing with an issue similar to that which Judge Eichwald's testimony presents, the United

States Court of Appeals for the Fourth Circuit found that Wal-Mart employees' testimony whether

they saw on a lost videotape the plaintiff, another Wal-Mart employee who worked as a cashier,

allow a customer to check out without paying, was not hearsay.  See Nicholas v. Wal-Mart Stores,

Inc., 33 F. App'x 61, 67-68 (4th Cir. 2002).  Wal-Mart fired the plaintiff for helping a customer

shoplift, because, according to Wal-Mart, a surveillance videotape caught the plaintiff handing

merchandise to the customer and allowing him to leave without paying.  See 33 F. App'x at 63-64.

When Wal-Mart found that the videotape was lost or destroyed before the plaintiff filed his lawsuit

against Wal-Mart, Wal-Mart sought to introduce, under rule 1004(1), the testimony of employees

who had seen the videotape as other evidence of the tape's contents.  See 33 F. App'x at 67.  The

trial judge granted the plaintiff's motion in limine to exclude the evidence on the grounds that the

employees' testimony was inadmissible hearsay.  See 33 F. App'x at 67.  The Fourth Circuit reversed

and remanded the case to the trial court to determine whether the employees' testimony is admissible

under rule 1004, concluding that, "[i]n determining that the contents of the tape were hearsay, the

district court erred," because "the conduct on the tape is not assertive conduct, and as such, is not

hearsay."  33 F. App'x at 67.

 Because Romero seeks to offer Judge Eichwald's testimony about Montoya's statements on

the belt tape recording to show her statements' operative legal effect, Romero is offering Montoya's

statements for a non-hearsay purpose.  The belt tape recording is "the critical remaining issue" in the

case, MIL Response at 3 (emphasis in original), because, if, as Romero asserts, the belt tape recording recorded Montoya saying to Romero that she was going to shoot him, then her statements legally constituted assault on a police officer and provided Romero probable cause for Montoya's arrest.  See Summary Judgment MOO at 13 (noting that Romero arrested Montoya for "Assault Upon a Peace Officer," in violation of N.M.S.A. 1978, § 30-22-1, which is defined as "'any unlawful act, threat or menacing conduct which causes a peace officer while he is in the lawful discharge of his duties to reasonably believe that he is in danger of receiving an immediate battery'")(quoting N.M.S.A. 1978, § 30-22-21(A)(2)).  Alternatively, "if [Romero]'s characterization of [Montoya]'s statements is false, and [Montoya]'s true, then [Montoya]'s arrest was without probable cause and was thus illegal."  Motion in Limine at 2 (citing Summary Judgment MOO at 14).

The parties both conceded at the hearing that, if they possessed the belt tape recording, they could play it in open court, because Montoya's statements are admissible non-hearsay.  See Tr. at 6:8-15 (Court).  Thus, Montoya's position is that Romero is offering Judge Eichwald's testimony for the truth of whether she said the statement at all, which is exactly what she disputes, and thus Romero is offering the statement for its truth.  See Tr. at 7:5-11 (Court, Higgins).  Montoya's position, however, misreads the rule against hearsay, and, if accepted, would leave rule 1004 without effect.  Judge Eichwald will supposedly testify that, on the recording, he heard Montoya say that she would shoot Romero, not to prove she intended to shoot Romero, but to prove that she said the statement at all and, in doing so, gave Romero probable cause to arrest her.

Offering Judge Eichwald's testimony whether he heard Montoya say she was going to shoot Romero on the recording, to prove that Montoya made the statement, is similar to Wal-Mart wanting to offer its employees' testimony in Nicholas v. Wal-Mart Stores, Inc. whether they saw on the

surveillance videotape the plaintiff cashier hand the merchandise over to the customer without payment, to prove that the plaintiff took that act. The assertion in Montoya's disputed statement is that she will shoot Romero, and so that statement is hearsay under rule 801(c) only to the extent Romero would seek to "offer[] [it] into evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). In other words, that statement is hearsay only if offered to prove that she would shoot Romero. Because Romero is offering Judge Eichwald's testimony to prove only that Montoya made the statements -- to prove she violated N.M.S.A. 1978, § 30-22-21(A)(2) and gave Romero probable cause to arrest her -- he is offering the statements "as evidence of the legal effect of the [statements], [and] the statements are 'legally operative statements' and are thus not hearsay." Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., 2013 WL 311846, at *19 (citing Barner v. City of Harvey, 1998 WL 664951, at *2). Offering the statements to prove only that Montoya said that statement at all, a non-hearsay purpose, puts this case on all fours with Nicholas v. Wal-Mart Stores, Inc., in which the Fourth Circuit concluded that offering employees' testimony about conduct on a lost videotape for its non-hearsay purpose to prove only that the conduct took place did not violate the rule against hearsay. See 33 F. App'x 61, 67-68.

