IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EVA DENISE MONTOYA and
BRENDA MOFFETT,

       Plaintiffs,

vs.                                                      No. CIV 11-0814 JB/SMV

VILLAGE OF CUBA, MARCUS ROMERO,
in his individual capacity, JASON GRIEGO,
in his individual capacity, and TOMMY
SALAZAR, in his individual capacity,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion in Limine to Exclude Testimony and Evidence Concerning a Witness's Medical Treatment and Medical Condition, filed July 23, 2013 (Doc. 160)("MIL").  The Court held a hearing on July 31, 2013.  The primary issue is whether the Court should exclude evidence and testimony relating to drug use by Plaintiff Eva Denise Montoya's partner and former co-Plaintiff Brenda Moffett.  Defendant Marcus Romero seeks to introduce evidence that Montoya and Moffett have extensively used certain prescription drugs.  In his view, this evidence tends to prove his revenge motive theory of this case: that is, that Montoya and Moffett sued the Cuba Police Department and its employees because they helped cut off Montoya and Moffett's supply of drugs.  Montoya objects to this evidence under rules 401, 403, and 404(b) of the Federal Rules of Evidence, and rule 26 of the Federal Rules of Civil Procedure.  The Court will deny the Motion in Limine.  The Court finds that the evidence is relevant, because it tends to prove Romero's revenge motive theory.  The Court further finds that this evidence, although prejudicial, is not unfairly so, and that any

unfairly prejudicial effect it causes does not substantially outweigh its probative value.  The Court also will not exclude the evidence under rule 404, because Romero does not offer it for the conduct-in-conformity inference rule 404(a) prohibits; rather, he offers it to prove Montoya's motive to lie, which is a proper purpose under rule 404(b).  Although Montoya cites rule 26 in her MIL, she does not raise a rule 26 argument in her MIL.  The Court will not, therefore, exclude the evidence under rule 26.

## PROCEDURAL BACKGROUND

Montoya moves the Court, under rules 401, 403, and 404(b) of the Federal Rules of Evidence and rule 26 of the Federal Rules of Civil Procedure, to exclude testimony from Dr. Merle Wiseman, M.D. and Paula Enyart, C.N.P. regarding Moffett's medical history.  See MIL at 1-2.  Montoya asks the Court to exclude Dr. Wiseman's deposition testimony relating to certain events at the Cuba Health Clinic in Cuba, New Mexico.  According to this testimony, Cuba Clinic personnel intended to tell Montoya and Moffett that their "[m]orphine intake would be tapered and eventually eliminated as a prescribed treatment"; because they anticipated that this news would upset Montoya, Cuba Clinic personnel asked the Cuba Police Department to dispatch officers to the Cuba Clinic first.  See MIL at 2-3.  Montoya argues that Romero has introduced no evidence of such an incident, or that Romero himself was dispatched to the Clinic.  See MIL at 3.  Montoya further argues that evidence of Moffett's legal prescription to use morphine is irrelevant to either Montoya's or Romero's theories of the case, and that the Court should exclude the evidence under rule 403 as unduly prejudicial.  See MIL at 3.  Citing cases from the United States Court of Appeals for the Tenth Circuit, Montoya argues that "[t]he past or current drug use of a witness becomes relevant to motive only when there is a clear relationship between the witness's motivation to testify in favor of a party and the witness's prior drug use,"

and that there is no reason to think that "Moffatt reasonably believed that her medical treatment would in any way be affected by the fact or content of her testimony in this case."  Motion at 3-4. Further, Montoya contends, no medical provider influenced Moffett's testimony.  <u>See</u> MIL at 3-4.  Montoya argues that the only purpose of introducing this evidence is to impeach Moffett's testimony, and that, under <u>United States v. Sangiovanni</u>, 2013 WL 2285086 (D.N.M. May 13, 2013)(Browning, J.), rule 608 of the Federal Rules of Evidence bars Romero from using extrinsic evidence of drug use to attack Moffett's character.  <u>See</u> MIL at 4.

Montoya also seeks to exclude Dr. Wiseman's video deposition testimony and many of Moffett's medical records, insofar as he based his testimony on those records.  <u>See</u> MIL at 4-5.  Montoya is concerned that Romero seeks to introduce "a medical record chart for Moffett which appears to constitute her entire chart for the period of time she received treatment at the Cuba Health Clinic," and argues that, in addition to the reasons listed above, the Court should exclude those records because Dr. Wiseman did not create or have personal knowledge of many of those charts.  MIL at 5.  Montoya also seeks to prevent the Court from admitting, through Paula Enyart, Moffett's "entire medical chart from Presbyterian Health Care," for the same reasons she seeks to prevent the Court from admitting the Cuba Clinic records, as well as the fact that Ms. Enyart did not create or have personal knowledge of many of those charts.  <u>See</u> MIL at 5.

Romero then filed Defendant's Response to Plaintiff's Motion in Limine to Exclude Testimony and Evidence Concerning the Witness' Medical Treatment and Medical Condition (Document No. 160), filed July 30, 2013 (Doc. 172)("Response").  Romero repeated his basic contention that this suit is part of Montoya and Moffett's pattern of "lashing out" at those who challenged their access to what he calls "large, if not gargantuan, amounts of prescription

narcotic pain and anti-depressant medications."  Response at 1-2.  In Romero's view, Moffett's medical records "will show that they have been engaged in a drug seeking enterprise (mostly, if not entirely paid for by tax or insurance money) for many, many years.  There may be testimony at trial that the [sic] resell many of these drugs."  Response at 2.

According to Romero, Montoya's pattern of "lashing out" began when she "falsely accused a Cuba Health Clinic doctor of abuse or physical assault after being told her pain medication was going to be cut off."  Response at 3.  Romero states: "Dr. Wiseman . . . advised another Cuba Health Clinic doctor that it was their intent to taper both Plaintiff and Moffett off of the narcotic medications, refer them to rehab, and advise Moffett that she will no longer received [sic] any kind of narcotic medication from any of our clinics."  Response at 3 (internal quotation marks omitted).  Romero continues: "Dr. Wiseman's testimony is that the Cuba Police Department must be present when the Plaintiff and her partner, Moffett, came in for refills."  See Response at 3.  Romero further states that when Wiseman and the Clinic informed Montoya and Moffett that they were being cut off -- in the presence of a Cuba Police Department officer -- "the records in question indicate the Plaintiff ran from the office yelling for help."  Response at 3.  Romero indicates that he "may have incorrectly noted in past pleadings that he was present on this day.  In fact, the records indicate that former Defendant [Tommy] Salazar was dispatched."  Response at 3 n.1.

According to Romero, the records also indicate that Montoya and Moffett found another source of drugs, including "a generic form of Ridulin [sic]," "Morphine," "Lorazepam or Adivan [sic]," "Traedal [sic] or Altran [sic]," "Gabapetin [sic] or Norantin [sic]," and "Lidocaine[;]" further, the records also indicate "that Moffett smoked marijuana 'for comfort.'  This was not medical marijuana according to the records."  Response at 3-4.  Romero further contends that

this case fits squarely within the Tenth Circuit's holding that "past recurrent drug use becomes relevant to motive when there is a clear relationship between the witness['] motivation to testify in favor of a party and the witness' prior drug use."  Response at 4 (citing United States v. Robinson, 583 F.3d 1265 (10th Cir. 2009)).  In his view, "Moffett's conduct as Plaintiff's life partner has been an intrinsic part of their life together for many, many years and provides a clear understanding of why she has been motivated to participate in this lawsuit, first as a party and now a witness for the Plaintiff."  Response at 4.

