IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EVA DENISE MONTOYA and
BRENDA MOFFETT,

      Plaintiffs,

vs.                                                                                            No. CIV 11-0814 JB/SMV

VILLAGE OF CUBA, MARCUS ROMERO,
in his individual capacity, JASON GRIEGO,
in his individual capacity, and TOMMY
SALAZAR, in his individual capacity,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Objections to Plaintiff's [sic] Proposed Voir Dire, filed July 18, 2013 (Doc. 143)("Montoya's Objections"); and (ii) the Defendant's Objections to Plaintiff's Proposed Voir Dire, filed July 18, 2013 (Doc. 147)("Cuba's Objections"). The Court held a hearing on July 31, 2013. The Court will overrule the Plaintiff's Objections as moot and overrule the Defendant's Objections while allowing the Defendant to ask his proposed follow-up questions.

## PROCEDURAL BACKGROUND

Defendant Marcus Romero filed his proposed voir dire on July 12, 2013. Defendant's Proposed Voir Dire, filed July 12, 2013 (Doc. 133)("Defendant's Voir Dire"). Montoya filed her proposed voir dire on July 15, 2013. See Plaintiff's Proposed Voir Dire for the Jury, filed July 15, 2013 (Doc. 139)("Montoya's Voir Dire"). Montoya subsequently filed her objections to Romero's voir dire. See Montoya's Objections. Romero also filed objections to Montoya's voir dire and submitted proposed follow-up questions in the event the Court allows Montoya's

questions.  See Romero's Objections.

**1.    Plaintiff's Voir Dire**

Plaintiff Eva Denise Montoya requests, among other questions, to ask potential jurors at voir dire the following questions:

A. Questions to Reveal Attitudes and Biases For or Against Law Enforcement Officers

    1. Education and strongly held beliefs about law enforcement from family

        a.   What did your parents teach you about how to deal with police officers?

        b.   Same advice whether you are dealing with a police officer who is acting       professionally versus a police officer who is acting inappropriately?

        c.   How has that advice worked for you in your life?

        d.   What advice have you given your children about how to deal with interactions with law enforcement?

        e.   Why did you give that advice?

       . . .

    3. Biases for or against law enforcement in credibility

       . . .

        c.   What are some reasons people lie?

        d.   Have you ever been fooled by someone who was not telling the truth?

        e.   Do you feel that there are many ways to decide whether a person is lying or telling the truth?

        f.   Do you use the same or different factors when judging the credibility of a police officer?

        h.   How many of you have heard of the "blue line" or the blue

    code of silence?

  4. Personal encounters with or interest in law enforcement

    . . .

    e. For those of you in law enforcement or with family and friends in law enforcement, would you be concerned about how they would react if they knew you were a member of a jury who returned a verdict against a police officer?

    f. What would be your concerns?

E. Questions to Reveal Biases Against Lawsuits or Following the Law

    . . .

  3. What are some of the reasons people file lawsuits?

F. Questions to Reveal Biases About Damages

  1. Do you believe that money should be awarded to compensate people for violation of their civil rights, even if they didn't suffer a serious physical injury? What about compensation for emotional damages and mental distress?

  2. Would you be able to assess damages against an individual police officer if you believed that officer violated a person's rights, or otherwise harmed them?

  3. Have you ever heard of a case on TV or online that you felt a jury gave too much money to a Plaintiff?

  4. Has anyone ever heard of a case on TV or online that you felt the opposite -- that not enough money was given for a Plaintiff's damages?

    a. Which is worse in your opinion, giving too much money for someone who is not injured very seriously, or too little money for someone who is seriously harmed?

    b. How do you tell the difference between a frivolous lawsuit and a necessary lawsuit, or am I just starting out in a hole with you because you think most lawsuits are probably frivolous?

       c.       The judge may instruct you on the ability to award punitive damages to punish or deter bad conduct. Is there anything that would prevent you from awarding punitive damages against a police officer if you thought the evidence supported it?

       d.       When instructing you on damages, the judge may instruct you not to consider the consequences of your decision -- such as whether the defendant will have to pay the judgment or the taxpayers ultimately are affected by this judgment or whether the defendant will get in trouble at work. Is there anyone here who thinks it would be difficult for them to follow this instruction?

