## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

EVA DENISE MONTOYA and
BRENDA MOFFETT,

       Plaintiffs,

vs.                                                                              No. CIV 11-0814 JB/SMV

VILLAGE OF CUBA, MARCUS ROMERO,
in his individual capacity, JASON GRIEGO,
in his individual capacity, and TOMMY
SALAZAR, in his individual capacity,

       Defendants.

## MEMORANDUM OPINION AND AMENDED ORDER[1]

**THIS MATTER** comes before the Court on the Plaintiff's Motion in Limine to Exclude

Testimony and Evidence of Plaintiff's Medical Condition; Evidence and Testimony Related to an

Incident Occurring at the Cuba Health Center on July 9, 2010 Involving Plaintiff; Evidence and

Testimony by Personnel Employed by Cuba Emergency Medical Services and Cuba Health Clinic,

and Evidence and Testimony by Witnesses Related to the Raid, filed December 10, 2012

(Doc. 82)("Motion in Limine").   The Court held a hearing on July 5, 2013.   The primary issues

are: (i) whether the Court should exclude all evidence about Plaintiff Eva Denise Montoya's

medical condition on the grounds that it is irrelevant; and (ii) whether the Court should exclude the

---

[1] The Court entered an Order, filed September 24, 2010 (Doc. 175), granting the Plaintiff's Motion in Limine to Exclude Testimony and Evidence of Plaintiff's Medical Condition; Evidence and Testimony Related to an Incident Occurring at the Cuba Health Center on July 9, 2010 Involving Plaintiff; Evidence and Testimony by Personnel Employed by Cuba Emergency Medical Services and Cuba Health Clinic, and Evidence and Testimony by Witnesses Related to the Raid, filed December 10, 2012 (Doc. 82), and stating: "The Court will . . . issue a memorandum opinion more fully detailing its rationale for this decision."   Order at 2 n.1.   This Memorandum Opinion and Amended Order contains the promised opinion, and it amends the Order to deny the motion.

recording of the 911 call, in which the 911 operator dispatched police, and in answer to that call, Defendant Cuba (New Mexico) Police Department Officer Defendant Marcus Romero arrived at Montoya's residence and thereafter arrested her. The Court will deny the Motion in Limine. Romero seeks to introduce evidence of Montoya's medical condition of hepatitis C and her treatment of that condition with morphine to show Montoya's bias and motive in bringing the suit against Romero. Romero asserts that the Cuba Medical Center in Cuba, New Mexico determined morphine was not a proper treatment for hepatitis C, and when it called in Montoya to inform her that it would no longer prescribe her morphine, a disturbance ensued, which, because the Cuba Medical Center requested his presence at the intervention, Romero observed. The Court concludes that rule 404 of the Federal Rules of Evidence does not exclude evidence of Montoya's medical condition, because Romero is offering it for a proper purpose, it is relevant, and the danger of unfair prejudice, given that she was prescribed morphine to treat her condition, does not outweigh the evidence's probative value. The Court also concludes that it should not at the present time exclude the 911 recording. The recording is admissible to rebut Montoya's allegations that Romero arrested her in retaliation for petitioning against the Cuba Police Department, because it recorded the 911 operator asking for police dispatch to Montoya's residence. Moreover, the recording appears to be admissible under both the present sense impression and excited utterance exceptions to rule 802's rule against hearsay.

## PROCEDURAL BACKGROUND

Montoya moves the Court, under rules 401, 403, and 404(b) of the Federal Rules of Evidence, rules 26 of the Federal Rules of Civil Procedure, and the Pretrial Order, to exclude certain evidence and testimony: (i) an incident at the Cuba Health Clinic on July 9, 2010; (ii) evidence and testimony concerning Montoya's medical conditions; and (iii) "testimony from

witnesses who cannot speak to any issues which remain relevant pursuant to this Court's Order on

Defendants' Motion for Summary Judgment."   Motion in Limine at 1.   Montoya contends that,

because the Honorable Robert C. Brack, United States District Judge for the District of New

Mexico dismissed her claims arising under the Americans with Disabilities Act, 42 U.S.C. §§

12181-12213 ("ADA"), and the Rehabilitation Act of 1973 § 504, 29 U.S.C. § 794, her "medical

condition is no longer germane to this case and any references to the medical treatment she

obtained for her condition of Hepatitis C at the Cuba Health Clinic, should be excluded under rule

401."   Motion in Limine at 2 (citing Memorandum Opinion and Order, filed October 16, 2012

(Doc. 72)("MSJ MOO")).    Montoya notes that, during discovery, then-Defendant Thomas

Salazar described a July 9, 2010, incident in which she was involved at the Cuba Health Clinic and

to which he responded.   She notes that he investigated the incident and created a police report

about the incident.   She maintains, however, that the July 9, 2010, incident is in no way related to

Montoya's September 23, 2010, arrest underlying the events in this case, and that the Court should

exclude the report and all testimony or evidence regarding the July 9, 2010, incident as irrelevant

or as improper character evidence.   See Motion in Limine at 2-3.

Montoya also moves to exclude "all testimony of Cuba EMS personnel and any and all

unidentified employees of health care providers of the Cuba Health clinic."   Motion in Limine at

3.   She gives as her reason for excluding the Emergency Medical Services personnel that, "at no

time during its Rule 26 Initial Disclosures, during the discovery period (which closed on April 27,

2012) or anywhere in the Pre-trial Order [Doc. 66] does Defendant's counsel identify any specific

personnel of Cuba EMS whom he intends to call as witnesses."   Motion in Limine at 3.   Montoya

argues that, to the extent that the Court allows any testimony or evidence about her medical

condition at the Cuba Health Clinic -- hepatitis C -- it should limit it to her "damages claims for

- 3 -

emotional distress and should be permitted only if such witnesses have personal knowledge as treating physicians or providers on that issue."   Motion in Limine at 3.

Montoya also moves the Court to exclude "testimony by witnesses Allen Mills, Jason Benally and Xavier Aguilar," arguing that these witnesses' testimony will relate to drug-related flyovers to which she referred in her Complaint, filed November 12, 2011 (Doc. 3-1), because Judge Brack dismissed any claims related to the drug flyovers in the MSJ MOO.   Motion in Limine at 3-4.   She asserts that dismissal of the First Amendment retaliation claim that she initially alleged makes any testimony about the drug raids of which she complains irrelevant.   See Motion in Limine at 4.   Montoya asserts that "the effect of allowing these law enforcement officers to describe the drug raid on Plaintiff's property would be far more prejudicial than probative since it would give the jury the false impression that Plaintiff, who undisputedly has no criminal history, is a criminal."   Motion in Limine at 4.

On January 3, 2013, Romero filed his Response in Opposition to Plaintiff's Motion to Exclude Medical Condition Testimony and Request for Other Relief (Doc. No. 82).   See Doc. 92 ("Response").   Romero argues that the Court should deny Romero's motion "for both procedural and legal reasons."   Response at 1.   Romero asserts that the motion fails procedurally, because Montoya's attorneys did not seek his concurrence or opposition before filing the motion, and because "[t]he motion does not contain any legal arguments or authorities to support the arguments made."   Response at 1 (citing D.N.M.LR-Civ. 7.1; D.N.M.LR-Civ. 7.3).   Romero contends that the Court should deny the Motion in Limine for Montoya's failure to cite any "'authority in support of the legal positions advanced,'" because the motion "doesn't give Defendant fair notice of the legal arguments she claims support her position."   Response at 1 (quoting D.N.M.LR-Civ. 7.3(a)).

- 4 -

Turning to the Motion in Limine's substance, in response to Montoya's contention that no evidence related to her medical condition before her September 23, 2010 arrest is admissible, Romero asserts: "The simplest answer is that because Plaintiff seeks emotional distress damages, her medical condition is in issue."   Response at 2 (citing Fox v. Gates Corp., 179 F.R.D. 303, 305 (D. Colo. 1998)).   Romero contends that, in addition to her emotional distress damages, because Montoya's abuse of prescription drug medication set up the first meeting between Romero and Montoya, her medical history goes to the heart of the issues.   See Response at 3.   As to Montoya's objections to testimony from EMS personnel, Romero explains that their testimony will be offered for authentication purposes and that, "[i]f Plaintiff will stipulate that the recordings are authentic, these witnesses will not be needed."   Response at 4.   In relation to Montoya's objection to testimony from officers involved in the drug raid, Romero states that he does not intend to call these officers and that, had Montoya complied with the local rules, he could have told her that he does not oppose that part of the Motion in Limine.   See Response at 4.   He "does take issue with Plaintiff's claim that no evidence regarding the fact of the drug raid can be raised at trial," asserting that "this is critical evidence as to Plaintiff's true motive for suing Defendant and the former Defendants . . . . revenge."   Response at 4 (citing Fed. R. Evid. 404(b)).   Romero asserts:

> Taken as a whole, Plaintiff's motion would deprive the jury of critical evidence and turn the trial from a "search for the truth" into a sham.   The jury should not be required or asked to decide these facts in a vacuum.   They must be provided with the salient facts to put all of these events and alleged events into context.

Response at 5-6.