Anytime rule 1004(a) is used to provide witness testimony about the content of a document -- or photograph or recording -- the witness must testify about the statements in the document. The testimony about what is in the document is an in-court statement and is subject to cross-examination. Montoya can thus question Judge Eichwald when he heard the tape and why, about all of the statements he heard on the recording, and bring out for the jury whether he clearly and correctly recalls the recording as a whole. On the other hand, rule 1004(a) does not allow a person to come to court and testify about a document to prove that the statements in the document are true. Cf., e.g.,

<u>Owen v. United States</u>, 34 F. Supp. 2d 1071, 1075-76 (W.D. Tenn. 1998)(finding that, where the plaintiffs alleged that they paid additional taxes on condominiums, but could not find the receipts or other proof of payment, although rule 1004(a) permitted their accountant's testimony about the receipts and proof of payment, the rule against hearsay precluded her testimony for the truth that they made those payments).  The statements in the recording are still subject to the same hearsay analysis to which they would be subject if Romero sought to offer the recording.  If the recording can come into evidence, so can Judge Eichwald's testimony about the statements he heard on the recording. And no party disputes the recording's admissibility.

Admittedly, as the best evidence rule indicates, the belt tape recording is the best evidence whether the belt tape recording recorded Montoya making that statement, and, as the best evidence rule provides, it would be preferable to have the recording.  <u>See</u> Saltzburg et al., <u>supra</u>, § 1004.02, at 1004-2 ("[T]he Best Evidence Rule is a rule of preference, not necessarily a rule of exclusion."). Rule 1004(a) specifically provides, however, that, where the original is lost or destroyed, as it is in this case, a party may substitute additional evidence of the original's contents.  Judge Eichwald's testimony is that additional evidence in this case.  To conclude that testimony about the original's contents is inadmissible as additional evidence, in addition to being without support in rule 1004's plain language, would create an exception to the rule that would likely swallow the rule.  And the Court will not so conclude.  <u>Cf. Mohawk Indus., Inc. v. Carpenter</u>, 558 U.S. 100, 106 (2009)(declining to adopt a party's exception to the collateral order doctrine, because it would impermissibly stretch the doctrine, and noting that "we have stressed that it must 'never be allowed to swallow the general rule that a party is entitled to a single appeal . . . .'").  Because Romero seeks to offer Judge Eichwald's testimony as additional evidence of the belt tape recording's contents,

which rule 1004(a) permits, and because Judge Eichwald will testify that the recording contained

Montoya's statement that she would shoot Romero, and because Romero offers Montoya's statement

for the non-hearsay purpose of its legal effect, the Court concludes that the rule against hearsay does

not preclude Judge Eichwald's testimony.  Accordingly, the Court will deny Montoya's Motion in

Limine and allow Judge Eichwald's testimony.

## III.   BECAUSE THE PARTIES AGREED AT THE HEARING, THE COURT WILL PRECLUDE MR. HOWARD FROM TESTIFYING AT TRIAL.

After briefing the Motion in Limine, Montoya grew concerned that Romero might seek to call

one of her attorneys, Mr. Howard, to testify at trial about his comments whether he could hear

Montoya's statements on the belt tape recording when it was played for her underlying criminal trial,

and Montoya accordingly filed her Howard MIL to preclude Romero from calling Mr. Howard.  See

Howard MIL at 1.  At the hearing, the Court asked whether Romero intended to call Mr. Howard.

See Tr. at 29:6-8 (Court).  At first, Romero asserted that, as long as the Court allows Judge Eichwald

to testify, he does not need Mr. Howard's testimony, see Tr. at 29:9-12 (Lyle), but then noted there

are other witnesses that may testify about the recording, including the dismissed plaintiff and

dismissed defendants in the case, and conceded that he did not need Mr. Howard's testimony at all,

see Tr. at 29:23-30:6 (Court).  The Court thus asked whether both parties agree that neither party

would call Mr. Howard to testify, or mention, at any point, his statements about what he heard or did

not hear on the belt tape recording, to which both parties voiced their agreement that any mention of

Mr. Howard  would be kept out.  See Tr. at 30:19-31:11 (Court, Higgins, Lyle).  Accordingly, the

Court will grant the Howard MIL and exclude from trial Mr. Howard as a witness, or any testimony

or questioning connecting Mr. Howard to the belt tape recording's contents.

**IT IS ORDERED** that (i) the Plaintiff's Motion in Limine to Exclude Affidavit of the Honorable F. Kenneth Eichwald and Any and All Testimony of F. Kenneth Eichwald and any and all Testimony of F. Kenneth Eichwald Related Thereto, filed December 6, 2012 (Doc. 78), is denied; and (ii) the Plaintiff's Motion in Limine to Preclude Defendant from Calling Leon Howard as a Witness, filed February 11, 2013 (Doc. 111), is granted. The Court will allow the Honorable F. Kenneth Eichwald, Magistrate Judge, Magistrate Court for Division 2 of the Thirteenth Judicial District, State of New Mexico, to testify about Plaintiff Eva Denise Montoya's statements that he heard on Defendant Marcus Romero's belt tape recording.  The Court will not permit Romero to call Leon Howard, Montoya's attorney, at trial, or connect him to the belt tape recording's contents during the trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Laura Schauer Ives
American Civil Liberties Union
Albuquerque, New Mexico

--and--

Leon F. Howard, III
The Law Office of Lucero & Howard, LLC
Albuquerque, New Mexico

--and--

Rachel E. Higgins
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

- 32 -

James P. Lyle
Law Offices of James P. Lyle P.C.
Albuquerque, New Mexico

> *Attorney for Defendant Marcus Romero*