Romero argues that asking custodians to authenticate the records on which Dr. Wiseman relied would take up too much of the Court's time.  See Response at 4.  Romero also contends that he offers this evidence, not to attack Montoya's reputation for truthfulness, but because it is probative of the events in question, or about whether, "at the time the witness testifies at trial, . . . the drug use affects the witness' credibility and establishes bias or motive."  Response at 4-5 (citing Solis-Marrufo v. Bd. of Comm'rs, No. CIV 11-0107 JB/KBM, 2013 WL 1658203 (D.N.M. March 28, 2013)(Browning, J.)).  In sum, in Romero's view, evidence of Moffett's drug abuse is probative of: (i) Montoya's motive to falsely accuse Cuba Police officials of wrongdoing; (ii) Moffett's "then existing state of mind (such as motive, intent or plan), or her emotional, sensory or physician condition (such as mental feeling, pain, or bodily health)[;]" and (iii) "the witness' ability to perceive or recall events;" therefore, the jury should hear it. Response at 5 (internal quotation marks and citations omitted).

In Montoya's Reply, she first points out that Romero did not specify any portion of the medical record to support his characterization of her motive, and she suggests that is so because no portion of the record supports that argument.  See Plaintiff's Reply to Defendant's Response to Plaintiff's Motion in Limine to Exclude Testimony and Evidence Concerning a Witness's

- 5 -

Medical Treatment and Medical Condition at 1, filed July 30, 2013 (Doc. 173)("Reply"). Montoya further argues that Romero has not identified a medical expert or any non-retained treating physicians in this case, and that he therefore lacks "a proponent for the allegations regarding prescription drug use and the need therefor." Reply at 1-2. Further, she points to Romero's concession that he was not at the Cuba Clinic when its personnel told Montoya it would reduce her access to morphine and suggests that this concession substantially undermines Romero's revenge motive theory. See Reply at 2. In sum, Montoya contends that the Court should exclude these records, both because Romero's concession undermines his proposed reason that Montoya brought the suit, and because the witnesses offered cannot properly authenticate the records or speak to their contents. See Reply at 2.

The Court held a hearing on July 31, 2013. See Transcript of Hearing (taken July 31, 2013)("Tr.").[1] At the time of the hearing, the Court had not reviewed Romero's Response or Montoya's Reply, so the Court invited Romero to begin by explaining why it was necessary to admit evidence of Montoya's and Moffett's medical condition and treatment to tell the essentials of Romero's motive argument: "that medical professionals were going to need to tell Ms. Montoya some news about her medical condition and they felt that this would be in their opinion, this would be very upsetting news to her, and they called for the police to be there, and the police arrived." Tr. at 13:21-14:13 (Court). Romero asked the Court to refrain from ruling on the issue until it had read the Response. See Tr. at 14:21-15:6 (Lyle). Romero underscored that the witness in question, Moffett, was "for all intents and purposes the Plaintiff's spouse," and that Montoya and Moffett "engaged in [a] pattern of drug-seeking behavior" that culminated

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcripts may contain slightly different page and/or line numbers.

- 6 -

in a decision by healthcare providers to cut off their access to drugs. See Tr. at 15:6-14 (Lyle). After reiterating the arguments in his Response, Romero argued that, upon reading it, the Court would see that the evidence in question is "part of the entire story of how we got where we are." Tr. 15:15-16:4 (Lyle). Romero contended that the evidence is also admissible because it goes to Moffett's ability to accurately perceive, recall, and relate events. See Tr. 15:7-16 (Lyle).

Montoya reiterated her views that the voluminous evidence was irrelevant and that Dr. Wiseman would be unable to authenticate the records. See Tr. at 17:10-18 (Higgins). Montoya contended that the Court's initial inclination "would protect the defense's right to present their theory," while "properly exclud[ing] a huge amount of irrelevant[,] overly prejudicial[,] and highly personal material that relates to a witness in this case, not a plaintiff." Tr. at 17:19-24 (Higgins). Montoya underscored her view that Romero's motive theory lacked support, and, further, that Romero's concession that he was not present for the alleged incident on which he based his theory "makes the reason that the defense would like to admit all of Ms. Montoya and all of Moffett's medical records and evidence[] around their medical condition even more remote to the defense theory concerning Marcus Romero." Tr. at 17:25-19:9 (Higgins).

Romero replied that this concession did not change his theory, given this case's history: Montoya originally sued the Department and Romero's fellow officers, because, in Romero's view, "the whole motive behind this lawsuit is the presence of Cuba police department" at the Cuba Clinic when Montoya and Moffett were told that they would not get any more morphine. Tr. at 19:15-19:21 (Lyle). Further, Romero stated that he had been present at the Clinic for other relevant events; he did not specify those events. See Tr. at 19:21-22 (Lyle). Romero concluded by reiterating his theory that Montoya brought this case under a "vindictive motive to get back at the Cuba police department," because the Department cut off their access to medications. Tr. at

19:24-20:3 (Lyle).

The Court indicated that it was not inclined to permit inquiry into Moffett's medical condition, because Romero could present the motive theory without getting into that issue.  See Tr. at 20:4-10. (Court).  The Court reserved, however, the option to change its views pending its rulings on other motions in limine related to drug use, and its review of the Response and the Reply.  See Tr. at 20:10-21 (Court).

## LAW REGARDING RELEVANCY OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence."  Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403).  "Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401 ("Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action.")).  "Rule 401 contains a low threshold for relevance, because '[a]ny more stringent requirement is unworkable and unrealistic.'"  United States v. Goxcon-Chagal, 885 F. Supp. 2d 1118, 1162 (D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note).  Irrelevant evidence -- that is, evidence which does not make a fact of consequence more or less probable -- is inadmissible.  See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.  See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).  "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(internal quotation marks omitted).  "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000).  The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).  As the Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .  This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence

- 9 -

that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(citation omitted).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged. See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999). "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case." United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)). Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Caraway, 534 F.3d at 1301 (emphasis in original)(quoting Fed. R. Evid. 403 advisory committee note).

## LAW REGARDING APPLICATION OF RULE 404(b)

Rule 404(b) of the Federal Rules of Evidence provides:

**(b)** **Crimes, Wrongs, or Other Acts.**

**(1)** **Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2)** **Permitted Uses; Notice in a Criminal Case.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

**(A)** provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

**(B)** do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice.

- 10 -

Fed. R. Evid. 404(b).