G. Catch All Questions

. . .

2.       Whether anyone knows or has heard of someone who has lied on an application to better their chances of getting a job, and if so, how this knowledge affects their view of such people?

Montoya's Voir Dire at 1-2, 3, 6, 7.

### **2.** **Village of Cuba's Voir Dire.**

Village of Cuba submitted the following questions, among others, to the Court for voir dire:

3.      Whether any of the Panel Members know of people who are or have been addicted to prescription narcotics including morphine or other pain killers, and if so, how this knowledge affects their view of such people?

\* \* \* \*

5.      Whether any of the Panel Members or their immediate family or friends have ever made or filed complaints against a doctor or healthcare provider accusing them of wrongfully refusing to provide them with prescription pain medications?

Defendant's Voir Dire at 1, 2.

### **3.** **The Parties' Objections.**

The parties object to specific questions in each other's proposed voir dire. Montoya

- 4 -

objects to Romero's proposed voir dire questions 3 and 5.  Montoya's Objections at 1.  Montoya asserts that question 3 is "an attempt to indoctrinate or persuade the jury venire."  Montoya's Objections at 1.  "Specifically, suggesting that Plaintiff is 'addicted' to prescription 'narcotics' is inflammatory and not based on anything that is likely to lead to evidence that will be admissible at trial."  Montoya's Objections at 1.  Montoya notes that Romero may reasonably expect to be able to present evidence at trial that she has been prescribed morphine and pain medication, but that anything beyond that fact is purely speculative, is not based on anything produced in discovery, and is unlikely to lead to admissible evidence at trial.  Montoya's Objections at 1.  "Moreover, the suggestion that there will be evidence in this case that the Plaintiff is 'addicted' to prescription 'narcotics' is an attempt to cast the Plaintiff as a drug addict and is overly prejudicial."  Montoya's Objections at 1-2.  Montoya asserts that the word "narcotic" is typically associated with illegal drugs and activity.  Montoya's Objections at 2 n.1.  Montoya contends that the proposed usage of this word in voir dire "further illustrates the Defendant's motive to cast the Plaintiff as a drug addict who is in some way involved in illegal activity."  Montoya's Objection's at 2.  Montoya requests that the questioning on this matter be "limited to the term 'prescription pain medications,' and that Defendant's counsel be prevented from using the words 'addict', 'addicted', 'narcotic', or similar words that have the same inflammatory effects that the Plaintiff is engaged in illegal activity."  Montoya's Objections at 2.

Montoya also objects to question 5 "as an attempt by the Defendant to indoctrinate or persuade the jury venire."  Montoya's Objections at 2.  Montoya asserts that the question is not premised on information that is likely to be admissible at trial, and notes that neither Romero nor Montoya included on his or her witness list any healthcare provider against whom Montoya made a complaint.  See Montoya's Objections at 2.  Montoya maintains: "In fact, the only

complaint Plaintiff made against a healthcare provider relates to an incident that occurred at the Cuba Health Clinic on July 9, 2010." Montoya's Objections at 2.

> At the motions hearing in this matter on July 5, 2013, counsel for Defendant stipulated that the events from the Cuba Health Clinic on July 9, 2010 would not be used at trial, and the information Defendant will seek to elicit at trial pertains to a supposed incident at the Cuba Health Clinic in August of 2010.

Montoya's Objections at 2. Montoya contends that, even if the fact that she made a complaint against a healthcare provider were to become admissible at trial, question 5 is "too closely related to the controverted ancillary facts in this case." Montoya's Objections at 2. Montoya further contends that question 5 is not designed to determine bias on the part of potential jurors, but instead is an attempt to "indoctrinate or persuade the jury venire." Montoya's Objections at 2. Montoya suggests that general questioning about wrongful accusations is "more appropriate' in the event that Court allows questioning in this area. Montoya's Objections at 2.