On January 9, 2013, Montoya filed the Plaintiff's Response to Defendant's Response in Opposition to Plaintiff's Motion to Exclude Medical Conditions Testimony and Request for Other

Relief.   <u>See</u> Doc. 96 ("Reply").   Montoya notes:

> Plaintiff will not respond to Defendant's procedural objections.   Given the previous course of conduct, it was clear that Defendant's counsel would object to any evidentiary motion propounded by Plaintiff and that a request for concurrence would be a futile gesture.   Plaintiff wishes to narrow the issues to be presented at trial in the most efficient manner possible.

Reply at 1-2 n.1.   Montoya asserts that, while <u>Fox v. Gates Corp.</u> -- the case to which Romero cites in support of his position that her medical records are admissible in this case -- "may support the contention that such records are producible in . . . a discovery request . . . , <u>Fox</u> does not establish that those records are admissible at trial."   Reply at 1.   She contends that only where a party affirmatively places the party's medical condition at issue, which she asserts she has not done here, are medical records admissible.   <u>See</u> Reply at 2.

Montoya argues that Romero's theory of revenge for admitting her medical history is "novel," pointing out that he cites to no evidence in the record that she ever abused the narcotics. Reply at 2.   She contends that "[a]llegations of abuse are pure speculation on Defendant's part made for the sole purpose of prejudicing the jury against the Plaintiff by portraying her as a drug addict, despite her lack of any criminal record."   Reply at 2.   She also asserts that there is no evidence regarding Romero's presence at any August 2010 incident outside of the Cuba Health Clinic and asserts that, because "Defendant does not discuss the July 2010 incident which is the subject of Plaintiff's motion . . . . , Plaintiff will presume that Defendant concurs that evidence regarding the July 2010 incident is not relevant to Plaintiff's remaining claims."   Reply at 2-3.

Montoya concedes that she will not stipulate to the September 23, 2010, dispatch recording, but asserts that her reason for not doing so is that Romero misrepresents the tape's contents.   <u>See</u> Reply at 3.   She asserts that, whereas Romero "claims that EMS personnel are allegedly heard requesting police presence at Plaintiff's residence," in the "unedited version, the

dispatcher states that she 'was asked to call for back-up' by a third party."   Reply at 3.   Montoya asserts:

> In view of the fact that unnamed persons, who may or may not be employees of EMS dispatch, are speaking in the background of these tapes and appear to have prompted the request for EMS back-up and Defendant has made no efforts to substitute the identity of these persons, Plaintiff will not consent to the authentication of these tapes and hereby renews its objection to the admissibility of the tapes at trial.

Reply at 3.   She contends that, even if the tapes are authentic, they are irrelevant, and the Court should exclude them under rules 401 and 402, because they show Romero's reasons for being there only, and do not reflect on his actions in arresting her.   Reply at 3-4.

At the July 5, 2013, hearing on the Motion in Limine, Montoya noted that the Motion in Limine addresses four primary issues.   See Transcript of Hearing at 2:21-24 (taken July 5, 2013)(Howard)("Tr.").[2]   In relation to the first issue -- requesting the Court to exclude any testimony to an "unfruitful raid" at Montoya's residence -- she stated that, because Romero represents that he does not intend to introduce any evidence related to this event at trial, the Court can deny that portion of the motion as moot based on his representation.   Tr. at 2:24-3:3 (Howard).   Montoya asserted that the second issue, and the first contested issue, in the motion is therefore the admissibility of her medical history, which she asserted is not relevant after Judge Brack dismissed her ADA claim at the summary-judgment stage.   See Tr. at 3:8-15 (Howard). She asserted that "the case has been really narrowed down to one particular issue, and that is whether or not officer Marcus Romero fabricated testimony when he submitted his affidavit for an arrest warrant."   Tr. at 3:22-25 (Howard).   She contended that evidence about how she treats her medical condition "using morphine could confuse the jury and it could be overly prejudicial

---

[2] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.   Any final transcript may contain slightly different page and line numbers.

because there's a lot of things that the jury can insinuate from her taking morphine to treat her condition."   Tr. at 4:1-6 (Howard).

Romero responded that Montoya's medical condition is at issue, because a month before the incident, Presbyterian Hospital risk management "decided they were going to cut her off from her morphine addiction."   Tr. at 4:23-5:2 (Lyle).   In response to the Court's question whether morphine is a normal method for treating hepatitis c, Romero responded: "Absolutely not.   Tr. at 5:9 (Lyle).   He continued that, when Presbyterian Hospital decided to cut Montoya off from morphine, it was worried about what would happen when it advised her about its decision, and it thus "specifically asked for police presence, anticipating a possible violent reaction."   Tr. at 6:10-14 (Lyle).   In response to the Court's question whether Romero knew that Montoya was going to be cut off from morphine, or whether he was called there without knowledge of the circumstances, he responded that he was not given any information about the circumstances when he was called.   See Tr. at 6:20-7:2 (Court, Lyle).   The Court responded by asking why, if Romero did not know about Montoya's morphine use when he was called to the scene, he needed to get that information admitted in evidence at trial.   See Tr. at 7:8-12 (Court).   Romero responded that Montoya blames him for being cut off from using morphine, and that is why she brought the lawsuit.   See Tr. at 8:15-22 (Court, Lyle).   In response to the Court's inquiry about the evidence that he has in support of his contention about her motivations for the lawsuit, Romero responded: "The evidence is that that is the only explanation why she would falsely accuse him of doing things that he hadn't done.   And [it] maybe circumstantial evidence but it is evidence nonetheless."   Tr. at 8:1-4 (Lyle).

Romero added that, "more importantly," her morphine use is relevant to her emotional distress damages, which, as far as he can tell at this point in the proceedings, are the only damages

that Montoya alleges.   Tr. at 8:5-18 (Lyle).   The Court asked why the morphine is relevant to her alleged emotional distress damages.   See Tr. at 8:24-9:2 (Court).   Romero responded that, on the one hand, he "think[s]" he needs to get into the morphine use, but added that "there's a third reason, which is the plaintiff's ability to accurately perceive, recall, and recount events around the time in question."   Tr. at 9:3-19 (Lyle).

Montoya responded that her morphine use is not admissible to show difficulty with her perception, recall, and recount of the events, because "[t]here's been no expert designated by the defendants for us to depose about the effects of morphine and how that could change her perception of all the events that are relevant to this case."   Tr. at 11:18-24 (Howard).   The Court noted that the United States Court of Appeals for the Tenth Circuit's standard for admitting any drug use "once you can link it up with perception and recall . . . is pretty -- pretty liberal," and asked whether it is widely known that morphine affects perception to the extent that expert testimony is unnecessary in this situation.   Tr. at 11:13-16, 12:1-8 (Court).   Montoya responded that Romero's attorneys have not deposed her in this case and so "any assertion that she was currently under the influence of morphine at the time of the incident is complete speculation on the defendant's part."   Tr. at 12:9-14 (Howard).   She asserted that she does not "know how common the knowledge of the effects of morphine are."   Tr. at 13:1 (Howard).

As to the admissibility of the morphine use in relation to the emotional distress damages, Montoya asserted that, although emotional distress damages enlarge what evidence may be admissible at trial, her emotional distress damages are based upon that she had not been arrested and had no criminal record before this incident, which bears no relation to any medical issue or her morphine use.   See Tr. at 13:21-14:3 (Howard).   Montoya also pointed out that she "has multiple types of health conditions" and so the morphine "may have been for another medical condition."

Tr. at 14:6-24 (Howard, Court).   Finally, as to Romero's contention that the incident at the hospital motivated the lawsuit as revenge, Montoya asserted that "if Ms. Montoya had any animus toward somebody as a result of her pain medication treatment being altered it would be towards the clinic and not the defendant in this case."   Tr. at 15:3-9 (Howard).   The Court asked why, if that is Romero's only theory for Montoya's motivation for bringing the lawsuit against him, the probative value of the inquiry does not counsel that the Court allow him to introduce evidence of the incident at the Cuba Medical Center.   See Tr. at 15:15-24 (Court).   Montoya asserted that there is no connection between the pain medication incident and her false arrest months later, and thus there is no basis on which Romero can reasonably assert that the lawsuit is retaliation for Romero's mere presence at that pain medication incident.   See Tr. at 15:23-16:11.

Montoya moved to the second contested issue in the Motion in Limine, her request that the Court exclude any evidence related to an earlier, July 9, 2010, incident at the Cuba Medical Center, which she noted is a separate incident from the one in which the Cuba Medical Center informed her they would no longer provide her morphine.   See Tr. at 16:25-17:12 (Howard, Court). Romero responded that he does not oppose this part of the motion and consented to the Court granting that portion of the Motion in Limine.   See Tr. at 17:14-21 (Lyle, Court, Howard).