Rule 404(b) states that evidence of other crimes or wrongs may not be introduced against a person to show that, upon a later occasion, he or she acted in conformity with that prior behavior except to prove a number of enumerated issues.  A party introducing 404(b) evidence must show that: (i) the evidence is introduced for a proper purpose; (ii) the evidence is relevant; (iii) the evidence has probative value that is not substantially outweighed by the potential for unfair prejudice; and (iv) the party introducing the evidence must precisely articulate the purpose for which the evidence is offered and the court must identify the purpose for which the evidence is admitted.  See United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

Rule 404(b)'s prohibition finds its source in the common-law protection of the criminal defendant from risking conviction on the basis of evidence of his character.  See United States v. Dudek, 560 F.2d 1288, 1295-96 (6th Cir. 1977).  In United States v. Phillips, 599 F.2d 134 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit noted, in addressing rule 404(b)'s precepts, that the rule addresses two main policy concerns:

> (1) that the jury may convict a "bad man" who deserves to be punished not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes he probably committed the crime charged.

United States v. Phillips, 599 F.2d at 136.

Accordingly, some courts have found that the standards for admission of evidence to show conduct in conformity with prior conduct relax when the defendant attempts to offer rule 404(b) evidence.  The United States Court of Appeals for the Second Circuit, in United States v. Aboumoussallem, 726 F.2d 906 (2d Cir. 1984), undertook an early analysis of the admissibility

- 11 -

of prior-crimes evidence that the defendant proffered.  The Second Circuit noted:

> [W]e believe the standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when the prosecution uses such evidence as a sword.  The prosecution, in the Anglo-American tradition, may not ordinarily offer evidence of a defendant's prior wrongdoing for the purpose of persuading the jury that the defendant has a propensity for crime and is therefore likely to have committed the offense for which he stands trial.  As Dean Wigmore points out, the evidence "is objectionable not because it has no appreciable value but because it has too much."  Presumably, the "too much" argument means that a  guilty person, and, of far more serious concern, an innocent person, may be convicted primarily because of the jury's willingness to assume his present guilt from his prior misdeed.  Wigmore also identifies objections based on the risk that the jury will convict because the defendant may not have been punished for his prior offenses and the injustice of requiring the defendant to defend against a series of accusations. . . . However, the risks of prejudice are normally absent when the defendant offers similar acts evidence of a third party to prove some fact pertinent to the defense.  In such cases the only issue arising under Rule 404(b) is whether the evidence is relevant to the existence or non-existence of some fact pertinent to the defense.

726 F.2d at 911-12 (footnotes omitted)(citations omitted).

Similarly, the United States Court of Appeals for the Fifth Circuit in United States v. Krezdorn, 639 F.2d 1327 (5th Cir. 1981), noted:

> The extrinsic acts rule is based on the theory that the jury will use evidence that the defendant has, at other times, committed bad acts to convict him of the charged offense.  Consequently, the only purpose served by extrinsic offense evidence is to demonstrate the propensity of the defendant to act in a certain way, the evidence must be excluded.  When, however, the extrinsic offense was not committed by the defendant, the evidence will not tend to show that the defendant has a criminal disposition and that he can be expected to act in conformity therewith.  When the evidence will not impugn the defendant's character, the policies underlining 404(b) are inapplicable.

639 F.2d at 1332-33 (citations omitted)(internal quotation marks omitted).  In addition to the Second and Fifth Circuits, the United States Courts of Appeals for the First, Third, Seventh, and Eleventh Circuits have determined that rule 404(b) is inapplicable to admissibility of evidence of acts of third parties.  See United States v. Reed, 259 F.3d 631, 634 (7th Cir. 2001)("In deciding

- 12 -

whether to admit such evidence, a district court should balance the evidence's probative value under Rule 401 against considerations such as prejudice, undue waste of time and confusion of the issues under Rule 403."); United States v. Morano, 697 F.2d 923, 926 (11th Cir. 1993)("But although Rule 404(b) does not control this situation, the exceptions listed in the Rule should be considered in weighing the balance between the relevancy of this evidence and its prejudice under Rule 403."); United States v. Stevens, 935 F.2d 1380, 1401-1406 (3d Cir. 1991)("[A] defendant may introduce "reverse 404(b)" evidence so long as its probative value under Rule 401 is not substantially outweighed by Rule 403 considerations."); United States v. Gonzales-Sanchez, 825 F.2d 572, 582 n.25 (1st Cir. 1987)("Inasmuch as this evidence does not concern past criminal activity of [the defendant], Rule 404(b) is inapplicable.").  In United States v. Stevens, the Third Circuit also held that a lower standard of similarity between the crime before the federal court and the "other crimes evidence" governed "reverse 404(b)" evidence, because prejudice to the defendant is not a factor.  935 F.2d at 1403.

The United States Court of Appeals for the Tenth Circuit has held that rule 404(b)'s prohibition applies to a defendant who wishes to introduce evidence of wrongdoing by another to establish his innocence.  See United States v. Puckett, 692 F.2d 663, 671 (10th Cir. 1982).  In United States v. Puckett, a defendant, Mauzy, sought to introduce evidence that he had been "conned" by his co-defendant, Puckett, in transactions unrelated and dissimilar to the crimes charged in the indictment.  692 F.2d at 670.   The trial court did not allow Mauzy to present the evidence.   See 692 F.2d at 670.   "The trial court did not permit Mauzy . . . to call certain witnesses who would testify that they too had been 'conned' by Puckett in transactions unrelated and dissimilar to the crimes charged in the indictment."  692 F.2d at 670.

Mauzy contended on appeal in United States v. Puckett that "the refusal to admit this

- 13 -

evidence violate[d] his due process right to present a defense."  692 F.2d at 670-71.  The Tenth

Circuit affirmed.  See 692 F.2d at 671.  The Tenth Circuit noted that the 404(b) evidence offered

by Mauzy pertained to activities by Puckett that were "unrelated and dissimilar to the charges

alleged in the indictment."  692 F.2d at 670.  Mauzy argued that rule 404(b) did not govern the

admissibility of the evidence, because he contended that it did not apply "to situations in which a

defendant wishes to introduce evidence of wrongdoing by another person in order to establish his

own innocence."  692 F.2d at 670-71.  The Tenth Circuit indicated that it was "not inclined to

interpret [rule 404(b)] so narrowly."  692 F.2d at 670-71.  The Tenth Circuit explained that its

review of the "Advisory Committee Notes on the Proposed Rules [of Evidence] indicate[d] that

the members of the committee were concerned not only with the prejudicial impact to a

defendant in admission of extrinsic acts of evidence, but also with its limited probative value."

692 F.2d at 671 (alterations in original).  The Tenth Circuit held that the trial court properly

rejected the evidence as irrelevant, "[p]articularly . . . [where] the evidence offered by Mauzy

pertained to activities by [his co-conspirator that were] unrelated and dissimilar to the charges

alleged in the indictment."  692 F.2d at 671.

     Since United States v. Puckett, the Tenth Circuit has considered the admissibility of prior

acts proffered by the defendant, often referred to as "reverse 404(b)" evidence.  In United States

v. Montelongo, 420 F.3d 1169 (10th Cir. 2005), police found ninety-three kilograms of

marijuana in the sleeping compartment of the semi-truck that the defendants were driving.  See

420 F.3d at 1171.  The owner of the truck testified for the United States, and stated that he "had

inspected the truck just before [the defendants] picked it up and had found no marijuana in it."