Romero objects to the proposed voir dire questions submitted under questions A(1), 3(c), 3(d), 3(f), and 3(h), 4(e), 4(f), C, E(3), F, and G(2). Romero asserts that the questions in A(1) "amount to nothing more than argument," and "are clearly designed to prejudice and bias the jury, from the start of jury selection, into believing that they must assume there is some element of inappropriate police conduct." Romero's Objections at 1. If the Court allows these questions, Romero requests that the he be allowed to ask the jury the following questions:

> (a) What did your parents teach you about threatening police officers?
>
> (b) What did your parents teach you about abusing drugs, selling illegal drugs, and lying about your drug dealings to police officers?
>
> (c) Did you parents give you any advise [sic] about when you are dealing with a police officer about whether you should threaten them with physical force or violence?
>
> (d) What advise [sic] have you given to your children regarding whether they should deal openly and honestly with police officers?

    (e) What advise have you given to your children about whether they should ever falsely accuse police officers of doing things they have not done?

    (f) What advise have you given to your children about whether they should try to blame police officers in an attempt to escape responsibility for their own action(s)?

    (g) Why did you give that advise [sic] to your children?

Romero's Objections at 1-2. Romero also objects to Montoya's proposed voir dire questions 3(c), (d), (f), and (h). See Romero's Objections at 2. If the Court permits Montoya to ask those questions, Romero requests that the Court allow the following questions:

    (a) Do you know of people who lie to police officers because they don't want to admit that they have committed crimes?

    (b) Do you know of people who lie to police officers because they don't want police officers to know the truth about what their family members or friends have been doing?

    (c) Do you know of people who lie in court because they are afraid that if they tell the truth the Court's decision will not be in their favor?

    (e) Have you heard of, or do you know of people, who fouled police officers or judges by not telling the truth?

    (f) Have you heard of or do you know of people who lie because they want money out of a lawsuit?

    (g) How many of you have heard of people who do everything they can to make police officers look bad so that they can engage in illegal activities?

    (h) How many of you have heard of people who do everything they can to falsely accuse police officers of wrongful conduct because they themselves have acted wrongfully or illegally?

Romero's Objections at 2-3. Romero objects to Montoya's proposed voir dire questions 4(e) and 4(f) as "tantamount to asking the jury how they will vote or rule on specific questions." Romero's Objections at 3. If the Court allows Montoya to ask these questions, Romero requests that the Court permit him to ask the following questions: "If you found that Officer Romero did

- 7 -

nothing wrong and you believe that the Plaintiff's claims are false, would any of you be concerned that your friends or family would react against you because you believed the police officer? . . . What would be your concerns?" Romero's Objections at 3.

Romero objects to Montoya's proposed voir dire questions C(1), C(2), C(3), C(4), C(5), C(6), C(7), and C(8). Romero's Objections at 3. Romero argues: "This is not voir dire, this is jury conditioning and argument regarding the law applied to the case." Defendant's Objections at 3. If the Court permits these questions, Romero requests permission to ask the following:

> (a) Do any of you know of people who have sued cities, towns, police officers or public employees simply because they thought they could get money?
>
> (b) Do any of you know of people who have sued cities, towns, police officers or public employees simply because their lawyers thought they could make money by doing so?
>
> (c) Do any of you know of people who have brought civil rights suits that had no merit simply because they thought that by bringing a "civil rights lawsuit" they would get money even though they knew their lawsuit has no merit?
>
> (d) Do you believe that people often accuse police officers of doing things the officers haven't done because they are embarrassed to admit that they are at fault?
>
> (e) How many of you believe that a person should not circulate a petition against government because that person wants to buy and sell illegal drugs and not get arrested?
>
> (f) How many of you would have a problem being fair in the case knowing at the outset that one of the Defendant's claims is that the Plaintiff and her domestic partner claimed they participated in circulating a petition against the Cuba Police Department because they wanted to get the police out of town so they could be more free to buy and sell illegal drugs?
>
> (g) Do any of you know people who have wrongly claimed they were ever retaliated against at work or at any other place?
>
> (h) How many of you have ever been faced with a situation where you wanted to tell someone that they shouldn't falsely accuse police officers of doing something that they simply had not done?
>
> (i) How many of you have been faced with a situation where you wanted to tell