In relation to the third contested issue in the Motion in Limine, her request to exclude all testimony from Cuba Health Clinic employees related to her hepatitis c treatment, Romero asserted that he intends to offer testimony from Montoya's treating physician and a nurse practitioner, Paula Convert.   See Tr. at 18:16-20:19 (Court, Lyle).   The Court asked Montoya whether, if evidence about her morphine use in relation to her hepatitis c treatment is admissible, Dr. Wiseman's and Ms. Convert's testimony is appropriate to discuss that aspect of her treatment. See Tr. at 20:20-21:2 (Court).   Montoya clarified that she is not moving to exclude Ms. Convert's

- 10 -

testimony, as it relates to emotional distress damages, but only moving to exclude Dr. Wiseman's testimony.   See Tr. at 21:12-22:2 (Court, Howard).   When Romero pointed out that he intends to offer Dr. Wiseman's testimony by designating portions of his deposition testimony to present to the jury at trial, Montoya stated that her objection to admission of his testimony at trial "could probably be dealt with best after we see what testimony is designated."   Tr. at 22:9-10, 22:19-21 (Lyle, Howard).   Montoya asserted, however, that, related to excluding testimony from Cuba Medical Center personnel is the aspect of her motion moving to exclude emergency medical personnel's testimony to authenticate the dispatch recording.   See Tr. at 23:4-18 (Howard, Court, Lyle).

Montoya stated that she seeks to exclude the medical personnel's testimony, because there is an issue, about which they have not been provided discovery, as to how the Cuba police were dispatched to her home after she called for emergency services.   See Tr. at 23:19-24:12 (Court, Howard).   Specifically, as to her call for emergency services help, she asserted:

> The defendant would like to assert that his presence was requested specifically by emergency medical services. [H]owever, there is things in the recording that indicate that EMS was prompted to request emergency medical services from a third party that we cannot identify. . . . and we haven't had an opportunity to cross-examine anybody related to those recordings to get to the bottom of [who made those statements].

Tr. at 24:13-20 (Howard).   In response to the Court's inquiry whether Romero intends to offer the 911 recording into evidence, Romero stated that he does and noted that he believes the recording is admissible.   See 25:22-24 (Court, Lyle).

Romero asserted first that, given that Mr. Howard represented Montoya during her criminal case, she "belie[ves] that in the course of preparation for that case . . . the plaintiff has long known about the existence and contents of . . . the 911 call in question."   Tr. at 27:20-28:2

- 11 -

(Lyle).  Second, "these items were disclosed, made available, and were not inspected."  Tr. at 28:3-4 (Lyle).  Romero disagreed with Montoya and stated that he believes it was the former plaintiff, Brenda Moffett, who called 911.  See Tr. at 28:22-29:2 (Lyle).  He also noted that, regardless who called 911, the recording is admissible, as it falls under the hearsay exception for records of a regularly conducted activity.  See Tr. at 29:2-7 (Lyle).

The Court asked Romero whether he intends to call EMS only to authenticate the tape, and not for purposes of eliciting any substantive testimony to which Romero responded that the Court is correct and that these witnesses would only authenticate the tape.  See Tr. at 29:18-30:1 (Court, Lyle).

Montoya responded that there are "a couple of things I'd like to correct," and stated that Moffett was a co-plaintiff in the case until her claims were dismissed; that, during Mr. Howard's representation of Montoya in the criminal case, he made public records requests and discovery requests, and he was never provided the 911 call recording; and that he never knew about the recording until Romero submitted it with the summary judgment motion in this case.  Tr. at 31:2-12 (Howard).  The Court asked Montoya, if it decided the 911 recording is relevant, what Montoya would need to cure any prejudice from Romero's late disclosure of the tape.  See Tr. at 33:5-9 (Court).  Montoya responded that her first choice would be an opportunity to depose the people associated with the recording, but, if not, her second would be that the Court provide a limiting instruction to the jury "about a declarant being unavailable to establish who requested that Cuba Police Department's presence be required for this."  Tr. at 33:10-16 (Howard).

Romero clarified for the tape that "911 gets the call, they call for EMS, EMS calls back, and then I believe 911 dispatches for assistance, Romero responds."  Tr. at 35:1-2 (Lyle).  Montoya responded that the heart of her moving to exclude the tape is that "somebody requested --

- 12 -

prompted the operator to request Cuba police department," and that the point of contention is that she does not know or have any evidence who requested that the operator call the police department.   Tr. at 35:17-36:1 (Howard).   Montoya then read from a footnote about the audio recording Judge Brack's MSJ MOO, in which Judge Brack noted Montoya's objection to the 911 recording's admissibility for the summary judgment motion, as it was not submitted in discovery, but Judge Brack concluded that recording was not material to the motion, and thus did not decide on its admissibility.   See Tr. at 36:21-37:5 (Howard)(MSJ MOO at 6 n.1).   The Court asked Montoya if it was correct in understanding that she wants to depose the 911 operator and asked Romero whether he would agree to the Court allowing Montoya to depose the 911 operator if the Court finds the 911 recording admissible.   See Tr. at 37:12-14, 37:21-24 (Court).   Montoya confirmed that she would like to depose the 911 operator, and Romero confirmed that he does not oppose Montoya taking that deposition.   See Tr. at 37:15-20, 25 (Howard, Court, Lyle).   The Court then noted that "[i]t . . . doesn't sound like you have any evidentiary issues with [the recording].   It [sounds] like a disclosure issue," and ordered that Romero provide to Montoya the operator's name on the afternoon of July 5, 2013, and allow Montoya to take the deposition.   See Tr. at 38:13-20 (Court).

The Court moved on to the issues relating to testimony about the raid at Montoya's residence and asked the parties if they agreed that Romero was not going to offer this testimony. See Tr. at 40:2-6 (Court).   Both parties agreed that neither Montoya's witnesses nor Romero's witnesses would discuss the raid.   See Tr. at 40:7-41:17 (Howard, Lyle, Court).

## LAW REGARDING RELEVANCY OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence."   Train v. City of Albuquerque, 629 F. Supp. 2d

- 13 -

1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403).   "Relevant

evidence is evidence that has a tendency to make the existence of any fact that is of consequence to

the determination of the action more probable or less probable than it would be without the

evidence."   United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3

(D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401 ("Evidence is relevant if: **(a)** it has

any tendency to make a fact more or less probable than it would be without the evidence; and **(b)**

the fact is of consequence in determining the action.")).   "Rule 401 contains a low threshold for

relevance, because '[a]ny more stringent requirement is unworkable and unrealistic.'"   United

States v. Goxcon-Chagal, 885 F. Supp. 2d 1118, 1162 (D.N.M. 2012) (Browning, J.)(quoting Fed.

R. Evid. 401 advisory committee's note).   Irrelevant evidence, or that evidence which does not

make a fact of consequence more or less probable, however, is inadmissible.   See Fed. R. Evid.

402 ("Irrelevant evidence is not admissible.").

## LAW REGARDING ADMISSIBILITY OF EVIDENCE OF A WITNESS' DRUG USE

"A witness may testify to a matter only if evidence is introduced sufficient to support a

finding that the witness has personal knowledge of the matter."   Fed. R. Evid. 602.   A party may

attack a witness' capacity by "'showing that his or her capacity to observe, remember, or narrate is

impaired.   Consequently, the witness's capacity at the time of the event, as well as at the time of

trial, is significant.'"   United States v. Robinson, 583 F.3d 1265, 1272 (10th Cir. 2009)(quoting 4

Jack B. Weinstein & Margaret A. Berger, Weinstein's Fed. Evidence § 607.05(1) (Joseph M.

McLaughlin Ed., 2d ed. 2009)).   The Tenth Circuit has recognized that a witness' "'ability to

perceive the underlying events and testify lucidly at the trial'" may be attacked through evidence

of the witness' use of illicit substances.   United States v. Apperson, 441 F.3d 1162, 1195-96 (10th

Cir. 2006)(quoting Jarrett v. United States, 822 F.2d 1438, 1446 (7th Cir. 1987)); United States v.

Peet, 46 F.3d 1152, 1995 WL 21614, at *3 (10th Cir. 1995)(table)("While drug use may be used to

attack a witness's ability to perceive the underlying events and testify lucidly at trial, it may not be

used to attack general credibility.")[3]; United States v. Fairchild, 46 F.3d 1152, 1995 WL 21611, at

*3 (10th Cir. 1995)(same).   "Evidence of a witness's drug use may be admitted to show the effect

of the drug use on the witness's memory or recollection of events."   United States v. Dixon, 38 F.

App'x 543, 548 (10th Cir. 2002)(citing United States v. Smith, 156 F.3d 1046, 1054-55 (10th Cir.

1998)).