420 F.3d at 1172.  The defendants then made a "reverse 404(b)" argument.  420 F.3d at 1174.

     The relevant issue in United States v. Montelongo was whether the defendants could

- 14 -

cross examine the owner of the truck that the defendants were driving about a prior incident which occurred "a few months" earlier.  420 F.3d at 1172.  Accord United States v. Duran-Moreno, 616 F.Supp.2d 1162, 1165-71 (2009)(Browning, J.)(discussing this Tenth Circuit decision).  The defendants sought to introduce evidence of a prior incident which occurred a few months before their arrest and which involved marijuana that was found in the sleeping compartment in a different semi-truck that the truck owner possessed.  See 420 F.3d at 1175.  The Tenth Circuit reversed the trial court's refusal to allow cross examination by the defendants regarding "the fact that thirty-four pounds of marijuana were found in duffle bags in the sleeping compartment of a truck owned by [the government witness] just a few months prior to the Defendants' arrests for nearly identical conduct" to defend against a conspiracy to distribute more than fifty grams of marijuana.  420 F.3d at 1176.

The Tenth Circuit began its analysis in United States v. Montelongo by noting that rule 404(b)

> is typically used by prosecutors seeking to rely on a criminal defendant's prior bad act as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in the crime charged.  The Rule is not so limited in its application, however, and evidence of a witness' other wrongs, acts, or crimes is admissible "for defensive purposes if it tends, alone, or with other evidence, to negate the defendant's guilt of the crime charged against him."

420 F.3d at 1174.  The Tenth Circuit also noted that "[o]ther circuit courts addressing the issue hold that admissibility of reverse 404(b) evidence depends on a 'straightforward balancing of the evidence's probative value against considerations such as undue waste of time and confusion of the issues.'"  420 F.3d at 1174 (quoting United States v. Stevens, 935 F.2d at 1404-1405). The Tenth Circuit held that the evidence of the marijuana previously found in another truck owned by the truck owner was relevant to the defendants' defense that they had no knowledge of the

marijuana packed in the truck they were driving.  See United States v. Montelongo, 420 F.3d at 1174.   The Tenth Circuit noted that, "[i]n this way, the previous case is relevant as it tends to make it less probable that the Defendants knowingly possessed the marijuana or that they knowingly and voluntarily involved themselves in a drug conspiracy."  420 F.3d at 1173.  The Tenth Circuit in United States v. Montelongo looked at the similarities between the charged matter and the previous incident.  See 420 F.3d at 1174-75. The Tenth Circuit noted that there were several similarities between the two crimes and that the jury could believe that the owner had packed the marijuana in the semi-truck.  See 420 F.3d at 1174-75.

Specifically, the Tenth Circuit in United States v. Montelongo noted "the similarities between the two crimes and their temporal proximity . . . makes th[e] evidence probative."  420 F.3d at 1174.   The Tenth Circuit based its opinion on common facts with the prior incident, such as: (i) both trucks were owned by the same person; (ii) the marijuana was packed in duffle bags; and (iii) the marijuana was hidden in the sleeping compartment of the cabin of both tractors.  See 420 F.3d at 1172.  While the Tenth Circuit did not expressly state that a lower standard of similarity applies in reverse 404(b) situations, the Tenth Circuit cited United States v. Stevens, 935 F.2d at 1404, for the proposition that "the similarities . . . make[] th[e] evidence probative" and quoted United States v. Stevens, in a parenthetical following the cite to the Third Circuit case, stating "a lower standard of similarity [between the crime at issue and other crimes evidence] should govern reverse 404(b) evidence because prejudice to the defendant is not a factor."  United States v. Montelongo, 420 F.3d at 1174-75 (quoting United States v. Stevens, 935 F.2d at 1404)(internal quotation marks omitted).

Lastly, the Tenth Circuit noted that the relevance of the proffered evidence was "not substantially outweighed by the risk of confusing the jury or the potential for waste of time."

United States v. Montelongo, 420 F.3d at 1175.  It noted that there was no danger of the jurors being distracted from the real issues in the case, because of the similarities between the charged crime and the previous incident.  See 420 F.3d at 1175.  "To the contrary, [the 404(b) evidence] would have highlighted the central issue at trial -- namely, which man was responsible for the contraband."  420 F.3d at 1175.  The Tenth Circuit focused on the question of the evidence's admissibility in the context of the protections afforded by the Sixth Amendment's Confrontation Clause and by cross-examination, and found that the "District Court erred in preventing the Defendants from cross-examining [the truck owner] based on Rule 404(b)."  United States v. Montelongo, 420 F.3d at 1175.

In Agushi v. Duerr, 196 F.3d 754 (7th Cir. 1999), the United States Court of Appeals for the Seventh Circuit decided, as a matter of first impression, that rule 404(b) applied to acts of third parties.  See 196 F.3d at 760.  The Seventh Circuit began its analysis by noting that "[r]ule 404(b) speaks not of the parties to a case but of a 'person.'"  196 F.3d at 760 (quoting Fed. R. Evid. 404(b)).  The Seventh Circuit noted that "[e]vidence regarding other crimes is admissible for defensive purposes if it 'tends, alone or with other evidence, to negate [the defendant's] guilt of the crime charged against him.'"  196 F.3d at 760 (quoting United States v. Stevens, 935 F.2d at 1404)).  The Seventh Circuit explained that, although Huddleston v. United States "involved a situation in which the defendant was the actor, the Court strongly suggested that Rule 404(b) should be applied to any actor."  Agushi v. Duerr, 196 F.3d at 760 (emphasis in original)(citing Huddleston v. United States, 485 U.S. at 685-86)("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.").  Relying in part on the Third Circuit's opinion in United States v. Stevens, the

- 17 -

Seventh Circuit concluded that, "[b]ased on the Supreme Court's guidance, our sister circuit's reasoning . . . as well as the very language contained in Rule 404(b), we hold that Rule 404(b) does apply to third parties." Agushi v. Duerr, 196 F.3d at 760.

In 2005, the Seventh Circuit, however, disagreed with a district court's evidentiary ruling that held the defense to as rigorous a 404(b) standard as the United States.  See United States v. Seals, 419 F.3d 600, 607 (7th Cir. 2005)("Contrary to the district judge's statement, the defense is not held to as rigorous of a standard as the government in introducing reverse 404(b) evidence.")(citing Agushi v. Duerr, 196 F.3d at 760).  The Seventh Circuit, however, affirmed the district court's decision to exclude the proffered evidence, because it was irrelevant and inadmissible.  See United States v. Seals, 419 F.3d at 607.  It noted that the similarities between the charged conduct and the previous incident were generic, because the underlying facts were dissimilar.  See 419 F.3d at 607.  The Seventh Circuit explained that, although "the legal standard for admitting reverse 404(b) evidence is relatively lenient, the evidence still must be relevant."  419 F.3d at 607.

In United States v. McCourt, 925 F.2d 1229 (9th Cir. 1991), the United States Court of Appeals for the Ninth Circuit recognized that rule 404(b) makes no distinction between defendants and third parties in excluding prior-acts evidence to show criminal propensity or as a basis for suggesting the inference that certain conduct was in conformity with it.  See 925 F.2d at 1232 ("Because Rule 404(b) plainly proscribes other crimes evidence of 'a person,' it cannot reasonably be construed as extending only to 'an accused.'")(quoting Fed. R. Evid. 404(b)).  There is also no exception in rule 404(a) that would permit the use of evidence to show a third person's character for the inference that this person acted in conformity with his character and

committed the crime with which defendant is charged.[2]  See 925 F.2d at 1231-32 n.2 (citing 2 J.