>someone that they shouldn't falsely accuse someone simply because they wanted money?
>
>(j) How many of you fell that people sue governmental entities because they think it is easy for them to get money by doing so?
>
>(k) Is there anyone here that believes that because the lawyer for the Plaintiff has asked questions that assume an officer did something improper means that the officer must have done something improper?
>
>(l) Is there anyone here who believes that because the lawyer for the Defendant asks questions suggesting that Mr. Romero arrested the Plaintiff because she was "rude" to him means that that is the truth of the case?
>
>(m) Does everyone here agree that no one should ever threaten to shoot a police officer?
>
>(n) Does everyone here agree that a person who threatens to shoot a police officer has committed a crime?

Romero's Objections at 3-5. Romero also objects to question E(3) of Montoya's proposed voir dire: "This section asks for general opinions regarding why 'people file law suits.' Once again, this is jury conditioning." Romero's Objections at 5. If the Court allows these questions, Romero requests permission to ask: "What are some of the reasons people file frivolous lawsuits?" Romero's Objections at 5. Romero also objects to questions F(1), F(2), F(3), F(4), F(4)(a), F(4)(b), F(4)(c), and F(4)(d) of Montoya's proposed voir dire: "This section asks the jury to describe, essentially, how they would decide damages and strongly suggests to them that they will be deciding the issue of damages." Romero's Objections at 5. Romero contends that these questions also suggest that a jury could award damages for civil rights violations "without actual proof of damages." Romero's Objections at 5. If the Court allows the Montoya to ask questions F(1), F(2), F(3), F(4), F(4)(a), F(4)(b), F(4)(c), and F(4)(d), Romero requests permission to ask the following:

>(a) Do you believe that no one should be given money damages every time they claim that their civil rights were violated?

>(b) Would you be able to tell the Plaintiff that she is not entitled to any money because she decided to sue a police officer who didn't do anything wrong?
>
>(c) Have you ever heard of a case on TV, on-line, from friends and family, where you felt that the person suing was suing simply to get money, such as for having hot coffee spilled on their lap?
>
>(d) Which is worse in your opinion, giving money to somebody who sues simply because they think the person they are suing will pay money to make the lawsuit go away, or someone who sues for money because they don't know the truth of what happened?
>
>(e) How do you tell the difference between someone who is suing knowing that their lawsuit has no merit and they just want the money versus someone who, for example, because of drug addiction, doesn't know that their lawsuit has no merit?
>
>(f) Do all of you understand that any award of even $1 to the Plaintiff will allow her lawyers to ask for tens if not hundreds of thousands of dollars in attorney's fees? How do you feel about this?
>
>(g) Is there anyone here who believes that someone who claims they are entitled to punitive damages should automatically get them?
>
>(h) Do all of you understand that no matter how frivolous the Plaintiff's lawsuit might be, that the Defendant cannot counter sue her or get back any of the money that has been spent defending against a frivolous lawsuit? How do you feel about that?

Romero's Objections at 5-6. Romero also objects to Montoya's "catch all question" G(2). Romero asserts that this question is a jury-conditioning question intended to lead the jury pool to believe that Romero lied on an application. If Montoya is allowed to ask question G(2), Romero requests permission to ask the following:

>(a) Whether anyone knows of or has heard of someone who tries to escape the consequences of their own wrongdoing by pointing the finger at someone else who did something totally unrelated, solely to take attention away from themselves?
>
>(b) Whether anyone knows of people who gossip, belittle or put down other people to make up for their own shortcomings?

Romero's Objections at 6-7.

The Court held a hearing on July 31, 2013.  See Transcript of Hearing (taken July 31, 2013)("Tr.").[1]  The Court began by stating that, given the nature of the questions, the parties would be held to tight time deadlines during voir dire given that there was some conditioning present in the questions.  See Tr. at 22:5-8 (Court).  Regarding Montoya's voir dire, the Court stated it was inclined to allow her questions, but also allow the questions that Romero presented in his objections to Montoya's voir dire.  See Tr. at 24:14-16.  The Court also indicated that it would likely take the objection to Romero's voir dire question number three under advisement and would likely overrule Montoya's objections to question number 5.  See Tr. at 24:17-22 (Court).