      Accordingly, in United States v. Robinson, the Tenth Circuit held that a district court's

refusal to allow a defendant to cross-examine a confidential informant ("CI") on his use of

prescription medications to treat his hallucinations violated the defendant's right under the Sixth

Amendment to the United States Constitution to confront a witness.   The informant's "[e]xtensive

drug use since 2000" suggested that he may have been unable to testify competently at trial, either

because he was under the influence of drugs at the time, or because he could not adequately recall

the events about which he testified.   583 F.3d at 1274.   "In light of the substantial evidence

---

[3]   United States v. Peet is an unpublished opinion, but the Court can rely on an unpublished
opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R.
32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive
value.").   The Tenth Circuit has stated:

    In this circuit, unpublished orders are not binding precedent, . . . and we have
    generally determined that citation to unpublished opinions is not favored.
    However, if an unpublished opinion or order and judgment has persuasive value
    with respect to a material issue in a case and would assist the court in its
    disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).   The Court finds
that United States v. Peet and United States v. Cordova, 340 F. App'x 427 (10th Cir.
2009)(unpublished), have persuasive value with respect to material issues, and will assist the Court
in its disposition of this Memorandum Opinion and Order.

calling into question the CI's perception and retention abilities, Robinson might have argued that the CI did not remember the events at issue but was merely parroting the [government's] version of events."   583 F.3d at 1274.   Because the CI was the government's key witness to the defendant's alleged firearm sale and his testimony was uncorroborated, the Tenth Circuit held that it was reversible error for the district court to not allow the defendant to cross examine the CI on his use of prescription medications and mental health history.   See 583 F.3d at 1274-75.   The Tenth Circuit noted that, because the district court allowed the defendant to cross-examine the CI regarding his illegal drug use, the district court "did not violate the Sixth Amendment in that respect."   583 F.3d at 1274 n.9.

In United States v. Dixon, the Tenth Circuit held that it was not plain error for a district court to allow, over a defendant's objection, a prosecutor to question the defendant regarding his use of crack cocaine.   See 38 F. App'x at 548.   Although the district court had previously granted a motion in limine excluding any evidence of the defendant's crack cocaine use, the Tenth Circuit found that allowing the prosecutor's questions was not plain error because the "questions regarding Dixon's drug use were relevant to impeach . . . his credibility as a witness."   38 F. App'x at 548.

Similarly, in United States v. Smith, the Tenth Circuit held that questioning a witness about her LSD use twenty years earlier was permissible, where the evidence was used to establish her "credibility to recall and recollection, her memory," and was not a general attack on her character for truthfulness.   156 F.3d at 1054-55.   The Tenth Circuit noted that, "[w]hile the use of certain drugs in the remote past may be entirely irrelevant to a witness's ability to remember, in this instance, it was for the jury to decide whether Ms. Doyle's use of LSD twenty years earlier affected her ability to recall the evening in question."   156 F.3d at 1055.   The Court has

- 16 -

previously allowed cross-examination regarding a plaintiff's admissions and denials of methamphetamine, marijuana, and alcohol use, and whether the plaintiff was using narcotics on the day of an incident in which the Albuquerque Police Department allegedly used excessive force against the plaintiff.   See Chamberlin v. City of Albuquerque, 2005 WL 3213515, at **1-2.   The Court determined that questions regarding the plaintiff's history of drug and alcohol abuse may be relevant in determining whether he was entitled to damages for emotional distress from the incident.   As the Court later explained:

> [E]vidence of drug use is an important tool of cross-examination for persons seeking emotion or pain and suffering damages.  These damages depend on the Defendants' conduct on the Plaintiffs' mental state; it is, therefore, important for the jury to be aware of mind-altering substances that the Plaintiffs may be taking.

See Lowery v. City of Albuquerque, No. CIV 09-0457 JB/WDS, 2012 U.S. Dist. LEXIS 55502, at *62 (D.N.M. Apr. 9, 2012)(Browning, J.).

The Court also determined that questions regarding the plaintiff's use of narcotics on the day of the incident may be relevant regarding the plaintiff's "ability to accurately perceive and recall the incidents on the day in question."   2005 WL 2313515, at *2.   See also Solis-Marrufo v. Bd. of Comm'rs, No. CIV 11-0107 JB/KBM, 2013 WL 1658203, at *17-21 (D.N.M. March 28, 2013)(Browning, J.)(allowing defendants to inquire into the plaintiff's "admissions and denials of cocaine use," but not to "stray into generally attacking [his] character for truthfulness based upon his cocaine use alone").

On the other hand, the Tenth Circuit has held that "[d]rug use is not probative of untruthfulness any more than other illegal conduct that does not involve deception.   Accordingly, it is error to admit a witness's prior drug use for impeachment purposes pursuant to Fed. R. Evid. 608."   United States v. Fairchild, 1995 WL 21611, at *3.   The Tenth Circuit has also recognized

that a court may properly limit the amount of evidence of a party's previous drug use.  For example, in Meller v. Heil Co., 745 F.2d 1297, 1303 (10th Cir. 1984), the Tenth Circuit held that a district court properly excluded the decedent's hashish pipes from evidence at trial in a wrongful death suit, because the danger of unfair prejudice substantially outweighed the pipes' probative value.  See 745 F.2d at 1303 (citing Fed. R. Evid. 403).  The defendant had sought to use the hashish pipes to impeach the plaintiff's evidence about the decedent's life expectancy, but the district court determined that a medical foundation was lacking to support the assertion that the plaintiff's marijuana use diminished the plaintiff's life expectancy.  The district court further found, and the Tenth Circuit agreed, that "[defendant] Heil sought to introduce the hashish pipes for the specific purpose of arousing juror sentiment against the decedent," an improper purpose for the evidence of the decedent's drug use.  745 F.2d at 1303.

In United States v. Laplatney, 157 F. App'x 93 (10th Cir. 2005)(unpublished), the Tenth Circuit found that a district court properly prohibited a defendant from admitting evidence of a witness' booking photographs over seven years, which the defendant alleged demonstrated that she used methamphetamine, based upon her physical deterioration displayed in the photographs. See 157 F. App'x at 97.  The defendant did not provide any evidence that the photographs alone demonstrated the witness' ongoing methamphetamine use, and, thus, the district court did not admit the photographs under rule 901 of the Federal Rules of Evidence.[4]  See 157 F. App'x at 97.

Similarly, in United States v. Cordova, 340 F. App'x 427 (10th Cir. 2009)(unpublished), the Tenth Circuit recognized that a defendant need not question a witness regarding all of the details of her drug use to satisfy the defendant's Sixth Amendment right to confront a witness.

---

[4] Rule 901 of the Federal Rules of Evidence requires that, to "satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901.

The defendant asserted that the district court "unconstitutionally limited cross-examination" to questions regarding the witness' drug use during the time in question, but the Tenth Circuit held that this limitation was not a violation of the defendant's constitutional rights.   340 F. App'x at 435-436.   See Smith v. Sirmons, 200 F. App'x 822, 826 (10th Cir. 2006)(unpublished)(holding that a district court's limitation of a defense counsel's cross-examination regarding a witness' drug use to whether the victim had ever paid the witness with drugs did not violate a defendant's Sixth Amendment right to confrontation, because "'[t]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish'")(quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.   Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.   See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).   "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]."   United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(internal quotations omitted).   "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."   Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000).   The "exclusion of evidence under Rule 403 that is otherwise admissible under the other

rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).   As the Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .   This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(citation omitted).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.   See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999).   "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case." United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)).   Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"   United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note)(emphasis in original).

## LAW REGARDING APPLICATION OF RULE 404

Rule 404(a) provides that "[e]vidence of a person's character or trait of character is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."   Fed. R. Evid. 404(a).   "This rule is necessary because of the high degree of prejudice that inheres in character evidence.   In most instances, [the Tenth Circuit is] unwilling to permit a jury to infer that an individual performed the alleged acts based on a particular character trait." Perrin v. Anderson, 784 F.2d 1040, 1044 (10th Cir. 1986)(citing rule 404 advisory notes).

The same evidence, however, may be admissible for other purposes.   Permissible purposes include proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.   See Fed. R. Evid. 404(b).   The Supreme Court has enunciated a four-part process to determine whether evidence is admissible under rule 404(b). See Huddleston v. United States, 485 U.S. 681, 691-92 (1988).   The Tenth Circuit has consistently applied that test:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)(citing United States v. Roberts, 185 F.3d 1125 (10th Cir. 1999)).   See United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir. 2002); United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996).

Rule 404(b)'s prohibition finds its source in the common-law protection of the criminal defendant from risking conviction on the basis of evidence of the defendant's character.   See United States v. Dudek, 560 F.2d 1288, 1295-96 (6th Cir. 1977); 22 C. Wright & K. Graham,

Federal Practice and Procedure: Evidence § 5239, at 428, 436-37 & 439 (1991).   In United States v. Phillips, 599 F.2d 134 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit noted, in addressing rule 404(b)'s precepts, that the rule addresses two main policy concerns:

> (1) that the jury may convict a "bad man" who deserves to be punished not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes he probably committed the crime charged.

United States v. Phillips, 599 F.2d at 136.

The Tenth Circuit has stated that district courts must "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom." United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)).   "[A] broad statement merely invoking or restating Rule 404(b) will not suffice." United States v. Youts, 229 F.3d at 1317.   "Uncharged, unrelated crimes or bad acts may be probative to show knowledge, . . . whether the acts involved previous conduct or conduct subsequent to the charged offense if the uncharged acts are similar to the charged crime and sufficiently close in time." United States v. Valencia-Montoya, No. CR 11-2990 JB, 2012 WL 8251407, at *6 (D.N.M. Sept. 17, 2012)(Browning, J.)(citing United States v. Olivo, 80 F.3d 1466, 1468-69 (10th Cir. 1996)). See Lewis v. District of Columbia, 793 F.2d 361, 363 (D.C. Cir. 1986)(per curium)(holding that the admission of evidence of prior arrests is proper for purposes of determining whether the plaintiff running from the police officers was result of a mistake, or to avoid arrest).

## LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible." Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., No. CIV 10-0698 JB/RHS, 2013 WL 311846, at *13 (D.N.M. Jan. 18,

- 22 -

2013)(Browning, J.)(citing Fed. R. Evid. 802).   Under rule 801(c) of the Federal Rules of Evidence, "'[h]earsay' means a statement that: **(1)** the declarant does not make while testifying at the current trial or hearing; and **(2)** a party offers in evidence to prove the truth of the matter asserted in the statement."   Fed. R. Evid. 801(c).   Hearsay bars a party from presenting its own statements, such as "a defendant . . . attempt[ing] to introduce an exculpatory statement made at the time of his arrest without subjecting himself to cross-examination."   United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999).   A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted, including to impeach a witness.   See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay.   If admitted for impeachment purposes, however, it is not hearsay.").

### 1.      Law Regarding Rule 803(1).

Rule 803(1) provides an exception to the rule against hearsay for "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1).   "By its own terms, application of Rule 803(1) has three distinct requirements: i) the statement must describe or explain the event perceived; ii) the declarant must have in fact perceived the event described; and iii) the description must be 'substantially contemporaneous' with the event in question."   United States v. Mejia-Valez, 855 F. Supp. 607, 613 (E.D.N.Y. 1994).   "The present sense impression exception applies only to reports of what the declarant has actually observed through the senses, not to what the declarant merely conjectures."   Brown v. Keane, 355 F.3d 82, 89 (2d Cir. 2004).   "The underlying rationale of the present sense impression exception is that substantial contemporaneity of event and statement

minimizes unreliability due to defective recollection or conscious fabrication."   United States v. Hawkins, 59 F.3d 723, 730 (8th Cir. 1995) cert. granted, judgment vacated on other grounds, 516 U.S. 1168 (1996).   "The admissibility of spontaneous utterances -- one ground relied on by the state trial court -- was recognized by the Supreme Court over a century ago in Insurance Co. v. Mosley, 75 U.S. (8 Wall.) 397, 406-07 . . . (1869)."   Martinez v. Sullivan, 881 F.2d 921, 928 (10th Cir. 1989).

### 2.   Law Regarding Rule 803(2)

Rule 803(2), commonly referred to as the excited utterance exception, provides an exception to the exclusion of hearsay statements for "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."   Fed. R. Evid. 803(2).   The United States Court of Appeals for the District of Columbia has noted that "[t]he rationale underlying the 'excited utterance' exception is that 'excitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self interest and therefore rendered unreliable.'"   United States v. Alexander, 331 F.3d 116, 122 (D.D.C. 2003)(quoting United States v. Brown, 254 F.3d 454, 458 (3d Cir. 2001)).   "Thus, to qualify as an excited utterance, the declarant's state of mind at the time that the statement was made must preclude conscious reflection on the subject of the statement." United States v. Alexander, 331 F.3d at 122 (quoting United States v. Joy, 192 F.3d 761, 766 (7th Cir. 1999))(internal quotations and changes omitted).   The Tenth Circuit, in United States v. Smith, 606 F.3d 1270 (10th Cir. 2010), set forth a district court's required analysis for whether a statement is admissible under the excited-utterance exception:

> The so-called excited-utterance exception has three requirements: (1) a startling event; (2) the statement was made while the declarant was under the stress of the event's excitement; and (3) a nexus between the content of the statement and the

event.   [T]here is no precise amount of time between the event and the statement
beyond which the statement cannot qualify as an excited utterance.   Admissibility
hinges on a statement's contemporaneousness with the excitement a startling event
causes, not the event itself.   There is no hard time limit that must be met under
Rule 803; what is relevant is whether the declarant is still under the excitement of
the startling event.

606 F.3d at 1279 (internal citations and question marks omitted).   The Tenth Circuit has noted:

Courts consider a range of factors in determining whether a declarant made a
statement while under the stress of a particular event.   Among the more relevant
factors are: the amount of time between the event and the statement; the nature of
the event; the subject matter of the statement; the age and condition of the
declarant; the presence or absence of self-interest; and whether the statement was
volunteered or in response to questioning.

United States v. Pursley, 577 F.3d 1204, 1220 (10th Cir. 2009).   "Permissible subject matter of

the statement is [not] limited . . . to description or explanation of the event or condition . . . .   [T]he

statement need only relate to the startling event or condition, thus affording a broader scope of

subject matter coverage."   United States v. Frost, 684 F.3d 963, 973 (10th Cir. 2012)(quoting Fed.

R. Evid. 803 Advisory Comm. Notes).   "If the trial court has access to a recording of the

declarant's statement, it may also consider the declarant's 'tone and tenor of voice' in determining

whether the declarant made that statement while under the stress of excitement."   United States v.

Alexander, 331 F.3d 116, 123 (D.C. Cir. 2003)(Quoting United States v. Woodfolk, 656 A.2d

1145, 1151 n.16 (D.C. 1995)(collecting cases)).

The United States Court of Appeals for the Second Circuit has provided an analysis of the

similarities and subtle differences between the present sense impression and excited utterance

exceptions to the rule against hearsay:

As defined by the Federal Rules of Evidence, a present sense impression is a
statement "describing or explaining an event or condition made while the declarant
was perceiving the event or condition, or immediately thereafter."   Rule 803(1),
Fed. R. Evid.   Such statements are considered to be trustworthy because the
contemporaneity of the event and its description limits the possibility for

- 25 -

intentional deception or failure of memory.   See United States v. Brewer, 36 F.3d 266, 272 (2d Cir. 1994).

　　　The hearsay exception for excited utterances is premised on a similar, though distinct, assumption that the reliability of a statement increases as opportunity for reflection by the declarant decreases.   An "excited utterance" is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."   Rule 803(2), Fed. R. Evid.   As we have explained, "[t]he rationale for this hearsay exception is that the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability."   [United States v. ]Tocco, 135 F.3d [] [116,] 127[ (2d Cir. 1998)].   Unlike present sense impressions, "[a]n excited utterance need not be contemporaneous with the startling event to be admissible."   Id.   Rather "[t]he length of time between the event and the utterance is only one factor to be taken into account in determining whether the declarant was, within the meaning of rule 803(2), 'under the stress of excitement caused by the event or condition.'"   United States v. Scarpa, 913 F.2d 993, 1017 (2d Cir. 1990).

. . . .

　　　Thus while the hearsay exception for present sense impressions focuses on contemporaneity as the guarantor of reliability, and requires that the hearsay statement "describe or explain" the contemporaneous event or condition, Rule 803(1), Fed. R. Evid., the excited utterance exception is based on the psychological impact of the event itself, and permits admission of a broader range of hearsay statements - i.e. those that "relate to" the event.   Rule 803(2), Fed. R. Evid.

United States v. Jones, 299 F.3d 103, 112 & n.3 (2d Cir. 2002).

　　　Many courts across the country have found it proper to admit a 911 caller's statements as a present sense impression and/or an excited utterance.   See, e.g., United States v. Thomas, 453 F.3d 838, 841 (7th Cir. 2006)(holding that admission of a three minute and fifty-three second 911 call, in which the caller said that a man holding a handgun had shot someone outside her apartment and was still there, and in which "emergency operator [] asked a series of questions about the facts of the situation and the caller narrated what she was seeing as it happened," was proper as either a present sense impression or excited utterance); United States v. Hawkins, 59 F.3d at 730 (holding that the tape of 911 emergency telephone call from defendant's wife reporting that defendant

- 26 -

displayed gun to wife during domestic dispute was proper as a present sense impression, because of its sufficient contemporaneity to underlying events and because of its reliability, as evidenced by wife's detailed description of gun); United States v. Mejia-Valez, 855 F. Supp. 607 (E.D.N.Y. 1994)(concluding that admission of two callers' 911 call tape recordings as excited utterances and present sense impressions was proper, because the two callers were at the scene of the underlying shooting, the calls were placed moments after the shooting, and both men described the facts of the shooting, including giving the location and the shooter's description).   The Court has previously held that, if the proponent of a 911 caller's statements could satisfy rule 803(6)'s foundational requirements, it would admit a recording of a 911 call into evidence.   Maples v. Vollmer, No. CIV 12-0294 JB/RHS, 2013 WL 1681234, at *16-18 (D.N.M. March 31, 2013)(Browning, J.).