Weinstein & M. Berger, Evidence ¶ 404[04], at 404-39-40 (1989)).

In United States v. Stevens, the defendant sought to introduce testimony by a victim of a

crime different from the one with which the defendant was charged where the victim "was the

victim of a crime which was so similar to the instant crime that the investigating officers

believed that the same individual had committed both" and the victim "would have testified that

---

[2] Rule 404(a) reads:

(a)        Character Evidence.

(1)                Prohibited Uses.  Evidence of a person's character or character
                   trait is not admissible to prove that on a particular occasion the
                   person acted in accordance with the character or trait.

(2)                Exceptions for a Defendant or Victim in a Criminal Case.  The
                   following exceptions apply in a criminal case:

(A)                        a defendant may offer evidence of the defendant's pertinent
                           trait, and if the evidence is admitted, the prosecutor may
                           offer evidence to rebut it;

(B)                        subject to the limitations in Rule 412, a defendant may
                           offer evidence of an alleged victim's pertinent trait, and if
                           the evidence is admitted, the prosecutor may:

(i)        offer evidence to rebut it; and

(ii)       offer evidence of the defendant's same trait; and

(C)                        in a homicide case, the prosecutor may offer evidence of
                           the alleged victim's trait of peacefulness to rebut evidence
                           that the victim was the first aggressor.

(3)                Exceptions for a Witness. Evidence of a witness's character may
                   be admitted under Rules 607, 608, and 609.

Fed. R. Evid. 404(a).

he, unlike the [other] victims[,] . . . did not identify [the defendant] as his assailant."  935 F.2d at

1383.  "The critical question [wa]s, of course, one of degree of similarity."  935 F.2d at 1401.

The Third Circuit held that the "district court imposed too stringent a standard of similarity on

[the defendant]."  935 F.2d at 1404.  The Third Circuit held that "a lower standard of similarity

should govern 'reverse 404(b)' evidence because prejudice to the defendant is not a factor."  935

F.2d at 1404.  The Third Circuit then stated that "a defendant may introduce 'reverse 404(b)'

evidence so long as its probative value under Rule 401 is not substantially outweighed by Rule

403 considerations."  935 F.2d at 1405.  The Third Circuit rejected the United States' contention

that a defendant may offer rule 404(b) evidence only under "hard and fast preconditions," and

stated:

> More specifically, the defendant, in order to introduce other crimes evidence,
> need not show that there has been more than one similar crime, that he has been
> misidentified as the assailant in a similar crime, or that the other crime was
> sufficiently similar to be called a "signature" crime.  These criteria, although
> relevant to measuring the probative value of the defendant's proffer, should not be
> erected as absolute barriers to its admission.   Rather, a defendant must
> demonstrate that the "reverse 404(b)" evidence has a tendency to negate his guilt,
> and that it passes the Rule 403 balancing test.

935 F.2d at 1405.  The Third Circuit determined that the defendant's proffer was relevant under

rule 401, because it made his guilt less probable.  See 935 F.2d at 1405-06.  It then determined

that the proffer did not present a risk of mini-trials or obstruction to the orderly progress of

trial.  See 935 F.2d at 1405-06.  The Third Circuit emphasized that its "resolution of this issue

[wa]s informed by [its] general belief that a criminal defendant should be able to advance any

evidence that, first, rationally tends to disprove his guilt, and second, passes the Rule 403

balancing test."  935 F.2d at 1406.

      In United States v. Moreau, No. 07-0388, 2008 WL 2229467 (D.N.M. Mar. 12,

2008)(Browning, J.), the Court dealt with a situation where the defendants were charged after they were stopped while driving a tractor-trailer rig whose trailer, in addition to pallets of fabric, contained 2700 pounds of marijuana.  See 2008 WL 2229467 at *2.  One defendant wished to introduce evidence that the owner of the warehouse from which the fabric was loaded, who was to be a witness at the trial, had been convicted or arrested as a result of past incidents of drug trafficking, all of which occurred many years before the defendants' arrest.  See 2008 WL 2229467 at *1-2.  The Court held that the evidence of the owner's past bad acts was sufficiently similar to the charged conduct and was sufficiently probative whether one of the defendants was unaware of the marijuana being placed in the trailer, to be admissible under rule 404(b).  See 2008 WL 2229467 at *14-15.

In United States v. Duran-Moreno, the Court addressed a situation where the defendant was charged with drug-possession charges based on a large amount of drugs hidden in the bumper of his vehicle.  See 616 F.Supp.2d at 1164.  Before the defendant owned the vehicle, another individual owned the vehicle who was convicted of  possessing with intent to deliver methamphetamine.    See 616  F.Supp.2d  at  1164.    The  individual  had  engaged  in methamphetamine transactions with police officers and had his home raided pursuant to a search warrant.  616 F.Supp.2d at 1164.  That individual owned the car for about two months before selling it to another person and had not driven the car much, according to the recorded odometer readings.  See 616 F.Supp.2d at 1164.  The Court held that the defendant sought to admit the evidence for "a proper purpose under rule 404(b)," because the "prior acts evidence . . . ma[d]e it less probable [the] defendant knowingly, or knowingly and voluntarily, participated in drug distribution."  616 F.Supp.2d at 1174-75.  The Court found the bad-act evidence probative, because it was sufficiently similar to the charged conduct and not too remote in time temporally

to undercut the evidence's probative value.  See 616 F.Supp.2d at 1174-75.

The Tenth Circuit has stated that district courts must "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom."  United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)).   "[A] broad statement merely invoking or restating Rule 404(b) will not suffice."  United States v. Youts, 229 F.3d at 1317.  "Uncharged, unrelated crimes or bad acts may be probative to show knowledge, . . . whether the acts involved previous conduct or conduct subsequent to the charged offense if the uncharged acts are similar to the charged crime and sufficiently close in time."  United States v. Valencia-Montoya, No. CR 11-2990 JB, 2012 WL 825107, at *7 (D.N.M. Sept. 17, 2012)(Browning, J.)(citing United States v. Olivo, 80 F.3d 1466, 1468-69 (10th Cir. 1996)).  See Lewis v. District of Columbia, 793 F.2d 361, 363 (D.C. Cir. 1986)(per curium)(holding that the admission of evidence of prior arrests is proper for purposes of determining whether the plaintiff running from the police officers was result of a mistake, or to avoid arrest).

Because rule 404(b) is applicable to all persons, not just criminal defendants, the same general rule applies in the civil context as well.  See O'Brien v. Mitchell, 883 F. Supp. 2d 1055, 1093-94 (D.N.M. 2012)(Browning, J.)("The Rule has been amended to clarify that in a civil case evidence of a person's character is never admissible to prove that the person acted in conformity with the character trait."(quoting Fed. R. Evid. 404 advisory committee's note to 2006 amendments)).  For example, in Maples v. Vollmer, No. CIV 12-0294, 2013 WL 1677104 (D.N.M. March 31, 2013)(Browning, J.), an unlawful-arrest and excessive-force case, the Court admitted evidence of a police officer's knowledge of a plaintiff's criminal history, because it tended to make more credible that the officer "reasonably believed [the plaintiff] had committed

- 22 -

a crime," and because the police officer's knowledge was relevant to whether another police officer's use of force was unconstitutionally excessive. 2013 WL 1677104, at *16-17.