Regarding her own voir dire, Montoya stated that the Court's direction regarding how to conduct voir dire was fine and added: "There's nothing that we're hanging our hat on as extremely objectionable."  Tr. at 24:4-7 (Howard).  Regarding questions three and five of Romero's proposed voir dire, Montoya referred the Court to its objection.  See Tr. at 24:8-9 (Howard)("I think our objection to questions three and five in the defendant's proposed voir dire are well stated.").  Montoya argued: "[W]ith respect to the Defendant's objections to our questions, we share the Court's concern that some of the questions, you know, may not be designed to elicit conversation between the jurors."  Tr. at 24:9-12 (Howard).  The Court responded by asking if Montoya was comfortable with being allowed to ask her proposed questions if Romero was allowed to ask the similar follow-up questions that he listed in his objections.  See Tr. at 25:18-20 (Court).  Montoya responded that she was comfortable with that approach to the extent Romero's questions are similar to the ones she asks.  See Tr. at 25:18-20 (Howard).  The Court then asked the same of Romero, who responded that he was comfortable

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and line numbers.

with that approach as well and added: "[W]hat I do on voir dire is going to in large part depend on what the Plaintiffs do and are permitted to do." Tr. at 25:3-6 (Lyle).

Turning to Romero's proposed voir dire, the Court stated its inclination to overrule Montoya's objection to question number five and allow the Defendant to ask it, but take question number 3 under advisement. See Tr. at 25:14-16 (Court). Neither party had any further comments.

## LAW REGARDING JURY SELECTION

"To be meaningful, the adequacy of voir dire examination must allow a party an opportunity to make reasonably intelligent use of peremptory challenges and challenges for cause." Lowery v. City of Albuquerque, No. 09-0457, 2012 WL 1372273, at 4 (D.N.M. Apr. 11, 2012)(Browning, J.)(citing United States v. Rucker, 557 F.2d 1046, 1049 (4th Cir. 1977)). "[V]oir dire is within the sound discretion of the trial court, and the court's exercise of that discretion will not be disturbed, absent a clear showing of abuse." United States v. Whitt, 718 F.2d 1494, 1497 (10th Cir. 1983). See United States v. Gibbons, 607 F.2d 1320, 1330 (10th Cir. 1979)("The trial court has broad discretion in conducting the voir dire examination."). "[D]istrict courts have broad discretion in fashioning the method of exercising peremptory challenges, and the jury selection procedure in general." United States v. Morris, 623 F.2d 145, 151 (10th Cir. 1980).

## ANALYSIS

The Court overrules Romero's Objections to Montoya's Proposed Voir Dire. The Court also overrules Montoya's Objections to the Defendant's Proposed Voir Dire. The proposed questions constitute appropriate voir dire for a wrongful arrest case where the veracity of both parties is being challenged.

**I.  THE COURT OVERRULES ROMERO'S OBJECTIONS TO MONTOYA'S PROPOSED VOIR DIRE.**

Romero objects to Montoya's proposed voir dire questions A(1), 3(c), 3(d), 3(f), 3(h), 4(e), 4(f), C(1), C(2), C(3), C(4), C(5), C(6), C(7), and C(8) , E(3), F(1), F(2), F(3), F(4), F(4)(a), F(4)(b), F(4)(c), and F(4)(d), and question G(2).  See Montoya's Proposed Voir Dire (Doc. 139); Romero's Objections (Doc. 147).  Romero requests that, if the Court allows Montoya's proposed questions, the Court allow his follow-up questions as well.  At the July 31, 2013 hearing, both parties agreed to the Court's proposal to allow Montoya's questions and Romero's relevant follow-up questions.  See Tr. at 24:18-25:6 (Court, Howard, Lyle).  Accordingly, the Court overrules Romero's Objection to Montoya's proposed voir dire questions.[2]