> **3.**     **Law Regarding Rule 803(6)**

Rule 803(6) provides an exception to the rule against hearsay statements for records of regularly conducted activity, often referred to as the business records exception:

> A record of an act, event, condition, opinion, or diagnosis if:
>
> > **(A)** the record was made at or near the time by -- or from information transmitted by -- someone with knowledge;
> >
> > **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> >
> > **(C)** making the record was a regular practice of that activity;
> >
> > **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> >
> > **(E)** neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).   The Tenth Circuit has noted that "[t]he rationale behind this exception is

that business records 'have a high degree of reliability because businesses have incentives to keep accurate records.'"   United States v. Ary, 518 F.3d 775, 786 (10th Cir. 2008)(quoting United States v. Gwathney, 465 F.3d 1133, 1140 (10th Cir. 2006)).   A business record prepared "in anticipation of litigation is not [recorded] in the regular course of business."   United States v. Gwathney, 645 F.3d at 1140 (quoting Timberlake Const. Co. v. U.S. Fidelity & Guar. Co., 71 F.3d 335, 342 (10th Cir. 1995)).   "Any information provided by another person, if an outsider to the business preparing the record, must itself fall within a hearsay exception to be admissible." United States v. Gwathney, 645 F.3d at 1141 (citing Wilson v. Zapata Off-Shore Co., 939 F.2d 260, 271 (10th Cir. 1991)).   "The proponent of the evidence must lay the foundation for its admission."   Maples v. Vollmer, 2013 WL 1681234, at *8.   See United States v. Ary, 518 F.3d at 786 ("The proponent of the document must also lay this foundation for its admission.")(citing United States v. Samaniego, 187 F.3d 1222, 1224 (10th Cir. 1999)).

## LAW REGARDING UNLAWFUL ARREST

"A police officer violates an arrestee's clearly established Fourth Amendment right to be free of unreasonable seizure if the officer makes a warrantless arrest without probable cause." Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002)(citing Tennessee v. Garner, 471 U.S. 1, 7 (1985)).   "The law . . . is unambiguous: a government official must have probable cause to arrest an individual."   Cortez v. McCauley, 478 F.3d 1108, 1117 (10th Cir. 2007)(citing Tennessee v. Garner, 471 U.S. at 7).   See Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)("[T]he Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense.").   "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she had reasonably trustworthy information are sufficient to lead a prudent person to believe that the

arrestee has committed or is committing an offense."   Keylon v. City of Albuquerque, 535 F.3d

1210, 1216 (10th Cir. 2008)(quoting Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995)).   The

Supreme Court has stated that the existence of probable cause for an arrest depends on whether,

based on historical facts leading up to the arrest, an objectively reasonable police officer would

find probable cause:

> The principal components of a determination of reasonable suspicion or probable
> cause will be the events which occurred leading up to the stop or search, and then
> the decision whether these historical facts, viewed from the standpoint of an
> objectively reasonable police officer, amount to reasonable suspicion or to
> probable cause. The first part of the analysis involves only a determination of
> historical facts, but the second is a mixed question of law and fact: "[T]he historical
> facts are admitted or established, the rule of law is undisputed, and the issue is
> whether the facts satisfy the [relevant] statutory [or constitutional] standard, or to
> put it another way, whether the rule of law as applied to the established facts is or is
> not violated."

Ornelas v. United States, 517 U.S. 690, 696-97 (1996)(quoting Pullman-Standard v. Swint, 456

U.S. 273, 289 n.19 (1982))(alterations in original).

## ANALYSIS

Montoya moves the Court to exclude evidence and testimony of: (i) an incident at the Cuba

Health Clinic on July 9, 2010; (ii) Montoya's medical conditions; and (iii) "witnesses who cannot

speak to any issues which remain relevant pursuant to this Court's Order on Defendants' Motion

for Summary Judgment."   Motion in Limine at 1.   At the hearing, the parties agreed that they

would not introduce evidence about the July 9, 2010 incident, or about the flyovers and raids that

law enforcement performed on Montoya's residence.   There are two issues that remain for the

Court's decision after the hearing: (i) whether the Court should admit testimony concerning

Montoya's medical condition and treatment of that medical condition using morphine; and (ii)

whether the Court should admit the 911 tape recording, in which Romero responded that he would

report to Montoya's residence, which resulted in the incident underlying this case.   The Court will admit testimony and evidence about Montoya's medical condition of hepatitis c and her treatment of that condition using morphine, because Romero asserts that it provides the jury with information about her motivation in bringing this lawsuit.   The Court will also provisionally admit the 911 tape recording, but will condition its admission on Romero providing to Montoya the ability to depose the 911 operator on the recording.

I.    **THE COURT WILL NOT EXCLUDE EVIDENCE OF MONTOYA'S MEDICAL CONDITION AND TREATMENT, BECAUSE IT IS EVIDENCE OF HER MOTIVE IN BRINGING THE LAWSUIT.**

Montoya moves the Court "to exclude all testimony pertaining to the treatment she received for her medical condition of hepatitis C at the Cuba Health clinic," because it is, she maintains, irrelevant to issues which remain in the case.   Motion in Limine at 3.   To the extent that the Court finds them admissible, she asserts that "such testimony should be limited to the issue of Plaintiff's damages claims for emotion distress, and should be permitted only if such witnesses have personal knowledge as treating physicians or providers on that issue."   Motion in Limine at 3.   Romero responds that "[t]he simplest answer is that because Plaintiff seeks emotional distress damages, her medical condition is in issue."   MIL Response at 2.   Romero adds that "[e]vidence of Plaintiff's medical history goes to the heart of her motivation for suing Defendant and the former Defendants."   MIL Response at 3.   The Court agrees with Romero, finds that Romero intends to offer testimony about Montoya's medical condition and treatment for her medical condition for a proper purpose, and that its probative value in relation to the issues in the case outweighs any danger of unfair prejudice to Montoya.   Accordingly, the Court will not exclude all testimony and evidence regarding her medical condition and the treatment of her medical condition.

- 30 -

The Supreme Court in <u>Huddleston v. United States</u> set forth a four-part process to determine whether evidence is admissible under rule 404(b), which the Tenth Circuit has consistently applied:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

<u>United States v. Zamora</u>, 222 F.3d at 762 (citing <u>United States v. Roberts</u>, 185 F.3d at 1125).

In relation to the first inquiry, the rule's language provides a non-exhaustive list of proper purposes for which a party may seek to admit evidence of previous wrongs or other acts.   Included in this list of proper purposes are proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."   Fed. R. Evid 404(b)(2).   Romero is offering this evidence for two proper purposes.   First, because Montoya's medical condition of hepatitis C and her treatment of that medical condition at the Cuba Health Clinic using morphine led to an incident with police, in which Romero was the police officer involved, Romero intends to offer this evidence as proof of Montoya's motive in bringing the lawsuit.   Rule 404(b)(2)'s language specifically provides for this purpose.   Second, Romero intends to offer Montoya's medical condition and treatment for purposes of rebutting Montoya's claimed emotional distress damages.   The Court has concluded that this is a permissible purpose.   See <u>Lowery v. City of Albuquerque</u>, 2012 U.S. Dist. LEXIS 55502, at *61 (concluding that evidence of the plaintiffs' drug use was admissible against "any person who seeks emotional distresss or pain and suffering damages," and noting that ""courts have . . . held that past drug use is relevant to non-economic damages"); <u>Solis-Marrufo v. Bd. of Comm'rs</u>, 2013 WL 1658203, at *20 ("if Solis-Marrufo

asserts that he has suffered mental and emotional distress because of the Individual Defendants'

actions, the Court will allow the Individual Defendants to contradict his asserted damages by

inquiring into his previous and current cocaine use.").   The Court therefore concludes that

Romero is offering this evidence for proper purposes.

In relation whether the evidence is relevant, a defendant police officer's previous

encounters with the plaintiff are relevant in relation to the plaintiff's motive for bringing a lawsuit.

The Court has previously concluded, in connection with defendants' intentions to offer a

plaintiff's previous interactions with police to show the plaintiff's motive in bringing the lawsuit,

that this evidence is relevant to bias and motive in bringing the suit, and that rule 404(b)(1) thus

does not exclude the evidence.   See Maples v. Vollmer, No. CIV 12-0294 JB/RHS, 2013 WL

1677104, at *18 (D.N.M. Mar. 31, 2013)(Browning, J.)(finding that the plaintiff's "prior

encounters [with the Albuquerque Police Department ("APD")] provide [the plaintiff] with a

possible bias against APD, possible motive to slant his testimony against APD, the City of

Albuquerque, [APD Officers] Vollmer, and Fox, and provide him motive to bring the lawsuit

against the Defendants"); Montoya v. Sheldon, 898 F. Supp. 2d 1259, 1277 (D.N.M.

2012)(Browning, J.)(concluding that it was permissible to allow the defendants to ask the plaintiffs

if APD, the defendant officers' employer, had arrested the plaintiffs in the past "to establish

possible bias in bringing the suit").   Similarly, in a case with facts similar to the circumstances of

this case, the United States Court of Appeals for the First Circuit upheld the district court's

decision to allow evidence of the plaintiff's past arrest for gun-possession charges -- for which she

was acquitted -- in her later, unrelated § 1983 civil case against one of the officers involved for the

officer's alleged use of threats and vulgar language.   See Pittsley v. Warish, 927 F.2d 3, 10 (1st

Cir. 1991), abrogated on other grounds by Cnty. of Sacramento v. Lewis, 523 U.S. 833 (1998).

The First Circuit reasoned that, given the defendant officer's involvement and the temporal relationship between the arrest for the gun charges and this unrelated civil suit, neither rule 404 nor rule 403 required the evidence's exclusion:

> In this case, the charges against Ms. Pittsley for gun possession and the other motor vehicle violations were probative in demonstrating motive and bias given that Officer Warish arrested Ms. Pittsley and testified against her at trial which led to her conviction on the motor vehicle charges.   Moreover, the arrest of Ms. Pittsley on these charges occurred only two weeks before the first incident complained of in this action took place. Therefore, we find the district court properly admitted the evidence and did not abuse its discretion.