**LAW REGARDING ADMISSIBILITY OF EVIDENCE OF A WITNESS' DRUG USE**

"A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. A party may attack a witness' capacity by "'showing that his or her capacity to observe, remember, or narrate is impaired. Consequently, the witness' capacity at the time of the event, as well as at the time of trial, is significant.'" United States v. Robinson, 583 F.3d 1265, 1272 (10th Cir. 2009)(quoting 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 607.05(1) (Joseph M. McLaughlin Ed., 2d ed. 2009)). The Tenth Circuit has recognized that a witness' "'ability to perceive the underlying events and testify lucidly at trial'" may be attacked through evidence of the witness' use of illicit substances. United States v. Apperson, 441 F.3d 1162, 1195-96 (10th Cir. 2006)(quoting Jarrett v. United States, 822 F.2d 1438, 1446 (7th Cir. 1987)); see United States v. Peet, 46 F.3d 1152, 1995 WL 21614, at *3 (10th Cir. 1995)(unpublished table decision)[3]("While drug use may be used to attack a witness's ability to perceive the underlying

---

[3] United States v. Peet is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). The Court finds that United States v. Peet, has persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order.

events and testify lucidly at the trial, it may not be used to attack general credibility."); United States v. Fairchild, 46 F.3d 1152, 1995 WL 21611, at *3 (10th Cir. 1995)(same).  "Evidence of a witness's drug use may be admitted to show the effect of the drug use on the witness's memory or recollection of events."  United States v. Dixon, 38 F. App'x 543, 548 (10th Cir. 2002)(citing United States v. Smith, 156 F.3d 1046, 1054-55 (10th Cir. 1998)).  The Tenth Circuit's pattern jury instructions explicitly permit an instruction to this effect:

> The testimony of a drug abuser must be examined and weighed by the jury with greater caution than the testimony of a witness who does not abuse drugs.
>
> [Name of witness] may be considered to be an abuser of drugs.
>
> You must determine whether the testimony of that witness has been affected by the use of drugs or the need for drugs.

Tenth Circuit Pattern Jury Instructions Criminal § 1.16, at 60 (2011).  See also Maples v. Vollmer, 2013 WL 1677104, at *16-17.

In United States v. Dixon, the Tenth Circuit held that it was not plain error for a district court to allow, over a defendant's objection, a prosecutor to question the defendant regarding his use of crack cocaine.  See 38 F. App'x at 548.  Although the district court had previously granted a motion in limine excluding any evidence of the defendant's crack cocaine use, the Tenth Circuit found that allowing the prosecutor's questions was not plain error, because the "questions regarding Dixon's drug use were relevant to impeach . . . his credibility as a witness."  38 F. App'x at 548.

Similarly, in United States v. Smith, the Tenth Circuit held that questioning a witness about her LSD use twenty years earlier was permissible, where the evidence was used to establish her "credibility to recall and recollection, her memory," and was not a general attack on her character for truthfulness.  156 F.3d at 1054-55.  The Tenth Circuit noted that, "[w]hile the

use of certain drugs in the remote past may be entirely irrelevant to a witness's ability to remember, in this instance, it was for the jury to decide whether Ms. Doyle's use of LSD twenty years earlier affected her ability to recall the evening in question." 156 F.3d at 1055. The Court has previously allowed cross-examination regarding a plaintiff's admissions and denials of methamphetamine, marijuana, and alcohol use, and whether the plaintiff was using narcotics on the day of an incident in which the Albuquerque Police Department allegedly used excessive force against the plaintiff. See Chamberlin v. City of Albuquerque, No. CIV 02-0603 JB/ACT, 2005 WL 2313515, at *1-2 (D.N.M. July 31, 2005)(Browning, J.). The Court determined that questions regarding the plaintiff's history of drug and alcohol abuse may be relevant in determining whether he was entitled to damages for emotional distress from the incident. The Court also determined that questions regarding the plaintiff's use of narcotics on the day of the incident may be relevant regarding the plaintiff's "ability to accurately perceive and recall the incidents on the day in question." 2005 WL 2313515, at *2. See also Solis-Marrufo v. Bd. of Comm'rs, 2013 WL 1658203, at *17-21 (allowing defendants to inquire into the plaintiff's "admissions and denials of cocaine use," but not to "stray generally into attacking [his] character for truthfulness based upon his cocaine use alone").

On the other hand, the Tenth Circuit has held that "[d]rug use is not probative of untruthfulness any more than other illegal conduct that does not involve deception. Accordingly, it is error to admit a witness's prior drug use for impeachment purposes pursuant to Fed. R. Evid. 608." United States v. Fairchild, 1995 WL 21611, at *3. The Tenth Circuit has also recognized that a court may properly limit the amount of evidence of a party's previous drug use. For example, in Meller v. Heil Co., 745 F.2d 1297, 1303 (10th Cir. 1984), the Tenth Circuit held that a district court properly excluded the decedent's hashish pipes from evidence at trial in a

wrongful death suit, because the danger of unfair prejudice substantially outweighed the pipes' probative value.  See 745 F.2d at 1303 (citing Fed. R. Evid. 403).  The defendant had sought to use the hashish pipes to impeach the plaintiff's evidence about the decedent's life expectancy, but the district court determined that medical foundation was lacking to support the assertion that the plaintiff's marijuana use diminished the plaintiff's life expectancy.  The district court further found, and the Tenth Circuit agreed, that "[Defendant] Heil sought to introduce the hashish pipes for the specific purpose of arousing juror sentiment against the decedent," an improper purpose for the evidence of the decedent's drug use.  745 F.2d at 1303.

## LAW REGARDING AUTHENTICATION OF EVIDENCE

Rule 901 of the Federal Rules of Evidence governs the authentication of evidence:

(a) In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

(b) Examples. The following are examples only -- not a complete list -- of evidence that satisfies the requirement:

(1) Testimony of a Witness with Knowledge. Testimony that an item is what it is claimed to be.

(2) Nonexpert Opinion About Handwriting. A nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation.

(3) Comparison by an Expert Witness or the Trier of Fact. A comparison with an authenticated specimen by an expert witness or the trier of fact.

(4) Distinctive Characteristics and the Like. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.

(5) Opinion About a Voice. An opinion identifying a person's voice -- whether heard firsthand or through mechanical or electronic transmission or recording -- based on hearing the voice at any time under circumstances that connect it with the alleged speaker.

(6) Evidence About a Telephone Conversation. For a telephone conversation, evidence that a call was made to the number assigned at the time to:

(A) a particular person, if circumstances, including self-identification, show that the person answering was the one called; or

(B) a particular business, if the call was made to a business and the call related to business reasonably transacted over the telephone.

(7) Evidence About Public Records. Evidence that:

(A) a document was recorded or filed in a public office as authorized by law; or

(B) a purported public record or statement is from the office where items of this kind are kept.