**II.  THE COURT OVERRRULES MONTOYA'S OBJECTIONS TO ROMERO'S PROPOSED VOIR DIRE.**

Montoya objects to Romero's proposed voir dire questions three and five:

> 3.  Whether any of the Panel Members know of people who are or have been addicted to prescription narcotics including morphine or other pain killers, and if so, how this knowledge affects their view of such people?
>
> * * * *
>
> 5.  Whether any of the Panel Members or their immediate family or friends have ever made or filed complaints against a doctor or healthcare provider

---

[2] Because the parties have agreed to the procedure at voir dire and because of the time limits to which the Court will likely hold the parties, thus rendering it unlikely many of the proposed questions will be asked, the Court is not inclined to wade back into the thicket and reopen a dispute now settled.  Nevertheless, the Court has concerns about Romero's proposed follow-up question (f) on page 6 of Romero's Objections, which explains to the jury how plaintiff civil rights lawyers are paid and discourages the jury from awarding even one dollar because Montoya's attorneys may get paid much more than the award.  See Romero's Objections at 6.  On a clean slate, the Court would not prevent the question, because the jury does not need to worry about the esoteric world of compensation for § 1983 actions; its sole focus should be on deciding whether the plaintiff -- not her attorneys -- is compensated.  The voir dire question takes the jury's mind off that singular task for no legitimate reason and is therefore unduly prejudicial, in that there is unfair harm without the compensating promise of probative answers forthcoming in response to the question.

accusing them of wrongfully refusing to provide them with prescription pain medications?

Romero's Proposed Voir Dire at 1-2.  Montoya objects to question three as an "attempt to indoctrinate or persuade the jury venire."  Montoya's Objections at 1.  Montoya argues: "Moreover, the suggestion that there will be evidence in this case that the Plaintiff is 'addicted' to prescription 'narcotics' is an attempt to cast the Plaintiff as a drug addict and is overly prejudicial."  Montoya's Objections at 1-2.  While an assertion that Montoya is or was addicted to morphine could be unfairly prejudicial, the Court does not believe that inquiring whether potential jurors have personal experience or views regarding people they may know who have used prescription painkillers such as morphine is in itself inappropriate.  This conclusion is especially true given that discussion about morphine usage is permitted in this case.  See Memorandum Opinion and Order, filed November 30, 2013 (Doc. 211).  Accordingly, the Court overrules Montoya's Objection to Romero's Proposed Voir Dire regarding question three.

Regarding question five, Montoya objects to the question as another attempt to "indoctrinate or persuade the jury venire."  Montoya's Objections at 2.  This question strikes the Court as appropriately targeted toward revealing potential juror experience or bias regarding individuals who have had a medical professional try to taper them off prescription pain medications.  A key part of Romero's theory is that Montoya and Romero were both present at a health clinic when a doctor told Montoya that she would be tapered off morphine and that Montoya resented Romero's presence at the clinic.  See Transcript of Hearing at 6:4-22, taken July 5, 2013 ("July 5 Tr.") [3](Court, Lyle)(Court: "Well explain to me -- explain to me why the cutting off of the morphine would be related to Romero."  Lyle: "[Montoya] blames him for that.

---

[3] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and line numbers.

She blames him for being part of that. That's our theory of the case."). The Court overrules Montoya's Objection to Romero's Proposed Voir Dire regarding question five.

**IT IS ORDERED** that (i) the Plaintiff's Objections to Defendant's Proposed Voir Dire, filed July 18, 2013 (Doc. 143) are overruled; and (ii) the Defendant's Objections to Plaintiff's Proposed Voir Dire, filed July 18, 2013 (Doc. 147) are overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Laura Schauer Ives
ACLU of New Mexico
Albuquerque, New Mexico

--and--

Leon Howard
Leon F Howard, III
The Law Office of Lucero & Howard, LLC
Albuquerque, New Mexico

--and--

Rachel E. Higgins
Albuquerque, New Mexico

 *Attorneys for the Plaintiff*

James P. Lyle
Law Offices of James P. Lyle, P.C.
Albuquerque, New Mexico

 *Attorney for the Defendants*