927 F.2d 3, 10.

A plaintiff's drug use is also relevant to the plaintiff's claims for non-economic damages, including emotional distress damages.  See Lowery v. City of Albuquerque, 2012 U.S. Dist. LEXIS 55502, at *61 ("[C]courts have . . . held that past drug use is relevant to non-economic damages.")(citing Magelky v. BNSF Ry. Co., No. 1:06-cv-025, 2008 U.S. Dist. LEXIS 6573, 2008 WL 238451, at *11 (D.N.D. Jan. 28, 2008)).   Thus, the Court has concluded that plaintiffs' previous drug use in a class action lawsuit was relevant to their claims for emotional distress damages.   See Lowery v. City of Albuquerque, 2012 U.S. Dist. LEXIS 55502, at **1-2. Similarly, the Court recently concluded that, if a plaintiff in a § 1983 claim asserted at trial that he suffered emotional distress damages or pain and suffering damages at trial, the defendant could present evidence of the plaintiff's past drug use as evidence to rebut the extent of these damages. See Solis-Marrufo v. Bd. of Comm'rs, 2013 WL 1658203, at *20.

Because Montoya's medical condition of having hepatitis C and her treatment of that condition led to an altercation with Cuba police, in which Romero was the responding officer, evidence about her medical condition is relevant to Montoya's bias and motive in bringing the lawsuit.   Romero explains that the evidence at trial will show that Montoya's medical condition,

and specifically that she treated her hepatitis c by using morphine, precipitated this lawsuit, which

she brings against "Romero and the Cuba Police Department out of spite and revenge":

> The evidence at trial will show that Plaintiff and her domestic partner, former Plaintiff Moffett, have abused prescription narcotic medication for years. The situation came to a head in August of 2010, one month before the Plaintiff's arrest, when the providers at the Cuba Health Clinic, and specifically Dr. Wiseman, in consultation with other Presbyterian physicians, decided to cut Plaintiff and Ms. Moffett off from further narcotics.   In anticipation of the Plaintiff's reaction, the Health Clinic workers asked for police presence. Defendant Romero was dispatched to assist.
>
> Ms. Moffett took the news stoically and did not make a scene. Plaintiff reacted quite differently. After being told she could not get narcotic prescriptions at the clinic any longer she ran from the doctor's office yelling for "help", and then encountered Cuba Police Officer Romero.  She commented about why he was there and left the building.  Separate and apart from her emotional distress and humiliation claims, these facts prove, or tend to prove, Plaintiff sued Officer Romero and the Cuba Police Department out of spite and revenge.

MSJ Response at 3.  Just as the Court concluded that the plaintiff's previous interactions with

officers from the police department employing the defendant police officers in Maples v. Vollmer

and Montoya v. Sheldon were relevant under the Tenth Circuit's rule 404(b) analysis for purposes

of showing bias and motive in bringing the suit, and just as the First Circuit concluded that the

defendant officer's arrest of the plaintiff in an unrelated incident in Pittsley v. Warish was relevant

to show bias and motive in bringing the lawsuit, so here, Montoya's previous interaction with

Romero, which stemmed from her medical condition, is relevant to her bias and motive in bringing

the lawsuit.

Moreover, given that Montoya is alleging that she suffered emotional distress damages as a

result of Romero's alleged unconstitutional conduct, Montoya's medical condition and treatment

with morphine is also relevant to her damages.   See Lowery v. City of Albuquerque, 2012 U.S.

Dist. LEXIS 55502, at **1-2; Solis-Marrufo v. Bd. of Comm'rs, No. CIV 11-0107 JB/KBM, 2013

WL 1658203, at *21.   Further, the extent of Montoya's morphine use is relevant to her ability to

perceive and relate events.   Morphine "[a]ddicts often suffer severe depression, anxiety, insomnia, mood swings, amnesia (forgetfulness), low self-esteem, confusion, paranoia, and other psychological disorders."   Morphine, Wikipedia (November 26, 2013, 6:13 PM), http://en.wikipedia.org/wiki/Morphine.

Under the third prong of the rule 404 analysis, the Court concludes that the danger of unfair prejudice to Montoya that allowing Romero to present evidence of her medical condition presents does not substantially outweigh the evidence's probative value.   Romero pointed out at the hearing that this evidence is the only proof he has with regard to why Montoya brought this lawsuit against him: "[T]hat is the only explanation why she would falsely accuse him of doing things that he hadn't done."   Tr. at 8:1-4 (Lyle).   Thus, this evidence's probative value, in the face of Romero's lack of other evidence he can present about her motivations in bringing the lawsuit or bias against him, giving it its maximum reasonable probative value, is high.   See Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d at 1274 ("In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.").   In addition, that this evidence is also relevant to her alleged emotional distress damages, which, if the jury finds that Romero violated Montoya's civil rights, he must rebut, adds to this evidence's probative force.

On the other side of the rule 403 balancing test, evidence of drug use is prejudicial to Montoya.   This prejudice, however, given its minimum reasonable prejudicial value, does not substantially outweigh its probative value.   That Montoya took a narcotic on a regular basis, especially given that Romero intends to present evidence at trial showing such drugs are not normally the way in which to treat hepatitis C, may likely cause the jury to question Montoya's character.   That Montoya was prescribed the morphine to treat her hepatitis C takes away,

- 35 -

however, most, if not all, of this evidence's prejudicial effect.   The Tenth Circuit has specifically

called into question whether evidence of prescription drug use presents any prejudicial effect.

See United States v. Leonard, 439 F.3d 648, 653 (10th Cir. 2006)("We do not understand why

knowledge that Mr. Leonard's drug use was by prescription, and therefore lawful, would be

prejudicial.").   Given the Tenth Circuit's commentary about allowing in evidence of prescription

drugs under rule 403, the Court concludes that the probative value of allowing Romero to present

evidence about Montoya's medical condition, including her morphine treatment of that condition,

outweighs its danger of unfair prejudice.

Finally, under the fourth prong of the 404(b) analysis, if Montoya requests at trial that the

Court provide the jury a limiting instruction about Romero's evidence of her medical condition

and morphine use, the Court will do so at that time.   See United States v. Zamora, 222 F.3d at 762

("[P]ursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence

of similar acts is to be considered only for the proper purpose for which it was admitted.")(citing

United States v. Roberts, 185 F.3d at 1125).   In conclusion, the Court will deny Montoya's

motion to exclude all evidence related to her medical condition and treatment at the Cuba Medical

Center.   The Court will allow Romero to present evidence about her medical condition and

treatment of that condition; the danger of unfair prejudice that his admission of the evidence

presents does not substantially outweigh its probative value.

II.    **ASSUMING THAT THE PARTIES FOLLOWED THE COURT'S DIRECTION AT THE HEARING TO PROVIDE MONTOYA THE OPPORTUNITY TO DEPOSE THE 911 OPERATOR, THE COURT WILL NOT EXCLUDE THE 911 CALL RECORDING PURSUANT TO WHICH ROMERO WAS DISPATCHED TO MONTOYA'S RESIDENCE.**

At the hearing on the Motion in Limine, Montoya objected to Romero's intention to

introduce the 911 recording on the morning of the events at issue in the case, to which Romero

responded at Montoya's house, and at the conclusion of which Romero allegedly unreasonably seized, falsely arrested, and maliciously prosecuted Montoya in retaliation for her earlier position against the Cuba Police Department.  See Tr. at 23:19-24:12 (Court, Howard).  Montoya also objects on the grounds that Romero failed to properly disclose the recording in discovery when he should have done so.  Romero contends that the 911 recording is admissible, as it provides the circumstances that played into Romero's decision to arrest Montoya, and falls under the rule against hearsay's exception for regularly recorded activities.  The Court concludes that the 911 call is relevant to Montoya's false arrest accusations, falls under exceptions to the rule against hearsay, and is thus admissible.  Because it has been almost a year since Montoya first complained about the 911 recording, and because the Court ordered Romero to provide her an opportunity to depose the 911 operator, the Court concludes that any prejudice that Romero's discovery violations caused have been cured to the extent that it is not unfair to allow Romero to admit the recording into evidence at the trial in this matter, scheduled to begin on September 30, 2013.

In Maples v. Vollmer, No. CIV 12-0294 JB/RHS, 2013 WL 1681234, at *16-18 (D.N.M. March 31, 2013)(Browning, J.), the Court found that a 911 recording was relevant in a § 1983 case in which the plaintiff, Maples, alleged that the defendant officers, Vollmer and Fox, unlawfully arrested him, concluding that the information relayed to Vollmer and Fox was relevant to reasonableness of the officers' arrest as well as their presence at the residence, and that the statements in tape, "although hearsay, are admissible as present sense impressions and excited utterances."  2013 WL 1681234, at *1.  The Court did not admit the statements before the trial, however, because the defendants had not met rule 803(6)'s foundational requirements for the tape's admission.  See 2013 WL 1681234, at *1.  The Court first found that, because Maples'

- 37 -

Fourth Amendment claims turned on the reasonableness of Vollmer's and Fox's conduct, which depends on the facts and circumstances known to them at the time that they arrested the plaintiff, the content of the 911 call was relevant only to the extent that the information was known to Vollmer and Fox at the time they arrested Maples.   See 2013 WL 1681234, at *11-13.   The Court stated:

> The statements in the 911 call are relevant only to the extent that the information gleaned from it, received by Vollmer and/or Fox, caused Vollmer and Fox to believe that Maples presented a safety risk or to believe that he was committing a severe crime, and whether that information would cause a reasonable officer to believe the same.