(8) Evidence About Ancient Documents or Data Compilations. For a document or data compilation, evidence that it:

(A) is in a condition that creates no suspicion about its authenticity;

(B) was in a place where, if authentic, it would likely be; and

(C) is at least 20 years old when offered.

(9) Evidence About a Process or System. Evidence describing a process or system and showing that it produces an accurate result.

(10) Methods Provided by a Statute or Rule. Any method of authentication or identification allowed by a federal statute or a rule prescribed by the Supreme Court.

Fed. R. Evid. 901. Professors Charles Alan Wright and Victor James Gold explain:

Rule 901 has two purposes. First, the provision acknowledges the requirement of authentication and provides examples. Second, Rule 901 allocates responsibilities between the judge and jury for determining whether an item of evidence is what its proponent claims it to be. The rule allocates most of those responsibilities to the jury.

- 27 -

31 C. Wright & V. Gold, Federal Practice and Procedure: Evidence § 7102, at 12 (2000).

## LAW REGARDING RULE 26

Rule 26(a) of the Federal Rules of Civil Procedure requires parties to make initial disclosures to the other parties, relaying:

> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information -- along with the subjects of that information -- that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (ii) a copy -- or a description by category and location -- of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> (iii) a computation of each category of damages claimed by the disclosing party -- who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and
>
> (iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. P. 26(a)(1). Rule 26(e) requires a party who has made a disclosure under rule 26(a) -- or who has responded to an interrogatory, request for production, or request for admission -- to supplement or correct its disclosure or response in a timely manner if it learns that the disclosure or response is incomplete or incorrect. See Fed. R. Civ. P. 26(e).

## ANALYSIS

The Court will not exclude the evidence. The evidence is relevant, because it tends to prove Romero's revenge motive theory. The Court further finds that, although the evidence is prejudicial, it is not unfairly so, and that any unfairly prejudicial effect it causes does not

- 28 -

substantially outweigh its probative value.  The Court also will not exclude the evidence under rule 404, because Romero does not offer it for the conduct-in-conformity inference rule 404(a) prohibits; rather, he offers it to prove Montoya's motive to lie, which is a proper purpose under rule 404(b).  Although Montoya cites rule 26 in her MIL, she does not raise a rule 26 argument in her MIL.  The Court will not, therefore, exclude the evidence under rule 26.

I.      **EVIDENCE OF MOFFETT'S DRUG USE IS RELEVANT, BECAUSE IT TENDS TO PROVE ROMERO'S REVENGE MOTIVE THEORY.**

Montoya argues that evidence of Moffett's medical history is irrelevant in light of Romero's concession that he was not present for the alleged incident at the Cuba Clinic.  Romero responds that this evidence is still relevant, because Montoya originally sued the Cuba Police Department and his fellow officers, and the evidence tends to show Montoya's motive to level false accusations at the Department and its employees.  Although the Court acknowledges that Romero's concession might limit the motive argument's persuasiveness, the Court nonetheless agrees with Romero that the evidence tends to make the revenge motive theory more likely than it would be otherwise.  The Court will, therefore, admit the evidence.

This medical evidence is central to Romero's narrative of the case.  That narrative is as follows: Montoya and Moffett were using prescription drugs in abnormally high quantities.  The Cuba Police Department helped the Cuba Clinic limit their access to prescription drugs, and Montoya and Moffett's resulting antipathy towards the Department gave them reason to lie about the Department and its employees in this case.  To support his theory, Romero offers Dr. Wiseman's testimony that, before the Cuba Clinic tapered Montoya and Moffett's access to drugs, its employees asked the Department to send police officers, fearing they might react poorly.  According to Romero, those expectations were well-founded: Montoya "ran from the

office yelling for help."  Response at 3.  Montoya rejects this theory, saying there is no evidence of such a vindictive motive and that Romero's concession that he was not, as he had previously stated, present for this alleged incident vitiates the relevance of this evidence.

The Court concludes that this evidence satisfies the Federal Rules of Evidence's liberal relevance standard.  It is, of course, of consequence to this case whether Montoya and Moffett, her former co-Plaintiff, had reason to concoct false allegations and bring this lawsuit to seek revenge against Romero and his former co-Defendants.   Therefore, under rule 401, if the evidence of Moffett's drug use has any tendency to make such a motive more probable, the evidence is relevant.  The Court concludes that evidence of Moffett's extensive drug use satisfies this standard: if Moffett did, in fact, use the prescription drugs Romero describes, that tends to make more likely that Montoya would be upset that the Department deprived her of those drugs, giving rise to a vindictive motive.

It is true, as Montoya argues, that Romero's concession that he was not present for Montoya's alleged emotional eruption might make the revenge motive less persuasive, and thus, arguably, make the evidence he now offers proportionally less persuasive.  Romero continues to maintain, however, that because Cuba Police Department officers were present for this event, Montoya and Moffett had reason to lie about the Department and its employees.   In support, Romero points out that that Montoya and Moffett originally brought suit together, and against the Department and another officer.   The Court need not sort out whether this narrative is persuasive; that is for the jury.  The Court's task is simply to find whether the evidence offered in its support has any tendency to make more likely that Montoya and Moffett had reason to lie about Romero.  The Court concludes that the evidence tends to make more likely that Montoya and Moffett had a motive to lie about Romero.

The evidence of Moffett's drug use is also relevant for a second purpose: impeachment. It is well settled that "[a] party may attack a witness' capacity by showing that his or her capacity to observe, remember, or narrate is impaired.  Consequently, the witness's capacity at the time of the event, as well as at the time of trial, is significant."  United States v. Robinson, 583 F.3d 1272 (internal quotation marks omitted).  That Moffett was under the influence of prescription drugs is probative of her capacity as a witness; therefore, it is relevant evidence.[4]

In sum, the evidence of Moffett's extensive drug use is relevant both because it is the necessary predicate for Romero's theory of the case and because it is probative of Moffett's capacity as a witness.  Also, her attempts to secure morphine for Montoya are related to Montoya's motive and perception.  The Court will not, therefore, exclude the evidence as irrelevant under rule 401.

## II.    ANY UNFAIRLY PREJUDICIAL EFFECT OF MOFFETT'S MEDICAL HISTORY DOES NOT SUBSTANTIALLY OUTWEIGH ITS PROBATIVE VALUE.

Montoya argues that the Court must exclude the evidence of Moffett's medical history, because, in her view, unfair prejudice substantially outweighs its probative value, the calculus in rule 403.  The Court does not agree.  Although the evidence is prejudicial, that prejudice is not unfair, in light of Romero's theory.  Further, any unfair prejudice that is present does not substantially outweigh that evidence's probative value.  The Court will not, therefore, exclude this evidence under rule 403.

The evidence of Moffett's medical history is prejudicial, but not unfairly so.  The Tenth

---

[4] Morphine "[a]ddicts often suffer severe depression, anxiety, insomnia, mood swings, amnesia (forgetfulness), low self-esteem, confusion, paranoia, and other psychological disorders."  Morphine, Wikipedia (November 26, 2013, 6:13 PM), http://en.wikipedia.org/wiki/Morphine.