2013 WL 1681234, at *12.   The Court found that the 911 call recording as a whole was relevant to a central issue in the case: Maples' contention that he was at the home lawfully, and the defendants' contention that he was not.   See 2013 WL 1681234, at **13-14.   The Court found: "[T]he contents of the 911 call in which S. Lane represents that '[Maples is] not supposed to be here,' [are] probative whether he was lawfully on the property, which is a 'fact [] of consequence in determining' whether the officers unlawfully arrested or detained him."   2013 WL 1681234, at *13 (internal citations omitted)(quoting Fed. R. Evid. 401(b)).

As to Maples' argument that the Court should exclude the 911 recording because the statements in the recording were hearsay, the Court concluded that the statements fell under the present sense impression, excited utterance, and regularly conducted activities exceptions to the rule against hearsay.   The Court concluded that the 911-caller's statements were present sense impressions, because the statements described and explained the events as the events were occurring.   See 2013 WL 1681234, at *15 ("This statement is describing the event -- Maples' presence on the property -- and also explaining the event -- that she is calling 911 because Maples is not supposed to be there.").   The Court also concluded that the 911 caller's statements were

- 38 -

excited utterances, finding that the statements related to a startling event, because

> S. Lane [the 911 caller] believed that Maples was not supposed to be at [the residence at which he was arrested], [that] he had left the hospital when he should not have, that she was "pretty sure" he was in the hospital because he was suicidal, and that she believed Maples was at the residence because he was coming after her father. . . . Additionally, multiple times during the telephone call S. Lane relates her concern that she could not see Maples or her father, or both, and that she believes her father "left out the gate so he wouldn't be attacked by [Maples]."

2013 WL 1681234, at *16 (internal citations omitted).  Because the Court found that "the recording itself is an out-of-court statement," and because the Court found that the parties had not met rule 803(6)(D)'s requirement to properly show that all of the conditions required for an out-of-court statement to qualify as a record of regularly conducted activity had been met, the Court concluded that the 911 recording would be admissible only if the defendants could cure that omission at trial.  See 2013 WL 1681234, at **17-18.

Here, as in Maples v. Vollmer, the 911 recording is relevant to rebut a central issue at trial: whether Romero arrested Montoya in retaliation for the petition that she championed against the Cuba Police Department.  The Court has pointed out in the past that the threshold for relevance under rule 401 is low: "Rule 401 contains a low threshold for relevance, because '[a]ny more stringent requirement is unworkable and unrealistic.'"  Coffey v. United States, No. CIV 08-0588 JB/LFG, 2012 WL 1698289, 2012 U.S. Dist. LEXIS 67261, at *14 (D.N.M. May 8, 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note).  That a 911 operator called for police assistance tends to make "more . . . probable" that Romero responded to Montoya's residence in good faith and arrested her for legitimate reasons, than this scenario would be in absence of the 911 recording.  Fed. R. Evid. 401.  Given that the issue at trial is whether Romero unlawfully arrested Montoya in retaliation for circulating a petition, whether Romero arrested Montoya in good faith and for legitimate reasons is a "fact . . . of consequence in

determining the action."   Fed. R. Evid. 401.   The Court therefore finds that the 911 recording is relevant.

The Court concludes that the danger of prejudice in admitting the 911 recording does not substantially outweigh its probative value.   Montoya's 911 call that led to Romero's arrival on the day of her alleged unlawful arrest tells the story how Romero came to be at her residence.   Given its maximum reasonable probative value, the probative value of how Romero came to arrive at Montoya's residence, when set against the background of Montoya's allegations that he arrested her solely because of her petition, is high.

Montoya contends that the 911 call is prejudicial, however, because there is an unidentified person that directs the 911 operator to dispatch police to Montoya's residence.   Montoya asserts that a portion of this prejudice stems from Romero's failure to disclose the 911 tape before he and the now-dismissed Defendants filed their summary judgment motion in April of 2012.   In relation to any prejudice to Montoya that this late disclosure caused, the Court concludes that, because Montoya has known about this 911 recording for over a year now, she has had the opportunity to further inquire who the unknown person on the tape may be and to file motions with the Court addressing this failure in discovery.[5]   Moreover, Montoya agreed at the hearing on this Motion in

---

[5] The Court recognizes that, in regard to the summary judgment, Montoya raised this issue with Judge Brack and objected to his consideration of the 911 recording on grounds of Romero's alleged failure to properly disclose the recording during discovery.   See Tr. at 36:21-27:5 (Howard)(citing MSJ MOO).   In the MSJ MOO, however, Judge Brack did not address the alleged discovery abuse other than to note the parties' dispute about the abuse and decide that "the Court need not rule on the admissibility of the recording at this time."   MSJ MOO at 6 n.1.   The case was reassigned from Judge Brack to the Court on March 22, 2013, see Doc. 119, and Montoya did not raise the issue with the Court before this Motion in Limine.   Given that the prior Defendants filed the summary judgment motion in April of 2012, and given that the first time Montoya raised this issue with the Court was at the July 5, 2013, hearing on this matter -- over a year after finding out about the recording and over three months after the case was reassigned -- Montoya had sufficient time to investigate the circumstances or to file a motion with the Court

Limine that, if Romero provided her the name of the 911 operator and the ability to depose that person, this discovery would ameliorate any prejudice to a level at which she would not object to the 911 recordings admission on these grounds.   See Tr. at 37:15-38:20 (Howard, Court, Lyle). Thus, Montoya has had time to investigate the circumstances surrounding the unknown person and, assuming that Romero provided her the 911 operator's name after the hearing, has had time to lessen to an acceptable level any prejudice that may stem from an unknown person's direction in the 911 call to dispatch police.   The Court thus concludes that the danger of unfair prejudice that this 911 recording's admission presents to Montoya, given its minimum reasonable prejudicial value, is not great.   The Court, therefore, heading the Tenth Circuit's guidance, will not go so far as to use, under rule 403, the "extraordinary remedy" of excluding at the present time the recording from evidence.   United States v. Smalls, 605 F.3d at 787.

While the Court will allow the jury to hear the recording and to see any transcript to which the parties agree, unless the parties stipulate otherwise, only the tape will come into evidence and go to the jury room.   As the Tenth Circuit's Pattern Jury Instructions provide in criminal cases:

> During this trial, you have heard sound recordings of certain conversations. These conversations were legally recorded; they are a proper form of evidence and may be considered by you as you would any other evidence.   You were also given transcripts of those recorded conversations.
> Keep in mind that the transcripts are not evidence.   They were given to you only as a guide to help you follow what was being said.   The recordings themselves are the evidence.   If you noticed any differences between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read.   If you could not hear or understand certain parts of the recordings, you must ignore the transcript as far as those parts are concerned.

Tenth Circuit Pattern Jury Instructions Criminal § 1.20, at 65 (2011).   The Tenth Circuit has held that [t]he admission of transcripts to assist the trier of fact lies within the discretion of the trial

---

regarding the alleged discovery abuse.

court."   United States v. Gomez, 67 F.3d 1515, 1526 (10th Cir. 1995).   Unless the parties otherwise agree, the Court will not allow the jury to take a transcript of the recording to the jury room.

In conclusion, the Court will hold the parties to their agreements at the hearing that they will not introduce evidence about the July, 2009, incident at Cuba Medical Clinic, and will not introduce evidence about the police flyovers and raids of Montoya's house.   The Court will deny Montoya's motion to exclude all evidence regarding her medical condition of hepatitis C and her treatment of that condition using morphine, because Romero is offering it for a proper and relevant purpose.   Finally, the Court will not exclude from the trial the 911 recording, because it provides the circumstances surrounding Romero's arrival at Montoya's residence, which resulted in Romero's alleged retaliatory and false arrest of Montoya.

**IT IS ORDERED** that Plaintiff's Motion in Limine to Exclude Testimony and Evidence of Plaintiff's Medical Condition; Evidence and Testimony Related to an Incident Occurring at the Cuba Health Center on July 9, 2010 Involving Plaintiff; Evidence and Testimony by Personnel Employed by Cuba Emergency Medical Services and Cuba Health Clinic, and Evidence and Testimony by Witnesses Related to the Raid, filed December 10, 2012 (Doc. 82), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Laura Schauer Ives
ACLU of New Mexico
Albuquerque, New Mexico

--and--

Leon Howard
Leon F Howard, III
The Law Office of Lucero & Howard, LLC
Albuquerque, New Mexico

--and--

Rachel E. Higgins
Albuquerque, New Mexico

     *Attorneys for the Plaintiffs*

James P. Lyle
Law Offices of James P. Lyle, P.C.
Albuquerque, New Mexico

     *Attorney for the Defendants*