Circuit has held that, "[t]o be <u>unfairly</u> prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" <u>United States v. Caraway</u>, 534 F.3d at 1301 (emphasis in original)(quoting Fed. R. Evid. 403 advisory committee note). The evidence does not satisfy this test: it does not appeal to the jury to make a decision based up on an emotional rejection of her use of drugs, or upon any other improper basis; it instead is offered to explain Montoya's and Moffett's motive to lie. For that reason, this evidence is not <u>unfairly</u> prejudicial.

The Court further concludes that, to the extent that this evidence does give rise to unfair prejudice, it does not substantially outweigh its probative value. Moffett's drug use is not merely probative of Romero's theory of the case; it is central to his theory. The Court, therefore, concludes that any unfair prejudice this evidence brings about does not substantially outweigh its probative value and will not exclude this evidence under rule 403.

**III.   BECAUSE THE EVIDENCE OF MOFFETT'S MEDICAL HISTORY IS OFFERED TO SHOW THAT SHE HAD A MOTIVE TO LIE -- NOT TO SHOW HER CHARACTER AND HER LATER CONFORMITY THEREWITH -- THE <u>COURT WILL NOT EXCLUDE THE EVIDENCE UNDER RULE 404</u>.**

Montoya also argues that evidence of Moffett's medical history is inadmissible character evidence. The Court concludes, however, that the evidence is offered not to prove "that she acted in conformity [with her character] on a particular occasion," as rule 404(a) bars. The evidence is instead offered to explain her motive to lie, which is a permissible purpose under rule 404(b). The Court will, therefore, not exclude the evidence.

Montoya argues that the evidence of Moffett's medical history -- and, by extension, her own -- is impermissible character evidence. This argument misconceives Romero's narrative and the purpose this evidence has in advancing that narrative. Romero offers this evidence in

support of his revenge motive theory, not as impermissible character evidence.  The Court will

not, therefore, exclude it under rule 404.

The evidence satisfies each prong of the test the Tenth Circuit laid out in <u>United States v.</u>

<u>Zamora</u>.  The purpose for which this evidence is offered is proper: motive is, of course, a

permissible purpose listed in rule 404(b).  Romero contends that, because Montoya and Moffett

associate the Cuba Police Department with the end of their access to various medications, they

have a motive to lie about the Cuba Police Department and its employees, and they have done so

in this case.  The evidence is relevant to establish this alleged motive: as explained above, if

Moffett was, in fact, receiving large quantities of drugs, that would make this motive more

likely.  The evidence satisfies rule 403: it has no unfairly prejudicial effect, and any such effect

does not substantially outweigh its probative value.  And the Court will, upon request, instruct

the jury that evidence that Moffett was using drugs should be considered as evidence of her

motive, and not as evidence of her subsequent conduct in conformity with her character.[5]

## IV.   BECAUSE DR. WISEMAN AND ENYART WILL TESTIFY THAT THESE RECORDS ARE WHAT ROMERO ASSERTS THEY ARE, THE RECORDS ARE AUTHENTIC WITHIN THE MEANING OF RULE 901.

Montoya further argues that the Court should exclude these records, because Dr.

Wiseman and Ms. Enyart cannot authenticate them.  The Court concludes, however, that Romero

has produced evidence sufficient to support a finding that these records are Moffett's medical

---

[5] <u>United States v. Sangiovanni</u>, No. CR 10-3239 JB,  2013 WL 2285086 (D.N.M. May 13, 2013)(Browning, J.), is not to the contrary.  <u>United States v. Sangiovanni</u> held that "[the defendant in that case] may not inquire into [a witness'] previous and current drug use to attack her character for truthfulness generally[.]"  2013 WL 2285086, at *8.  Romero does not offer evidence of Moffett's drug use as evidence that she has untruthful character generally; he offers it to explain her motive to lie about those who have deprived her of those drugs.  <u>United States v. Sangiovanni</u> is, therefore, inapposite.

records, as Romero asserts they are.  The Court, therefore, will not exclude this evidence under

rule 901.

Rule 901 of the Federal Rules of Evidence offers the following guideline for the

authentication of documents:

> (a) In General.  To satisfy the requirement of authenticating or identifying an item
> of evidence, the proponent must produce evidence sufficient to support a finding
> that the item is what the proponent claims it is.
>
> (b) Examples.   The following  are  examples  only -- not a complete list -- of
> evidence that satisfies the requirement:
>
>> (1) Testimony of a Witness with Knowledge. Testimony that an item is
>> what it is claimed to be.

Fed. R. Evid. 901(a)-(b)(1).  The Court concludes that Dr. Wiseman's and Enyart's testimony

that these are Moffett's records is sufficient to satisfy this liberal standard.  The Court will not,

therefore, exclude the records under rule 901.[6]

---

[6] It is possible that the gravamen of Montoya's purported authenticity objection resounds
not in authenticity, but in hearsay.  That is, Montoya seems to have repackaged as an authenticity
objection what is substantially a hearsay objection: insofar as Dr. Wiseman relates to the jury
information he learned from medical records prepared by others, he is a conduit for hearsay.  See
generally Fed. R. Evid. 801.
   Montoya raises two similar objections to Moffett's medical records: first, Dr. Wiseman
did not create all of the records; second, according to Montoya, he lacks personal knowledge of
many of the charts.  Regarding the first point, there is no such requirement: Dr. Wiseman is
entitled -- indeed, expected -- to rely upon records other healthcare providers created to inform
his own treatment decisions and created for other purposes, but upon which he can rely for his
treatment decisions.  Romero offers this evidence not for its truth, but instead for its effect on Dr.
Wiseman's state of mind.  The evidence is not, therefore, hearsay.  On request, the Court will
give a limiting instruction to that effect.  The second reason given lacks a sound basis in the
facts: Dr. Wiseman's testimony demonstrates that he has, in fact, personal knowledge of the
charts' contents.  Once again, Montoya appears to have simply relabeled a hearsay objection that
rule 803(6) precludes.  The Court is not persuaded.
   Insofar as Montoya raises the same objections to admitting Moffett's medical charts from
Presbyterian Health Care through Enyart, the Court will overrule the objections for the same
reasons.

IV.     **THE COURT WILL NOT EXCLUDE THE EVIDENCE UNDER RULE 26.**

Montoya states she objects to the admission of this evidence on the basis of rule 26 of the Federal Rules of Civil Procedure.  See MIL at 1-2.  Montoya did not, however, explain the basis for these objections in her MIL or at the hearing.  The Court, therefore, will not exclude the evidence under rule 26.

**IT IS ORDERED** that Plaintiff's Motion in Limine to Exclude Testimony and Evidence Concerning a Witness's Medical Treatment and Medical Condition, filed July 23, 2013 (Doc. 160), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Laura Schauer Ives
American Civil Liberties Union of New Mexico
Albuquerque, New Mexico

--and--

Leon F. Howard, III
The Law Office of Lucero & Howard, LLC
Albuquerque, New Mexico

--and--

Rachel E. Higgins
Albuquerque, New Mexico

        *Attorneys for the Plaintiffs*

James P. Lyle
Law Offices of James P. Lyle, P.C.
Albuquerque, New Mexico

        *Attorney for the Defendants*

- 35 -